Larry Zerner (SBN 155473)
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
Email: Larry@ZernerLaw.com

Attorneys for Plaintiff Mark Towle,
An individual and d/b/a Gotham Garage

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC Comics, | Case No.: CV11-3934 RSWL (OPx) |
|                Plaintiff, | |
|    v. | NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES |
| Mark Towle, an individual and d/b/a Gotham Garage, and Does 1 – 10, inclusive, | Date: January 30, 2013<br>Time: 10:00 a.m.<br>Courtroom: 21 |
|                Defendants. | Trial Date: March 26, 2013<br>Pre-Trial Conference: March 12, 2013<br>Discovery Cut-Off: November 27, 2012 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: Please take

notice that Defendant Mark Towle dba Gotham Garage will move and hereby does

move the above entitled Court for an Order granting partial summary judgment of

noninfringement on Plaintiff's copyright infringement claims and Plaintiff's

trademark infringement claim on January 30, 2013 at 10:00 a.m. or as soon

thereafter as this matter may be heard. This motion is made following the L.R. 7-3

i

conference of counsel which took place on August 21, 2013. The grounds for this motion are the following:

1.  Plaintiff is suing for copyright infringement of an automobile and automobile designs are not copyrightable.

2.  Defendant did not infringe any of the DC Comics Copyrighted Works identified in the First Amended Complaint

3.  Defendant did not infringe any of the DC Comics Copyrighted Works identified in Plaintiff's responses to interrogatories.

4.  Plaintiff has not and cannot sue defendant for infringing the copyrights to the 1966 Batman television program or the 1989 Batman motion picture because Plaintiff does not own these copyrights.

5.  Plaintiff is unable to show any separable, nonfunctional, artistic parts of the Batmobiles that it owns the copyright to and were infringed by Defendant.

6.  Plaintiff cannot prevail on its trademark claims because it knew of defendants activities at least five and as many as 8 years prior to filing the complaint and is guilty of laches.

7.  Plaintiff cannot prove trademark infringement because there is no likelihood of confusion.

As a result, Defendant is entitled to judgment as a matter of law under Fed. R. Civ. P. Rule 56. This motion is based on this Notice, the accompanying

Memorandum of Law, the Statement of Uncontroverted Facts and Conclusions of

Law, the Joint Stipulation re Motion for Summary Judgment, the Declarations of

Larry Zerner, Mark Towle, Kasey Kuhlman, Seth Katz, Enrique Segarra, and Brian

Boling, the deposition transcripts of George Barris and Jay Kogan, Plaintiff's

Response to Interrogatories, the Proposed Order, the entire court docket and file

for this case on file with the Court and such other and further evidence as the Court

may consider at any hearing on this matter.

DATED: December 26, 2012             ZernerLaw


                                     By: _____/s/_____
                                          Larry Zerner
                                     Attorney for Defendant Mark Towle, an
                                     individual and d/b/a Gotham Garage

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A. CREATION OF THE 1966 BATMOBILE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   B.  CREATION OF THE 1989 BATMOBILE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   D. THE FIRST AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      2. ADMISSIONS IN DEPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      3. RESPONSES TO INTERROGATORIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III. PLAINTIFF CANNOT CLAIM COPYRIGHT PROTECTION FOR WORKS THAT
ALREADY EXISTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV. DEFENDANT DID NOT INFRINGE ANY OF THE COPYRIGHTS SET FORTH IN THE
COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V. PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR TRADEMARK INFRINGEMENT
BECAUSE PLAINTIFF IS GUILTY OF LACHES . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI. THERE IS NO EVIDENCE OF LIKLIHOOD OF CONFUSION . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**

*Applied Info. Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). . . . . . . . . . . 24

*Bespaq Corp. v. Haoshen Trading Co.,* 2005 WL 14841 (N.D.Cal.2005). . . . . . . . . . . . . 19

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113
   L.Ed.2d 358 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Four Navy Seals v. Associated Press* 413 F.Supp.2d 1136, 1148 (S.D. Cal 2005) . . . . . . . . 19

*Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D.Pa.1979); . . . . . . . . . . . . . . . . . . . . . 19

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir.2002). . . . . 20, 21

*Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992) aff'd sub nom. *Kelly v. L.L. Cool J,* 23
   F.3d 398 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Leicester v. Warner Brothers.* 232 F.3d 1212 (1216-17) (9th Cir 2000) . . . . . . . . . . . . . . 2

**Statutes**

17 U.S.C. §101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Code of Civil Procedure §338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Section 103 of the Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

**Rules**

Federal Rule of Civil Procedure 8(a) (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FRCP 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rule 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Treatises**

6 *McCarthy on Trademarks and Unfair Competition* § 32:120 (4th Ed.) . . . . . . . . . . . . 24

Moore's Federal Practice P 8.17(7) at 1767 (2d ed. 1978). . . . . . . . . . . . . . . . . . . 19

1
2
3
4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

5
6

This is a very important case that has far-reaching implications.  While it is

7

true that this case is ostensibly about the Batmobile, which some may find to be

8

trivial, the fact is that the issues that will be decided will have a significant impact

9
10

on automobile makers and manufacturers.

11

It is black letter law that useful articles, such as automobiles, do not qualify

12
13

as "sculptural works" and are thus not eligible for copyright protection.  17 U.S.C.

14

§101. However, despite this clear, bright line standard, DC believes that there is an

15

exception to this rule.  The exception being that if a different version of the vehicle

16
17

(not even the same version that Defendant sells) once appeared in a comic book,

18

then the rule does not apply.  The implications of a ruling upholding this standard

19
20

are easy to imagine.  Ford, Toyota, Ferrari and Honda would start publishing

21

comic books, so that they could protect what, up until now, was unprotectable.

22

DC may argue that they are not seeking protection for the entire design of

23
24

the vehicle, only the separable, non-functional, artistic elements.  This is a lie.

25

Because when asked which parts of the car it considered to be separable, non-

26

functional and artistic, it did not limit its' answer to one or two design features.

27
28

Instead, DC listed every visible part of the car from the design of the front grill, to

1

the fenders, to the wheels, to the fins, the cockpit, and the exhaust pipe.   DC even claims that the color of the Batmobile is copyrightable.

If DC were to prevail under these standards it would mean an end to the rule that useful articles are not copyrightable and would completely upend existing copyright law.  For this reason, among many others listed below, DC's claim of copyright infringement of the Batmobiles should be denied.

## II. STATEMENT OF FACTS

It is true, as plaintiff alleges, that the Batmobile are some of the most well-known automobiles in the world.  Defendant is accused of manufacturing and selling two different styles of Batmobiles.  One, the Batmobile that was used in the 1966 Batman television series (the "1966 Batmobile"). The other, the Batmobile used in the 1989 *Batman* motion picture (the "1989 Batmobile").

The main problems with DC's copyright claim are thus.  First, automobile designs are not protectable by copyright and therefore cannot be the basis of a copyright infringement lawsuit.  *Leicester v. Warner Brothers*. 232 F.3d 1212 (1216-17) (9th Cir 2000).

Second, the evidence is conclusive that Defendant did not infringe any of the copyrights identified and put at issue in the First Amended Complaint ("the FAC"). That's right.  DC admitted in its answers to special interrogatories (Ex. 35 to

2

Zerner Decl.) that there were only nine comic books that contained the separable, non-functional, artistic elements that DC alleges found their way into the Batmobiles and with the exception of Batman #170 (which was not infringed) none of the remaining eight comic books is identified in the FAC[1].  But if that is the case, why is this lawsuit continuing?  Because DC's position is that it was not required to identify the actual copyrights at issue when it filed the FAC.

Instead, DC contends that because the FAC contained the vague statement that Defendant infringed the "DC Comics Copyrighted Designs" it can ignore the rules of pleading.  DC contends that, without amending the complaint, it may present evidence of infringement of not just the 35 copyrights identified in the FAC, but any of the thousands of copyrights registered by DC and also copyrights belonging to 3rd parties, such as Twentieth Century Fox and Warner Brothers.  This position is without legal merit and a clear violation of the pleading requirements set forth in FRCP 8.

Third, even if cars were copyrightable and DC could allege infringement of any of their copyrights, both the 1966 Batmobile and the 1989 Batmobile were created *sui generis* for their respective projects and were not based on previous designs shown in the allegedly infringed comic books.  As will be shown, *infra*, the

---

[1] DC eventually filed a Second Supplemental Response to Request for Special Interrogatories which added Batman #170 (one of the comics on Exhibit A) to the list.  However, as discussed infra, the copyright to Batman #170 does not cover the design of the Batmobile.

1966 Batmobile was designed by custom car designer George Barris and was based on the existing design of the 1955 Lincoln Futura.  The 1989 Batmobile was created by Anton Furst, the production designer on the *Batman* motion picture, under a contract with Warner Brothers Production Ltd.

Neither Mr. Barris nor Mr. Furst was ever under contract with DC, nor is there evidence that they assigned their rights to DC.  The copyright registrations to the 1966 *Batman* television program are in the name of Greenway Productions, Inc., and Twentieth Century Fox Television, Inc. (Ex. 3 to Joint Stip.).  The copyright to the 1989 *Batman* motion picture is held by Warner Brothers, Inc. (Ex. 4 to Joint Stip.

### A. CREATION OF THE 1966 BATMOBILE

The 1966 Batmobile was designed by George Barris (Barris Dep. 10:11-12) and built by him in 15 days using a 1955 Lincoln Futura as the base (Barris Depo 9:5-9 and Ex. 501 thereto).  Barris' design was not based on any DC comic books (Barris Depo 10:7-10).  Barris built the car pursuant to a September 1, 1965 contract between 20th Century Fox Television Inc. and Greenway Productions Inc., on the one hand, and Barris Kustom City, on the other hand. (Barris Depo 11:4-7, Exhibit 14 to Joint Stipulation).    The agreement provided that Barris, Fox and Greenway would jointly own the design to the 1966 Batmobile.[2]

---

[2] The contract provided, at Paragraph 7:

4

DC then confirmed Barris, Fox and Greenway's ownership of the design of the 1966 Batmobile.  On August 15, 1966, DC's predecessor-in-interest, National Periodical Publications, Inc., entered into an agreement with Fox, Greenway and Barris which stated at Paragraph 15:

"Notwithstanding anything to the contrary herein contained, National Periodical acknowledges BARRIS is the owner of the vehicle known as Batmobile I as used in the BATMAN television series and feature motion picture and that <u>BARRIS, FOX and GREENWAY are the joint owners of the design of said Batmobile I</u> . . . ." (Barris Depo 23:9-24:10 and Exhibit 15 to Joint Stipulation). (Emphasis Added).

Nowhere in any of these agreements did Barris, Fox or Greenway grant DC the design rights in the 1966 Batmobile design, other than the limited rights set forth in Paragraph 7 of the September 1, 1965 Agreement.

George Barris then obtained a design patent on the 1966 Batmobile (Patent No. 205998, October 18, 1966) (Barris Depo 15:4-6, Exhibit 6 to Joint Stipulation).

---

"<u>Any and all right, title and interest in and to the design of Batmobile I resulting from the application of the required Batmobile features in and to owner's prototype Lincoln chassis</u>, save and except the name "Batmobile" and the Batmobile features set forth in article 10 hereof and in the drawings and exhibits attached hereto, and of the completed Batmobile I provided for in Article 2 hear of, <u>shall forever be vested in and owned jointly by Owner and Producer</u>, subject only to any and all right, title and interest of National Periodical Publications, Inc. . . in and to said Batmobile features in said design." (Emphasis Added).

5

No one from DC ever told Barris that they should be a joint owner of the design patent (Barris Depo 32:6-10).  Barris testified that he owns the design of the 1966 Batmobile because he designed it and built it based on his own creation, not from somebody else's drawings (Barris Depo 29:1-8).  George Barris testified that he or someone on his staff designed all the parts of the Batmobile (Barris Depo p.16-22).

**B.**  *CREATION OF THE 1989 BATMOBILE*

The 1989 Batmobile was designed and built by Anton Furst, under a contract with Warner Brothers Productions, Ltd. (Ex. 20 to Joint Stip).  Furst obtained a design patent on the 1989 Batmobile (Design No. 311,882, November 6, 1990) (Ex. 7 to Joint Stipulation).   Furst is the only person listed on the design patent as the inventor of the 1989 Batmobile.

C. **THE ORIGINAL COMPLAINT**

On May 6, 2011, Plaintiff filed a complaint against defendant for infringing what plaintiff referred to as the "DC Comics Copyrighted Designs."   The "DC Comics Copyrighted Designs" are described in the Complaint as being "wholly original with DC Comics" (Complaint, ¶11), and owned by DC Comics (Complaint ¶11). The Complaint also alleges that DC Comics owns the certificates of registrations in which each of the DC Comics Copyrighted Designs appear. (Complaint, ¶12).

6

To state it in the alternative, according to the Complaint, if a work is not "wholly original with DC Comics" <u>or</u> is not "owned" by DC Comics <u>or</u> is not on a copyright registration certificate owned by DC Comics, then it is <u>not</u> a DC Comics Copyrighted Design.

Also attached to the complaint as Exhibit "A" was a document titled "DC Comics' Copyrighted Designs" which consisted of a list of 22 various DC publications (Ex. A to the original Complaint is attached to the Declaration of Larry Zerner as Exhibit 27).

As a Plaintiff in a copyright case is required to identify the copyrights at issue in the complaint, Defendant relied on this fact in preparing his defense of the case. Yet, a review of the publications listed on Exhibit A showed that these items could not form the basis of an infringement claim involving the Batmobiles because almost all of the items on Exhibit A were created after September 1965 (when the 1966 Batmobile was built) and most had no relation to the two Batmobiles at issue. On October 11, 2011, Towle's attorney, Larry Zerner, had a 7-3 meet and confer with DC's attorney, Andy Coombs.  During the meeting, Mr. Zerner informed Mr. Coombs that the complaint did not state a cause of action for copyright infringement because, *inter alia*, the items listed on Exhibit A to the Complaint were not the underlying copyrights to the Batmobiles (Zerner Decl. ¶4).  Mr. Zerner told Mr. Coombs that DC needed to amend the complaint to either add

Warner Brothers and 20th Century Fox Television as parties or else make it clear what copyrights were at issue (Zerner Decl. ¶4)

**D.** *THE FIRST AMENDED COMPLAINT*

On November 22, 2011, in apparent response to the discussions with Mr. Zerner, DC filed a First Amended Complaint ("the FAC"). The FAC is virtually identical to the original Complaint except that Exhibit A adds an additional 13 DC comic books to the list (a total of 35 copyrights). DC did not amend the Complaint to allege the infringement of the TV show or 1989 movie copyright, nor did DC allege in the FAC that it had acquired any rights from Warner Brothers, Inc. or 20th Century Fox. (Exhibit A to the FAC is attached to the Zerner Decl. as Exhibit 28).

On December 6, 2011, Mr. Zerner again met with Mr. Coombs pursuant to Local Rule 7-3. Mr. Zerner told Mr. Coombs that the FAC did not fix the problem because the additional copyright registrations listed on Exhibit A to the FAC were not being infringed by Towle and had nothing to do with the Batmobiles. Mr. Coombs stated that he thought that the complaint stated a cause of action and that the Batmobile copyright was protected by the underlying rights in the comic books. At no point in the meeting did Mr. Coombs assert that DC was alleging infringement of the TV show or motion picture copyrights. (Zerner Decl. ¶6-7).

E. **THE MOTION TO DISMISS THE COMPLAINT**

In December 2011, Towle filed a motion to dismiss the copyright infringement claim pursuant to FRCP 12(b)(6) on the grounds that a) automobile designs were not copyrightable, and b) that DC is not the copyright claimant to the TV show or movie in which the Batmobiles first appeared. (Zerner Decl. Ex. 29).  In its' opposition papers, DC did not contend that it was suing on the TV show or motion picture copyright.  Plaintiff stated that DC (not Barris or Furst) was the creator of the Batmobile and had licensed its' use to 3rd parties in connection with TV shows and motion pictures (Opposition 4:26-28). DC further alleged that it owned the copyrights to the various Batmobile versions (Opposition 5:1-4), and that DC's creation of the Batmobile pre-dated the registration for the 1966 TV show and 1989 motion picture (Opposition 5:9-10).  Remarkably, the evidence DC cited in the Opposition to prove this fact was Exhibit A to the FAC.  (Zerner Decl. Ex. 30).

To sum up - the Complaint, the FAC, Mr. Coombs statements and the Opposition to the Motion to Dismiss made it clear; DC was not suing Towle for infringement of the copyright to the TV show or motion picture, but DC's claim was based solely on infringement of items owned by DC that predated the registrations of the TV show and movie (referred to as the "DC Comics Copyrighted Designs"), and that were listed on the FAC as Exhibit "A."

On January 26, 2012, the court denied Towle's motion to dismiss the claim of copyright infringement.  The court agreed with Defendant's contention that, in

general, the Copyright Act affords no protection to "useful articles" or items with an intrinsic utilitarian function such as automobiles (Court's Order at 4:23-26, Ex. 31 to Zerner Decl). But the Court ruled that because there is an exception to the "useful article" rule, which grants copyright protection to separable, non-functional, artistic elements of an automobile design and because there may be such separable, non-functional, artistic elements of the Batmobiles, the Court could not rule that the FAC did not state a cause of action for copyright infringement.[3]

F. **DC'S DISCOVERY RESPONSES**

1. Rule 26(f) Disclosures

DC's position vis-à-vis the copyrights at issue was reinforced by its' discovery responses. First, in DC's Voluntary Disclosures pursuant to Rule 26(f), DC only listed the following documents that it knew to be relevant:

"1. Copies of trademark and copyright registration certificates.

2. Defendant's business records and advertising materials.

3. Prior notices of infringing activity.

4. Products sold by Defendant (or photographs thereof).

5. Licensing agreements or contracts regarding rights in and to the Batmobile."

See Exhibit 32 to Zerner Decl.

---

[3] The Court did not rule that there <u>were</u> separable, non-functional, artistic elements of the Batmobiles, only that there "*may be* non-functional artistic elements of the Batmobile that *may possibly be* separated from the artistic elements of the Batmobile." Order at 5:6-9.

10

DC did not provide Towle with any documents concurrently with the disclosure, but there is nothing in the Disclosure that would give Defendant any indication that DC was claiming infringement of anything other than those copyrights listed on Exhibit A to the FAC.  Notably, DC does not list the television show or the motion pictures (or photos taken from those items) as being relevant documents, nor did DC produce the television program or motion picture or copyright registrations for the television program.

**2.** ADMISSIONS IN DEPOSITION

Finally, when taken the deposition of DC employee Jay Kogan, Vice-President and deputy general counsel for Intellectual Property and Publishing, who was designated by DC as the person most knowledgeable of facts supporting the copyright infringement claim, Mr. Kogan was asked which copyrights DC was making a claim on and Mr. Kogan stated: "I believe whatever we are making a claim of is set forth in the pleadings."  (Kogan Depo 16:23-24). (Zerner Decl. Ex. 37).  DC's attorney, Mr. Coombs, then stated the "[Copyright registrations] we're relying on for purposes of trial have been produced" and agreed that those registrations not already produced would not be part of the case. (Kogan Depo. 17:3-9). (Zerner Decl. Ex. 37).

**3.** Responses to Interrogatories

As DC's copyright infringement claim hinged on whether there were separable, non-functional, artistic elements of the Batmobile that it owned, Towle sent out interrogatories to DC seeking to determine what these elements were. Towle got the following responses to these interrogatories:

In response to an interrogatory about which parts of the **1966 Batmobile** it considered to be separable, non-functional, artistic elements, DC identified the following:

"(1) The front grill work; (2) nonfunctional jet engine exhaust pipe; (3) exaggerated rear Bat-fins; (4) all switches and hand-throttle knob for the nonfunctional "turboelectric drive"; (5) the "Bing-Bong Warning Bell" and "Bat-Light Flasher"; (6) the Mobile Phone between the seats with Beeper and Flashing Light; (7) the "Batscope," complete with TV-like viewing screen on the dash, radar-like antenna with amiable parabolic reflector outside, and cockpit controls; (8) anti-theft system, consisting of flashing red lights, piercing whistle, little rockets built into tubes at the back of the cockpit that fire straight up with a fiery whoosh; (9) anti-fire control system, consisting of a flood of foam from secret nozzle; (10) turn-off switch for protection systems; (11) radar-like screen that beeps and blips and points an arrow as it picks up Robin's directional signal; (12) mechanics for

emergency bat turn with a red lever so named on dash, reverse thrust rockets

beneath headlights, and ejection parachute mechanism at rear; (13) bat-ray

projector mechanism with lever on dash so named, hood hydraulic projector

device, and ray coming from Bat-Eyes; (14) portable fire extinguisher; (15)

receiver and sender computer to be installed in trunk of Batmobile; (16) all

Bat logos and symbols; (17) color of the Batmobile; (18) luminescent outline

of Bat symbol to define symbol at night. (19) Batface; (20) Bateyes; (21)

Batwing rear fenders; (22) double cockpit; and (23) cockpit arch."

 (DC's Responses to Interrogatories No. 3 and DC's Supplemental Responses

to Interrogatories No. 3. Exhibit 35 and 36 to Zerner Decl.)

In response to an interrogatory about which parts of the **1989 Batmobile** it

considered to be separable, non-functional, artistic elements, DC identified the

following:

 "(1) nonfunctional jet turbine engine intake grill;  (2) mandible-style front

fenders; (3) rear sculpted fins;  (4) interior monitor;  (5) self-diagnostics

system; (6) spherical bombs; (7) chassis-mounted shin breakers;  (8) side-

mounted disc launchers; (9) pair of forward-facing Browning machine guns;

(10) central "foot" capable of lifting the car and rotating it 180 degrees;  (11)

armor-plated body; (12) oil slick dispensers; (13) smoke emitters; (14)

"Batmissile" mode that sheds all material outside central fuselage and

13

reconfigures wheels and axles to fit through narrow openings;  (15) Side

mounted grappling hook launchers;  (16) custom all-black color scheme with

blue highlights;  (17) Four sets of wheels;  (18) yellow or gold hubcaps on

second and fourth set of wheels (from front) on Batmissile version of

Batmobile;  (19) telescopic poles which pop out from sides of vehicle; (20)

Batwing-like fan spreads which open from underneath sides of vehicle; and

(21) flame-shooting exhaust."

DC was then asked, "If YOU contend that there are separable,

nonfunctional, artistic elements of the 1966 BATMOBILE, identify the first comic

book in which each part appeared."  DC responded as follows:

"Plaintiff identifies the following comic books in which separable,

nonfunctional, artistic elements of the **1966 BATMOBILE** appeared:

*Detective Comics* #156 (Feb. 1950); Batman #164 (June 1964);

*Detective Comics* #341 (July 1965); World's *Finest Comics* #154 (Dec.

1965); and Batman #20 (Dec. 1943-Jan. 1944)."

(DC Response to Interrogatory NO. 8, Exhibit 35 to Zerner Decl.).[4]

DC was then asked, "If YOU contend that there are separable,

nonfunctional, artistic elements of the **1989 BATMOBILE**, identify the first

comic book in which each part appeared."  DC responded as follows:

---

[4] Two months after sending this response under penalty of perjury, DC send a 2nd Amended Response which added Batman #170 to this list (Ex. 36 to Zerner Decl).

"Plaintiff identifies the following comic books in which separable, nonfunctional, artistic elements of the 1989 BATMOBILE appeared: *Batman* #5 (Spring 1941); Detective *Comics* #156 (Feb. 1950); *Batman: The Cult* (1988); and *Batman* #408 (June 1987)."

(DC Response to Interrogatory No. 12, Exhibit 35 to Zerner Decl.).

A review of the nine[5] comic books listed above and the 35 items identified on Exhibit A to the FAC as the DC Comics' Copyrighted Designs shows that (with the exception of Batman #170, discussed *infra*) there is <u>zero</u> overlap between the two lists.  Except for Batman #170, none of the comic books which DC asserts contain the first use of the separable, non-functional, artistic elements of the Batmobile were identified in the First Amended Complaint. As discussed *infra,* this admission is completely fatal to DC's claim of copyright infringement.

However, even if DC had amended the complaint to include these additional eight comic books, they still could not prevail.  During Kogan's deposition, he was for the most part completely unable to point out where the separable, non-functional, artistic elements identified in the interrogatory responses were visible. And for those parts that he did identify it is clear that the part a) did not meet the criteria of being a separable, nonfunctional artistic elements, or b) did not look like

---

[5]  *Detective Comics #156* is on both lists.

the part on the Batmobile, or c) was based on something other than the comic book or d) is not found on the replica automobiles manufactured by Defendant.

Attached to the declaration of Larry Zerner  as Exhibits 33 and 34 are two chart that lists each part of the 1966 Batmobile and 1989 Batmobile that DC claims is separable, non-functional and artistic and explains why DC is incorrect in claiming copyright infringement of that part.  Either because the part a) does not appear in any of the identified comic books,  b) is not separable, c) is functional, d) is not artistic, e) is not found on the replica's made by Defendant or f) is a part normally found on a car.

But at the outset, it is instructive to note just how ridiculous on its face DC's claim is.  DC apparently cannot accept the fact that automobiles are not protectable by copyright and so claims ownership of virtually every part of the automobile, including such normal parts of the cars as "wheels," "fins," and "fenders."   DC seems to not be familiar with the definition of a "useful article" in the Copyright Act which states: "An article that is normally a part of a useful article is considered a 'useful article'.  17 U.S.C. §101.  So any part of the Batmobile identified by Plaintiff that is normally found on a car such as wheels, fins and fenders is, by definition, a "useful article" and not protectable by copyright.

**III**. PLAINTIFF CANNOT CLAIM COPYRIGHT PROTECTION FOR WORKS THAT ALREADY EXISTED.

Plaintiff also seems to not understand the effect of Section 103 of the Copyright Act which states:

"The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."

§103 makes it clear that DC's copyright to the comic books, does not grant them rights in the underlying automobiles, but only to those new features which exist in the new work. DC claims that Defendant infringed Batman #170. But a review of the Batmobile in Batman #170 shows that it is identical to the Batmobile in Batman #164. (Both are Ex. 2 to Joint Stip). The copyright to Batman #170 does not extend to the copyright (to the extent any existed) in the pre-existing Batmobile design).

DC is also claiming that Defendant's sale of the 1989 Batmobile infringes the copyright to the Batman Returns Style Guide Vol. I and II (Ex. 1 to Joint Stip). The Batman Returns Style Guides are 1992 publications that include photographs and drawings of the 1989 Batmobile (as it appeared in the 1992 motion picture

17

sequel "Batman Returns).  It is not disputed that the 1989 Batmobile existed in the 1989 *Batman* movie (Ex. 25 to Joint Stip) and a design patent for the car was issued in 1990.  (Ex. 7 to Joint Stip).

It is impossible to imagine how the copyright registrations to the Batman Returns Style Guides would encompass not just the photographs and drawings of the 1989 Batmobile, but also the pre-existing car itself.  Under this theory, had DC included a photograph of the *Mona Lisa* in the Batman Returns Style Guides, it would own the copyright to that as well.  This is obviously a meritless theory.

## IV. DEFENDANT DID NOT INFRINGE ANY OF THE COPYRIGHTS SET FORTH IN THE COMPLAINT

As discussed, *supra*, Plaintiff admitted that Defendant did not infringe any of the copyrights listed in the Complaint or the FAC.  That should be the end of this discussion and the court should have no problem granting summary judgment on this fact alone.  DC is a company that owns "thousands" of copyrights (Kogan Depo, 12:19-13:2).  (Zerner Decl. Ex. 37). Just the Batman related copyrights alone would number in the "hundreds" (Kogan Depo, 13:3-5).   (Zerner Decl. Ex. 37). DC certainly knew at the time it filed the complaint which copyrights Defendant allegedly infringed.  DC listed an initial 22 copyrights on Exhibit "A" to the Complaint and then, after discussion with Defendant's attorney, amended the complaint to add an additional 13 copyrights to Exhibit "A."  DC has informed

18

Defendant that despite the fact it has not amended the complaint to add additional copyrights, it intends to argue that these additional copyrights should be considered by the court.

Any attempt by DC to allege the infringements of copyrights not specifically identified in the complaint should be disallowed.  To establish infringement of a copyright, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).  Federal Rule of Civil Procedure 8(a) (2) provides that a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Courts have interpreted Rule 8(a) (2) as requiring that the complaint state which particular work is the subject of a copyright claim. *Four Navy Seals v. Associated Press* 413 F.Supp.2d 1136, 1148 (S.D. Cal 2005) *citing Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D.Pa.1979); *Bespaq Corp. v. Haoshen Trading Co.,* 2005 WL 14841 (N.D.Cal.2005).

In the *Gee* case, *supra,* the court stated, "To be sufficient under Rule 8 a claim of infringement must state, *inter alia*, <u>which specific original work is the subject of the copyright claim</u>, that plaintiff owns the copyright, that the work in question has been registered in compliance with the statute and by what acts and during what time defendant has infringed the copyright." *Gee*

at 644 (emphasis added), citing 2a Moore's Federal Practice P 8.17(7) at 1767 (2d ed. 1978), (See also *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992) aff'd sub nom. *Kelly v. L.L. Cool J,* 23 F.3d 398 (2d Cir. 1994)).

In *Plunket v. Estate of Dame Jean Conan Doyle*, 2001 WL 175252 (S.D. N.Y. 2001), the court found lack of compliance with Rule 8 where plaintiff provided a multipage schedule of works she purportedly owned along with registration numbers, but contended that "her copyright claims are not limited to these works." *Id.* at 175254.

DC's position is that the vague allegation in the complaint that Defendant infringed the DC Comics Copyrighted Designs allows it to assert infringement of any of the thousands of copyrights it owns, without ever amending the complaint. DC is also contending that despite the fact that the Complaint alleged that the DC Comics Copyrighted Designs were works that were entirely original with DC and that DC owned the certificate of registrations to these works, that this allegation somehow also covered the Batman TV show and movie, which are not original with DC and for which DC does not own the copyright certificate.

Defendant is not contending that Plaintiff's complaint did not state a cause of action. It did. ***But only as to those 35 copyrights listed on Exhibit A to the FAC.*** There is simply no legal precedent that would allow DC to add additional

copyrights to the infringement claim without first amending the complaint.

Plaintiff placed 35 registrations at issue in the FAC and now concedes that

Defendant did not infringe them, as none of the 35 identified were the first to have

the separable, non-functional, artistic elements.

A copyright complaint cannot be treated as a moving target.  If Plaintiff

wanted to put Defendant on notice that it was claiming infringement of copyrights

other than the 35 listed on Exhibit A, the proper method was to file a motion to

amend the complaint and explain to the court (and to Defendant) why these

additional copyrights were not included at the onset of the case. Plaintiff did not do

so and for that reason alone summary adjudication of the copyright infringement

issue should be granted.

**V.** PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR TRADEMARK
INFRINGEMENT BECAUSE PLAINTIFF IS GUILTY OF LACHES

"Laches is an equitable time limitation on a party's right to bring suit, ...

resting on the maxim that 'one who seeks the help of a court of equity must not

sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829,

835 (9th Cir.2002).  "It is well established that laches is a valid defense to [federal]

Lanham Act claims." *Id.* Laches is also a valid defense to Plaintiff's state law

claim for unfair competition.  *Id.* at 342.  A party asserting laches must show that it

suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit. *Id.* at 835.

The 9th Circuit holds that if the lawsuit is filed "after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *Id.* at 837.  It does not matter if some of Defendant's allegedly wrongful conduct occurred during the limitations period, "the presumption of laches is triggered if any part of the wrongful conduct occurred beyond the limitations period." *Id.*

In a case of trademark infringement, the statute of limitations period is three years. Code of Civil Procedure §338.

Here, it is undisputed that DC had *actual knowledge* of Defendant's allegedly infringing activities at least as early as 2005 ( Per Kogan Depo 143:16-25 "Prior to 2006"), and possibly as early as 2003 (Towle Decl. ¶4).  As the Complaint was filed in May 2011, DC knew of Towle's activities at least 5½ and possibly 8 years prior to filing the lawsuit.  And yet in all that time, DC made no effort to stop him or even inform him that DC believed that his actions were infringing, not even sending him a cease and desist letter (Kogan Depo 144:1-19, Towle Decl. ¶5).

DC's unreasonable delay in filing the lawsuit has caused Towle a great deal of damage.  Mr. Towle has spent well over $100,000 building up his business as a custom car manufacturer, including buying expensive equipment used in the

manufacturing of automobile replicas and he is now known as one of the best manufacturers of replica Batmobiles in the United States (Towle Decl. ¶6).  Had DC informed Defendant earlier that they believed his actions were infringing, they could have easily contacted him so that Towle could have decided to take of these issues years ago, before spending the great sums of money on his business. DC cannot wait eight years and then file a lawsuit for trademark infringement.

As the presumption of laches applies, and as Towle has suffered prejudice as a result of DC's failure to file a lawsuit or even to notify him that they objected to his sale of replica Batmobiles, DC's claim of trademark infringement  must fail.

**VI.** THERE IS NO EVIDENCE OF LIKLIHOOD OF CONFUSION

Furthermore, there is no evidence that Defendant's activities cause confusion among consumers.  During Mr. Kogan's deposition, he was unable to identify any individual who purchased a replica Batmobile from Defendant and believed that the car was licensed or authorized by DC.  Nor was he able to identify any consumer who was confused into thinking that Defendant was licensed or authorized by DC.  (Kogan Depo. 72:1-9).

The fact that even though Defendant has been selling replica Batmobiles over 10 years, DC is unable to show any consumer confusion shows that Defendant's activities do not confuse consumers.  The Court should keep in mind that the cars Defendant sells are not $10 toys.  They are full scale working replicas,

23

costing as much as $90,000 and taking upwards of 12 months to build. Certainly, any person who has the money (and the patience) to order the manufacture of a replica Batmobile is not an unsophisticated consumer who does not know what he is purchasing. Defendant has obtained declarations from a number of his customers who all state that they were fully aware that the replica Batmobiles they purchased were not authorized or licensed by DC Comics. (See Declarations of Brian Boling, Seth Katz, Kasey Kuhlman, Joseph Moran and Enrique Segarra). This evidence, combined with the DC's admission that it is unaware of any person who was confused into thinking that Defendant's activities were licensed or authorized by DC, indisputably show that there is no factual issue on the question of whether Defendant's activities are likely to confuse consumers.

Further, it must be noted that while DC has introduced a number of trademark registrations it contends were infringed, DC did not file for a trademark for the mark "Batmobile" in the field of "Automobiles" or for "Custom Manufacturing in the Field of Automobiles" until October 2010 (about 8 months before the instant lawsuit was filed). Both trademark applications were filed on an intent to use basis not an actual use basis. (Ex. 5 to Joint Stip).

The fact that DC has registrations for other goods and services (such as dolls, toys, video games, lunch boxes, etc.) is irrelevant, because the trademark registration only shows Plaintiff's right to use the marks "on the goods and

services specified in the registration." A registered trademark holder's protectable interest is limited to those goods or services described in its registration. *Applied Info. Sciences Corp. v. eBAY, Inc*., 511 F.3d 966, 970 (9th Cir. 2007). There is no evidence that DC has the exclusive right to use the Batmobile mark in connection with cars.

"A defendant may prevail on summary judgment if it shows a lack of any triable issue of fact on likelihood of confusion . . .  Likelihood of confusion is a factual issue, and a court may determine on a defendant's motion for dismissal on summary judgment that no genuine issue of likelihood of confusion exists." 6 *McCarthy on Trademarks and Unfair Competition* § 32:120 (4th Ed.)

Here, the evidence is undisputed that although Defendant has been selling Batmobile replicas for over 10 years, DC is unaware of any person who believed that these replicas were licensed from DC.  As DC has the burden of showing likelihood of confusion, the absence of such evidence is fatal to its' claim.

Accordingly, summary judgment on the issue of trademark infringement should be granted.

DATED: December 26, 2012                    ZernerLaw


By: _____/s/_____
        Larry Zerner
Attorney for Defendant Mark Towle, an
individual and d/b/a Gotham Garage