J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Nicole L. Drey (SBN 250235)
*nicole@coombspc.com*
J. Andrew Coombs, A P. C.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:   (818) 500-3201

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC Comics,<br><br>                    Plaintiff,<br><br>         v.<br><br>Mark Towle, an individual and d/b/a Gotham Garage, and Does 1 through 10, inclusive,<br><br>                    Defendants. | Case No. CV11-3934 RSWL (OPx)<br><br>NOTICE AND MOTION OF PLAINTIFF DC COMICS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date:   January 30, 2013<br>Time:  10:00 a.m.<br>Court:  Hon. Ronald S. W. Lew |

**TO THE COURT AND TO DEFENDANTS:**

**PLEASE TAKE NOTICE THAT,** pursuant to Fed.R.Civ.P. 56, on January 30, 2013, at 10:00 a.m. in Courtroom 21 – 5th Floor of the Hon. Ronald S. W. Lew of the above referenced court, located at 312 N. Spring St., Los Angeles, California 90012, Plaintiff DC Comics ("Plaintiff") will move for entry of partial summary judgment as to liability on its claims for copyright infringement and trademark infringement against Defendant Mark Towle, an individual and d/b/a Gotham Garage ("Defendant").

This motion is based on this Notice and Motion, the Separate Statement of Uncontroverted Facts and Conclusions of Law, and the Declarations of Jay Kogan,

Wayne Smith, and Nicole L. Drey to be filed concurrently herewith and such additional matter as may properly be brought before the Court at or before the hearing of this motion.

Pursuant to Local Rule 7-3, counsel for Plaintiff certifies that the parties met and conferred regarding Plaintiff's proposed motion for summary judgment on or about October 31, 2012.

Dated: December 26, 2012                    J. Andrew Coombs, A Professional Corp.

                                            By:  __/s/ J. Andrew Coombs_____
                                                 J. Andrew Coombs
                                                 Nicole L. Drey
                                            Attorneys for Plaintiff DC Comics

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

STATEMENT OF FACTS .................................................................. 1

ARGUMENT ....................................................................................... 6

I.     Legal Standards Governing Motions for Summary Judgment ...... 6

II.    There Is No Controverted Issue of Fact as to Defendant's Trademark Infringement, Unfair Competition Under the Lanham Act, or Unfair Competition Under California's Common Law .................................. 8

      A.    DC Comics Owns Rights in the DC Comics Trademarks ... 8

      B.    Defendant's Use of DC Comics' Trademarks Has Created a Likelihood of Consumer Confusion ................................... 9

III.   There Is No Controverted Issue of Fact as to Defendant's Copyright Infringement ............................................................................ 14

      A.    DC Comics Owns Copyright Rights to the 1966 Batmobile and the 1989 Batmobile ..................................................... 14

            1.    Copyright Protection Extends to the Overall Look and Feel of the Batmobile ....................................... 15

            2.    Copyright Protection Extends to the Separable, Copyrighted Elements ........................................... 17

      B.    Defendant Violated DC Comics' Exclusive Rights of Reproduction and Distribution ......................................... 19

IV.   Defendant's Infringing Conduct Is Not Excused by Laches ....... 20

CONCLUSION ................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>A&M Records v. Napster, Inc.</u>, 239 F.3d 1004, 1013 (9th Cir. 2001)...................... 15

<u>Acad. Of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.</u>,
944 F.2d 1446, 1456 (9th Cir. 1991) ................................................................ 10, 13

<u>Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.</u>,
616 F.2d 440, 443 (9th Cir. 1990) ............................................................................ 10

<u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979).................. 10-12

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 450 (1986) ...................................... 7

<u>Applied Information Sciences v. eBay, Inc.</u>, 511 F.3d 966, 969 (9th Cir. 2007)......... 8

<u>Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.</u>,
652 F.2d 607, 619-20 (7th Cir. 1982) ....................................................................... 17

<u>Auto. Club of S. Cal. v. Auto club, Ltd.</u>,
Case No. CV 05-3940 RSWL (CWx), 2007 U.S. Dist. LEXIS 19221, at *5 (C.D.
Cal. Mar. 6, 2007) ....................................................................................................... 8

<u>BankAmerica Corp. v. Bamieh</u>, 188 U.S.P.Q. 380, 381 (N.D. Cal. 1975) .......... 11-12

<u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>,
174 F.3d 1036, 1053-54 (9th Cir. 1999)........................................................ 10-11, 14

<u>Boisson v. Banian, Ltd.</u>, 273 F.3d 262, 272 (2d Cir. 2001) ..................................... 18

<u>California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.</u>,
818 F.2d 1466, 1468 (9th Cir. 1987), <u>cert. denied</u> 484 U.S. 1006, 108 S. Ct. 698, 98
L. Ed. 2d 650 (1988) .................................................................................................. 7

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ...................................................6-7

<u>Chosun Int'l, Inc. v. Chrisha Creations, Ltd.</u>, 413 F.3d 324, 328 (2d Cir. 2005) ..... 18

<u>DC Comics, Inc. v. Reel Fantasy, Inc.</u>,
539 F. Supp. 141, 144 (S.D.N.Y. 1982), <u>rev'd on other grounds by</u> 696 F.2d 24
(1982) ........................................................................................................................ 11

<u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 959-60 (9th Cir. 2001) ........................... 22

<u>Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.</u>, 84 F.3d 1143, 1152 (9th Cir. 1996).... 10

<u>E & J Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1291 (9th Cir. 1990)......... 12

<u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1140 (9th Cir. 2002) ........... 10-11

<u>Evergreen Safety Council v. RSA Network Inc.</u>,
2012 U.S. App. LEXIS 21593, at *12 (9th Cir. Oct. 17, 2012). ........................... 21-22

First Brand Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1383 (9th Cir. 1987) ............ 12

Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,
618 F.3d 1025, 1032 (9th Cir. 2010) ..................................................................... 12-13

Gaiman v. McFarlane, 360 F.3d 644, 649-50 (7th Cir. 2004) ................................... 15

Geoffrey, Inc. v. Stratton,
1990 U.S. Dist. LEXIS 19504, at *10 (C.D. Cal. July 25, 1990) ............................. 11

GoTo.com v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) ................. 10-12

Halicki Films, LLC v. Sanderson Sales & Mktg.,
547 F.3d 1213, 1224-25 (9th Cir. 2008) .......................................................... 8-9, 15-17

Halicki v. Caroll Shelby International, et al.,
Case No. 04-8813 SJO (PJWx), Order Regarding Issues Remanded from the Ninth
    Circuit, Docket No. 330, filed August 12, 2009 ("Halicki Remand") .................. 17

Hampton v. Paramount Pictures Corp., 279 F.2d 100, 105 (9th Cir. 1960) .............. 22

Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989) .......................................... 7

Hokto Kinoko Co. v. Concord Farms, Inc.,
810 F. Supp. 2d 1013, 1031-32 (C.D. Cal. 2011) ........................... 8, 10-12, 14, 20-22

Hooper v. Frank, 16 F.3d 92 (5th Cir. 1994) ........................................................... 7-8

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002) .... 21

Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.,
285 F.3d 848, 854 (9th Cir. 2002) ....................................................................... 10, 13

Kikker 5150 v. Kikker 5150 United States, LLC,
Case No. C 03-5515 SI, 2004 U.S. Dist. LEXIS 16859, at * 26 (N.D. Cal. Aug. 13,
    2004 ...................................................................................................................... 18

Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1196-97 (9th Cir. 2009) ........................... 9

Leicester v. Warner Bros., 232 F.3d 1212, 1219, n.3 (9th Cir. 2000) ....................... 18

Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir. 1980) ................ 13

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) ................................... 7

Lujan v. National Wildlife Fed'n,
497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ................................ 8

M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005) ............. 14

Mallard Creek v. Gary Morgan, 56 Cal. App. 4th 426, 434-35 (1997) .................... 10

Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) ...................... 7-8

McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1132 (2d Cir. 1979)........ 11

Morgan Creek Productions, Inc. v. Capital Cities/ABC, Inc.,
Case No. CV-89-5463-RSWL (JRx), 1991 U.S. Dist. LEXIS 20564, at *21 (C.D.
   Cal. Oct. 28, 1991) ................................................................... 12

New West Corp. v. NYM Co. of California, Inc.,
595 F.2d 1194, 1201 (9th Cir. 1979). .......................................... 8-10, 14

Norris Indus. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 923 (11th Cir. 1983) ............ 18

Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993)................. 14

Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1452 (9th Cir. 1988)............................ 16

One Indus., LLC v. Jim O'Neal Distrib., 578 F.3d 1154, 1162 (9th Cir. 2009) ... 10-11

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2006)............. 15

Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003)........................ 16

Sanders v. Parker Drilling Co., 911 F.2d 191, 194 (9th Cir. 1990)........................... 11

Sturdza v. Gov't of the United Arab Emirates,
281 F.3d 1287, 1296 (D.D.C. 2002)............................................. 17-18

United Feature Syndicate, Inc. v. Cornwell Indus.,
Case No. 77-3291-DWW, 1981 U.S. Dist. LEXIS 17859 (C.D. Cal. Dec. 9, 1981) 16

Vigil v. Walt Disney Co.,
Case No. C-95-1790-MHP, 1995 U.S. Dist. LEXIS 15560, at *5 (N.D. Cal. Oct. 16,
   1995)............................................................................................ 8

Walt Disney Productions v. Air Pirates,
581 F.2d 751, 755 & n.10 (9th Cir. 1978) ................................................. 16

Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000)................................... 10

Warner Bros., Inc. v. Rooding,
1989 U.S. Dist. LEXIS 7728, at **4-6 (N.D. Ill. June 30, 1989) ...................... 9, 12

Yellow Cab Co. of Sacramento v. Yello Cab. Co. of Elk Grove,
419 F.3d 925, 927 (9th Cir. 2005). .......................................................... 8

## STATUTES

15 U.S.C. § 1114.....................................................................................8-9

15 U.S.C. § 1115......................................................................................... 8

15 U.S.C. § 1125......................................................................................... 9

17 U.S.C. § 101.................................................................................... 15, 18

17 U.S.C. § 201 ...................................................................................... 15

17 U.S.C. § 501 ...................................................................................... 15

**RULES**

Fed. R. Civ. P. 56(c) (former) ................................................................ 7

**OTHER**

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* at § 11:43 ........ 11

3 Melville B. Nimmer & David Nimmer,
*Nimmer on Copyright* § 12.06, at 12-126 (2000) ...................................... 22

# INTRODUCTION

Defendant Mark Towle, an individual and d/b/a www.gothamgarage.net ("Defendant"), is an individual who usurps the creative talents and commercial exploits of others, namely DC Comics, its employees, and licensors and licensees.[1] Defendant brazenly manufactures and distributes exact replicas of DC Comics' copyrighted properties, flagrantly using DC Comics' trademarks to sell his unauthorized wares.  Accordingly, DC Comics has been left no choice but to litigate this matter and now moves for partial summary judgment on its trademark infringement, unfair competition, and copyright infringement claims as well as Defendant's intended laches defense.  No disputed issues of material fact exist such that an order in DC Comics' favor is entirely warranted.

# STATEMENT OF FACTS

DC Comics is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York.  Separate Statement of Uncontroverted Facts and Conclusions of Law ("SS") at ¶ 1. DC Comics is the successor-in-interest to Detective Comics, Inc., National Comics Publications, Inc., National Periodical Publications, Inc. and DC Comics Inc. Id. at ¶ 2. (DC Comics, Detective Comics, Inc., National Comics Publications, Inc., National Periodical Publications, Inc. and DC Comics Inc. are individually and collectively referred to hereafter as "DC Comics.")

DC Comics is engaged in the business of publishing comic magazines and is among the most well-known and successful publishers of comic magazines in the world.  SS at ¶ 3.  One of DC Comics' most famous and popular characters is BATMAN. Id. at ¶ 4.  BATMAN first appeared in the May 1939 issue of "Detective

---

[1] DC Comics' copyright and trademark rights to the properties identified herein are direct in terms of being created by DC Comics, direct in terms of the rights being retained by DC Comics, and indirect in terms of the merchandising rights being granted to DC Comics. The Court can find for DC Comics on any one of these three bases.

1   Comics." <u>Id.</u> at ¶ 5.  BATMAN was created as a work made for hire for DC Comics,

2   and all right, title and interest in the character and associated elements is owned by

3   DC Comics.  <u>Id.</u> at ¶ 6.

4       BATMAN has appeared in numerous comic books, including "Batman" and

5   "Detective Comics."  SS at ¶ 7.  Numerous related characters and other original and

6   fanciful elements have since appeared in the BATMAN comic books as well,

7   including, but not limited to, the BAT Emblem, the BAT REP II, and variations on

8   the BAT Symbol.  <u>Id.</u> at ¶ 8.  One of the most famous identifiable elements

9   associated with BATMAN is a high-tech extraordinary automobile identified as the

10  BATMOBILE. <u>Id.</u> at ¶ 9.  The BATMOBILE was originally introduced in 1941 and

11  has undergone many transformations over the years, including various versions in

12  design and style ("Batmobile Vehicles").  <u>Id.</u> at ¶ 10.  DC Comics is the owner of all

13  rights under copyright in and to various comic books in which the Batmobile has

14  appeared.  <u>Id.</u> at ¶¶ 11-12.  DC Comics, in its own right or as successor-in-interest,

15  has at all times been and still is the sole proprietor or otherwise authorized to enforce

16  all right, title and interest in and to the copyrights of the various BATMAN

17  characters and associated elements, Batmobile Vehicles, and all comic books in

18  which any of the foregoing have appeared.  <u>Id.</u> at ¶ 11.

19      In 1965, DC Comics contracted with American Broadcasting Company

20  ("ABC") to license its BATMAN character and associated elements for use in a

21  television series.  SS at ¶ 13.  DC Comics reserved all copyright rights in and to the

22  characters and elements depicted in the television series to be produced.  <u>Id.</u> at ¶ 14.

23  ABC then contracted with Greenway Productions, Inc. ("Greenway") and Twentieth

24  Century-Fox Television, Inc. ("Fox") to produce the television series.  <u>Id.</u> at ¶ 15.

25  Greenway and Fox have duly registered all episodes of the *Batman* television series

26  with the U.S. Copyright Office.[2]  <u>Id.</u> at ¶ 16.

27  _____

[2] Defendant has indicated that he objects to the admission of the copyright

28  registration certificates because they were not produced until two (2) days after the

discovery cutoff.  These documents, however, were not within the possession,

One of the BATMAN-associated elements licensed to Greenway and Fox was a depiction of the Batmobile Vehicles to be featured in the 1966 television program ("the 1966 Batmobile"). SS at ¶ 17. The 1966 Batmobile was based on, and was a derivative work of, an evolution of the Batmobile Vehicles over the course of the comics. Id. at ¶ 18. Barris Kustom City ("Barris") manufactured the 1966 Batmobile and retained title to the original vehicle. Id. at ¶ 19. All copyright and trademark rights to the 1966 Batmobile were retained by DC Comics, which was reaffirmed in a 1966 agreement between DC Comics, Fox, Greenway, and Barris. Id. at ¶ 20. Certain elements of the Batmobile Vehicles which had appeared in the comic books were included in the design of the 1966 Batmobile. Id. at ¶ 21. Further, certain specifications required for the 1966 Batmobile were outlined in the manufacturing agreement between Barris, Fox and Greenway. Id. at ¶ 22. All rights to those elements were retained by DC Comics. Id. at ¶ 23. In addition, as expressly outlined in its agreement with ABC, DC Comics was granted the exclusive merchandising rights to the BATMAN-related elements featured in the 1966 television program, including the 1966 Batmobile. Id. at ¶ 24.

In 1979, DC Comics again granted use of its BATMAN properties, this time to Batman Productions, Inc., for use in feature-length motion pictures. SS at ¶ 25. These rights were subsequently assigned to Warner Bros. Inc. ("Warner Bros."), which produced the first of many BATMAN films in 1989, entitled *Batman*. Id. at ¶¶ 26-27. Warner Bros. has duly registered the 1989 film with the U.S. Copyright Office. Id. at ¶ 28.

DC Comics' license for the use of its BATMAN properties included a license for a depiction of the Batmobile Vehicles to be featured in the 1989 motion picture

---

custody, or control of DC Comics until that date, as DC Comics was not the registrant and had to request that the U.S. Copyright Office pull the certificates from storage, at which time DC Comics promptly forwarded the certificates to Defendant, who was on notice well before the discovery cutoff as to DC Comics' identification and impending production of the copyright registrations as well as the specific registration numbers of the certificates to be produced.

("the 1989 Batmobile").  SS at ¶ 29.  The 1989 Batmobile was based on, and was a derivative work of, an evolution of the Batmobile Vehicles over the course of the comics.  Id. at ¶ 30.  Anton Furst was hired to construct the 1989 Batmobile.  Id. at ¶ 30.  All copyright and trademark rights to the 1989 Batmobile were retained by DC Comics.  Id. at ¶ 32.  Certain elements of the Batmobile Vehicles which had appeared in the comic books were included in the design of the 1989 Batmobile.  Id. at ¶ 33.  Exclusive merchandising rights for all elements contained in the 1989 *Batman* film, including any new characters or elements, specifically including the 1989 Batmobile, were granted to DC Comics.  Id. at ¶ 34.

DC Comics is the owner of various BATMAN-related trademarks, including, but not limited to, BATMOBILE, the BAT Emblem, the BAT REP II, BATMAN, and various stylized variations of the BAT symbol, specifically including and (collectively "the DC Comics Trademarks").  SS at ¶ 35.  Since 1939, DC Comics, or its predecessor-in-interest, has continuously used in commerce the DC Comics Trademarks in connection with its comic books and merchandising as well as in connection with television programs and motion pictures produced under license.  Id. at ¶ 36.  Among the merchandise using the DC Comics Trademarks are toys, including figurines and automobiles, apparel, and household goods.  Id. at ¶ 37.  DC Comics also contracted with Barris to produce multiple replicas of the 1966 Batmobile, which featured the DC Comics Trademarks, and exhibit them throughout the world.  Id. at ¶ 38.  DC Comics currently licenses to Fiberglass Freaks the manufacture and customization of full-size automobiles into the Batmobile Vehicles, featuring the DC Comics Trademarks.  Id. at ¶ 39.

DC Comics has registered the DC Comics Trademarks in various classes, including, the following (SS at ¶ 40):

| Mark | Reg. Nos. | Filing Date | Reg. Date | Class |
|---|---|---|---|---|
| Bat Emblem | 1581725<br>1581593<br>1581659<br>2119266 | 6/19/89<br>6/19/89<br>6/19/89<br>8/12/96 | 2/6/90<br>2/6/90<br>2/6/90<br>12/9/97 | 28<br>21<br>25<br>16 |
| Bat Emblem (Batman Begins) | 3299017<br>3110604<br>3326043<br>3313612 | 3/25/05<br>3/25/05<br>3/25/05<br>3/25/05 | 9/25/07<br>6/27/06<br>10/30/07<br>10/16/07 | 9<br>16<br>25<br>28 |
| Bat Rep II | 1219120 | 3/26/82 | 12/7/82 | 16 |
| Batman (Word Mark) | 856045<br>858860<br>828412<br>2457655<br>1652640<br>839561<br>1221720<br>1587507 | 4/6/67<br>10/13/66<br>10/13/66<br>1/23/98<br>1/23/89<br>10/17/66<br>5/10/82<br>1/23/89 | 9/3/68<br>10/22/68<br>5/9/67<br>6/5/01<br>7/30/91<br>11/28/67<br>12/28/82<br>3/20/90 | 25<br>28<br>21<br>41<br>41<br>16<br>16<br>9 |
| Batmobile (Word Mark) | 4246497<br>1124961<br>1179342<br>Serial No.<br>85143617 | 10/1/10<br>12/3/75<br>10/15/76<br>10/1/10 | 11/20/12<br>9/11/79<br>11/24/81<br>Pending | 40<br>28<br>28<br>12 |

DC Comics, or any predecessor-in-interest, has complied in all respects with the laws governing trademark.  Id. at ¶ 41.  Consumers unquestionably associate BATMAN-related products with DC Comics or its licensees.  Id. at ¶ 42

Defendant is an individual residing within the Central District of California.  SS at ¶ 43.  Defendant operates the business Gotham Garage, which specializes in the customization of automobiles into replicas of automobiles featured in various motion pictures or television programs.  Id. at ¶ 44.  Among the vehicles Defendant

has reproduced and distributed are replicas of the 1966 Batmobile and the 1989 Batmobile.  Id. at ¶¶ 45, 47-48, 50.  Defendant has also manufactured and distributed car kits that allow others to customize their vehicles into the 1966 Batmobile and the 1989 Batmobile.  Id. at ¶¶ 46-47, 49-50.  In addition, Defendant has manufactured and distributed various automobile parts and accessories featuring the DC Comics Trademarks.  Id. at ¶ 51.  Defendant does business through the website located at www.gothamgarage.net ("the Website").  Id. at ¶ 52.  Defendant directs Internet users to the Website through the use of the DC Comics Trademarks in the meta tags for the Website.  Id. at ¶¶ 52-53.  Defendant's advertisements and offers for sale prominently use DC Comics' copyrights and trademarks to promote Defendant's business.  Id. at ¶ 53.  Defendant has admitted his knowledge of the BATMAN property, including the 1966 television series *Batman*, the 1989 film *Batman*, the 1966 Batmobile, the 1989 Batmobile, and the various BAT emblems and symbols used in connection therewith.  Id. at ¶ 54.

Defendant is not authorized by DC Comics to manufacture, sell, offer for sale, distribute or otherwise reproduce any products bearing DC Comics' copyrights or trademarks.  SS at ¶ 55.  All of the products manufactured or sold by Defendant are unauthorized.  Id. at ¶ 56.

## ARGUMENT

## I.   Legal Standards Governing Motions for Summary Judgment.

Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) citing former Fed. R. Civ. P. 56(c).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate no reasonable trier of fact could find other than for the moving party.  Id.  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56 "specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 450 (1986).  "This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible."  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989), citing Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  The "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  Harper, 877 F.2d at 731, citing California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988).

The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994), quoting Matsushita, 475 U.S. at 586, Hooper v. Frank, 16 F.3d 92 (5th Cir. 1994) and Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586.

**II.** **There Is No Controverted Issue of Fact as to Defendant's Trademark Infringement, Unfair Competition Under the Lanham Act, or Unfair Competition Under California's Common Law.**

There is no dispute that Defendant has infringed the DC Comics Trademarks. To succeed on a claim under the Lanham Act, a plaintiff must establish that its mark is valid and has been infringed.  15 U.S.C. § 1114; Applied Information Sciences v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).  "[C]ourts have [also] uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition." Hokto Kinoko Co. v. Concord Farms, Inc., 810 F. Supp. 2d 1013, 1031-32 (C.D. Cal. 2011), citing New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979).  Accordingly, the same standards apply in adjudicating both trademark infringement and unfair competition claims.

**A.** **DC Comics Owns Rights in the DC Comics Trademarks.**

Registration of a mark on the principal register is "prima facie evidence… of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce…" 15 U.S.C. § 1115(a); Vigil v. Walt Disney Co., Case No. C-95-1790-MHP, 1995 U.S. Dist. LEXIS 15560, at *5 (N.D. Cal. Oct. 16, 1995); Applied Information Sciences, 511 F.3d at 970.  The burden is on Defendant to prove that a registered mark is not afforded protection. Auto. Club of S. Cal. v. Auto club, Ltd., Case No. CV 05-3940 RSWL (CWx), 2007 U.S. Dist. LEXIS 19221, at *5 (C.D. Cal. Mar. 6, 2007) citing Yellow Cab Co. of Sacramento v. Yello Cab. Co. of Elk Grove, 419 F.3d 925, 927 (9th Cir. 2005).  "A valid ownership interest in a mark (for any product class) is sufficient, although not necessary, to provide standing to sue for infringement of that mark." See Halicki Films, LLC v. Sanderson Sales & Mktg., 547 F.3d 1213, 1225 (9th Cir. 2008) citing 15 U.S.C. §§ 1114(1), 1125(a). DC Comics owns valid and effective trademark registrations for the DC Comics Trademarks in various classes on the principal register.  Defendant has not and cannot introduce any reasonable disputed fact undercutting this ownership.

Additionally, DC Comics has continuously used the DC Comics Trademarks in commerce for decades such that DC Comics owns common law trademark rights in and to the DC Comics Trademarks (as well as any unregistered variations).  See Warner Bros., Inc. v. Rooding, 1989 U.S. Dist. LEXIS 7728, at **4-6 (N.D. Ill. June 30, 1989) (noting the ongoing merchandising efforts of DC Comics and the international fame of the BATMAN property).  Trademark registration is not prerequisite to a claim of trademark infringement.  Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1196-97 (9th Cir. 2009) (citations omitted).  Rather, the senior user of a trademark can enforce its rights against any junior users using confusingly similar marks in a similar industry or within the senior user's natural zone of expansion.  See New West Corp., 595 F.2d at 1200-01.

In the instant case, DC Comics is clearly the senior user, having introduced the BATMAN character in 1939 with the BATMOBILE closely following in 1941.  The respective logos and other elements constituting the DC Comics Trademarks naturally followed over the ensuing decades and well before Defendant's adopted use of any similar trademarks.  See Rooding, 1989 U.S. Dist. LEXIS 7728, at **4-6 (N.D. Ill. June 30, 1989).  DC Comics has used the Trademarks in various classes, including in the class of goods and services in which Defendant uses the infringing marks.  Accordingly, DC Comics has superior trademark rights to Defendant.

## B.   Defendant's Use of DC Comics' Trademarks Has Created a Likelihood of Consumer Confusion.

Once ownership is established, the test for trademark infringement (and unfair competition) is whether the alleged infringing act creates a likelihood of confusion.  GoTo.com v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000); Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1053-54 (9th Cir. 1999); see also Denbicare U.S.A., Inc. v. Toys "R" Us, Inc., 84 F.3d 1143, 1152 (9th Cir. 1996) (likelihood of confusion test applies to both statutory and common law trademark infringement); Mallard Creek v. Gary Morgan, 56 Cal. App.

4th 426, 434-35 (1997) (same); Hokto Kinoko Co., 810 F. Supp. 2d at 1031-32 citing New West Corp., 595 F.2d at 1201.  A likelihood of confusion "exists 'whenever consumers are likely to assume that a mark is associated with another source' because of similarities between two marks." Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 854 (9th Cir. 2002) quoting Acad. Of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991).

     To evaluate the likelihood of confusion, the Ninth Circuit examines the Sleekcraft factors: "(1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) intent in selecting mark; and (8) likelihood of expansion." Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000) citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).  Of those factors, the Ninth Circuit considers the first three to be the most important and notes that it is often possible to reach a conclusion with respect to likelihood of confusion upon only considering a subset of the factors.[3]  See One Indus., LLC v. Jim O'Neal Distrib., 578 F.3d 1154, 1162 (9th Cir. 2009); GoTo.com, 202 F.3d at 1205; Brookfield Communications, Inc., 174 F.3d at 1054 (9th Cir. 1999).  The Sleekcraft factors are also non-exhaustive. One Indus., LLC, 578 F.3d at 1162.

     (1) Strength of the mark: The DC Comics Trademarks are unquestionably strong both conceptually and commercially.  The BAT Emblem, BAT REP II, and

_____

[3] The circumstances of a particular case determine whether likelihood of confusion can be adjudicated as a matter of law. See Hokto Kinoko Co. v. Concord Farms, Inc., 810 F. Supp. 2d 1013, 1029 (C.D. Cal. 2011) citing Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443 (9th Cir. 1990); but see Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002) (summary judgment is generally disfavored for trademark infringement claims). If reasonable minds cannot differ, permitting only one conclusion on the evidence, then summary judgment is appropriate. Hokto Kinoko, 810 F. Supp. 2d at 1029 citing Sanders v. Parker Drilling Co., 911 F.2d 191, 194 (9th Cir. 1990).

variations on the BAT symbols are all fanciful pictorial logos that immediately convey to a consumer that the product in question comes from DC Comics.  <u>See Hokto Kinoko Co.</u>, 810 F. Supp. 2d at 1030 (finding drawings used as trademarks significantly distinct, supporting a finding of a likelihood of confusion).  Further, the terms BATMAN and BATMOBILE are both arbitrary and fanciful words referring to very specific elements portrayed in DC Comics' comic books, motion pictures, and television programs as well as on DC Comics' related merchandise.  <u>DC Comics, Inc. v. Reel Fantasy, Inc.</u>, 539 F. Supp. 141, 144 (S.D.N.Y. 1982), <u>rev'd on other grounds by</u> 696 F.2d 24 (1982), <u>citing</u> <u>McGregor-Doniger, Inc. v. Drizzle, Inc.</u>, 599 F.2d 1126, 1132 (2d Cir. 1979).  These trademarks are each registered in numerous classes with the U.S.P.T.O.  <u>See</u> J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* at § 11:43 (trademark registration is *prima facie* evidence that a mark is not merely descriptive).

The DC Comics Trademarks have also been used in commerce for decades and have acquired secondary meaning in the minds of the consuming public.  <u>See Geoffrey, Inc. v. Stratton</u>, 1990 U.S. Dist. LEXIS 19504, at *10 (C.D. Cal. July 25, 1990), <u>citing</u> <u>BankAmerica Corp. v. Bamieh</u>, 188 U.S.P.Q. 380, 381 (N.D. Cal. 1975) ("As a result of plaintiff's long and continuous usage, the presumption of secondary meaning is rendered irrefutable."); <u>Rooding</u>, 1989 U.S. Dist. LEXIS 7728, at **4-6 (N.D. Ill. June 30, 1989).  When a consumer sees one of the DC Comics Trademarks or colorable imitations thereof, he or she immediately associates the respective product with the BATMAN property and DC Comics.  <u>See Morgan Creek Productions, Inc. v. Capital Cities/ABC, Inc.</u>, Case No. CV-89-5463-RSWL (JRx), 1991 U.S. Dist. LEXIS 20564, at *21 (C.D. Cal. Oct. 28, 1991) <u>citing</u> <u>First Brand Corp. v. Fred Meyer, Inc.</u>, 809 F.2d 1378, 1383 (9th Cir. 1987) (secondary meaning acquired if trademark is associated with a single source, even in the public does not know the source by name). "The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark

is accorded by trademark laws." <u>GoTo.com</u>, 202 F.3d at 1207; <u>see also</u> <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.</u>, 618 F.3d 1025, 1032 (9th Cir. 2010).

(2) <u>Proximity or relatedness of the goods</u> and (3) <u>Similarity of the marks</u>: The second and third factors also weigh clearly in favor of DC Comics.  "Where goods are related or complementary, the danger of consumer confusion is heightened." <u>E & J Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1291 (9th Cir. 1990).  "When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected."  <u>Sleekcraft</u>, 599 F.2d at 348.

Here, the goods are not merely related or complementary, they are the same.  <u>See</u> <u>Hokto Kinoko Co.</u>, 810 F. Supp. 2d at 1030 (proximity of goods factor weighed in favor of likelihood of confusion when plaintiff and defendant sold same type of product).  Defendant admits that he makes replicas (and car kits facilitating others to make replicas) of the Batmobile Vehicles.  Defendant's replicas feature variations on the Bat symbol that have been used in connection with DC Comics' manufacture, distribution, and exhibition of the Batmobile Vehicles.  These variations are also confusingly similar to DC Comics' BAT Emblem and BAT REP II marks.  Defendant identifies his automobiles as BATMOBILES, the same term that DC Comics uses to refer to its full-size and toy versions of automobiles.  Defendant also manufactures and distributes car parts or accessories, a logical extension of the vehicles themselves, featuring and using the same trademarks along with confusingly similar likeness of the BAT Emblem, BAT Emblem (Batman Begins), BAT REP II, and BAT Symbol.  Moreover, in promoting these products, Defendant has used the BATMOBILE, BAT Emblem, BAT REP II, variations of the BAT symbol, and BATMAN trademarks on his advertising and promotional materials, including on his Website and in the meta tags therefor.  Thus, these factors definitively favor DC Comics.

1    (4) <u>Evidence of actual confusion</u>: Evidence of actual confusion is not

2  necessary for a finding of a likelihood of confusion.  Further, the fact that

3  Defendant's customers allegedly knew they were not getting DC Comics product

4  from Defendant is irrelevant.  "'[P]ost-purchase confusion,' i.e., confusion on the

5  part of someone other than the purchaser who, for example, simply sees the item

6  after it has been purchased, can establish the required likelihood of confusion." <u>Karl

7  Storz Endoscopy-Am., Inc.</u>, 285 F.3d at 854 <u>citing</u> <u>Acad. Of Motion Picture Arts and

8  Sciences</u>, 944 F.2d at 1456; <u>Levi Strauss & Co. v. Blue Bell, Inc.</u>, 632 F.2d 817, 822

9  (9th Cir. 1980); <u>see also</u> <u>Fortune Dynamic, Inc.</u>, 618 F.3d at 1032.  The DC Comics

10  Trademarks are so linked to the BATMAN property and DC Comics in the minds of

11  consumers that Defendant's unauthorized products, using the DC Comics

12  Trademarks, will unquestionably confuse any third-party observers.

13    (5) <u>Marketing channels</u>: Defendant advertises his unauthorized products on the

14  Internet and in various publications.  Defendant also uses the DC Comics

15  Trademarks in the meta tags of his Website to unfairly drive traffic to his Website.

16  Further, Defendant exhibits his vehicles at various car shows to promote his

17  business.  DC Comics, or its licensees, market its business using the same channels,

18  clearly weighing this factor in favor of DC Comics.

19    (6) <u>Type of goods and degree of purchaser care</u>: Defendant is duplicating DC

20  Comics' products and Trademarks such that post-purchase consumers will not be

21  able to differentiate between illegal and illegitimate products regardless of the level

22  of care exercised.

23    (7) <u>Intent in selecting mark</u>: Defendant admits his knowledge of the

24  BATMAN property and associated elements, including the Batmobile Vehicles and

25  the DC Comics Trademarks.  <u>See</u> <u>Hokto Kinoko Co.</u>, 810 F. Supp. 2d at 1031 (use of

26  the same trademark permits an inference of intent to deceive the public and cause a

27  likelihood of confusion) (citations omitted).  When the alleged infringer knowingly

28  adopts a mark similar to another's, the Ninth Circuit has stated that a likelihood of

1    confusion can be presumed.  See M2 Software, Inc. v. Madacy Entm't, 421 F.3d

2    1073, 1085 (9th Cir. 2005); Brookfield Communications, Inc., 174 F.3d at 1059

3    citing Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993).

4         (8) Likelihood of expansion: Defendant is currently operating (and using DC

5    Comics' trademarks) in the same market as DC Comics.  Thus, this factor has

6    already been satisfied.

7         Therefore, it is clear that a likelihood of confusion exists as a matter of law.

8    Accordingly, summary judgment as to DC Comics' trademark claims and unfair

9    competition claims should be granted.[4]

10   **III.   There Is No Controverted Issue of Fact as to Defendant's Copyright**

11   **Infringement.**

12        There is no material dispute that Defendant has infringed DC Comics'

13   exclusive copyright rights in the Batmobile Vehicles.  Copyright infringement is

14   established by showing (1) ownership of the copyright and (2) violation of an

15   exclusive right by the defendant.  17 U.S.C. § 501(a); Perfect 10, Inc. v.

16   Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2006); A&M Records v. Napster,

17   Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  DC Comics owns valid copyrights to the

18   Batmobile Vehicles, and Defendant admits his manufacture of replicas of the

19   Batmobile Vehicles.

20   **A.     DC Comics Owns Copyright Rights to the 1966 Batmobile and the**

21   **1989 Batmobile.**

22        DC Comics is the undisputed owner of the BATMAN property and all

23   associated elements, including the Batmobile Vehicles.  See Gaiman v. McFarlane,

24   360 F.3d 644, 649-50 (7th Cir. 2004), citing 17 U.S.C. §§ 101, 201(b) (noting DC

25   ────────────────────
26   [4] Courts have uniformly held that the tests for trademark infringement and unfair
     competition are identical.  Hokto Kinoko Co., 810 F. Supp. 2d at 1032 quoting New
27   West Corp., 595 F.2d at 1201 ("Whether we call the violation infringement, unfair
     competition or false designation of origin, the test is identical- is there a 'likelihood
     of confusion?'").  Having satisfied the elements for trademark infringement, it
28   necessarily follows that DC Comics has established it is entitled as a matter of law to
     a ruling on its unfair competition claim as well.

Comics' ownership of the copyrights of the artistic works produced by their "work for hire" employees contained in DC Comics' publications).  Both the 1966 Batmobile and the 1989 Batmobile were simply iterations and derivative works of the evolving BATMOBILE design since its origination in 1941.  All of the comic books in which the Batmobile Vehicles have appeared have been duly registered with the U.S. Copyright Office.

Moreover, when DC Comics licensed use of the BATMAN property in connection with the 1966 television series and the 1989 motion picture, it explicitly reserved all rights to the copyrighted characters and elements contained therein.  See Halicki Films, LLC, 547 F.3d at 1224-25 (license for use of properties in a motion picture contained a reservation of rights as to the Eleanor vehicle thereby conferring copyright standing to the plaintiffs).  In addition, DC Comics was granted exclusive merchandising rights to all elements, including the Batmobile Vehicles, contained in the 1966 television series, copyrighted by Greenway and Fox, and the 1989 motion picture, copyrighted by Warner Bros.  These reservations of rights are clear and unambiguous, and Defendant cannot introduce any material dispute as to DC Comics' ownership of any copyrightable elements contained in the 1966 television series and the 1989 motion picture.  Therefore, any elements constituting copyrightable subject matter are owned by DC Comics.

> **1.    Copyright Protection Extends to the Overall Look and Feel of the Batmobile.**

Copyright protection extends to the 1966 Batmobile and the 1989 Batmobile. Characters visually depicted in comic books, motion pictures or television programs may be afforded copyright protection if they are sufficiently distinctive.  Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1452 (9th Cir. 1988); Walt Disney Productions v. Air Pirates, 581 F.2d 751, 755 & n.10 (9th Cir. 1978); Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003).  This protection can extend to characters regardless of whether they are human or even can speak.  See, e.g., Air Pirates, 581

F.2d 751 (9th Cir. 1978) (affording copyright protection to Mickey Mouse, Minnie Mouse, Donald Duck, the Big Bad Wolf, the Three Little Pigs, Goofy, Toby Tortoise, and Max Hare, among others); <u>United Feature Syndicate, Inc. v. Cornwell Indus.</u>, Case No. 77-3291-DWW, 1981 U.S. Dist. LEXIS 17859 (C.D. Cal. Dec. 9, 1981) (affording copyright protection to Peanuts characters, including Snoopy and Woodstock). Protection can be extended to vehicles as well. <u>See</u> <u>Halicki Films, LLC</u>, 547 F.3d at 1224-25.

In <u>Halicki Films</u>, the plaintiffs sued the defendants for creating full-size working replicas of the Eleanor automobile, a vehicle modified to resemble a 1967 Shelby GT-500, featured in the 2000 film *Gone In 60 Seconds*. <u>Id.</u> at 1218. While the district court granted summary judgment to the defendants, the Ninth Circuit vacated and remanded, ordering the district court to determine whether Eleanor was entitled to copyright protection as a character. <u>Id.</u> at 1225. In doing so, the Ninth Circuit noted that Eleanor "display[s] consistent, widely identifiable traits" and is "especially distinctive." <u>Id.</u> The Court also noted the importance that Eleanor was referred to by name during the course of the film. <u>Id.</u> Upon remand, the district court ruled that material issues of fact existed as to whether Eleanor was a copyrightable character, finding that a "reasonable jury could find that 'Eleanor' is an 'especially distinct' character … such that copyright protection is merited" (internal citation omitted). <u>Halicki v. Caroll Shelby International, et al.</u>, Case No. 04-8813 SJO (PJWx), Order Regarding Issues Remanded from the Ninth Circuit, Docket No. 330, filed August 12, 2009 ("Halicki Remand") at p. 15.

The Batmobile Vehicles are even more inherently distinctive and widely identifiable than Eleanor. These are not merely vehicles with customized paint and trimmings; these are interactive, highly advanced automobiles equipped with futuristic gadgetry and aesthetics uncommon to vehicles of their time.[5] The

---

[5] A number of these features are listed in the section re the separable, copyrightable element, *infra*. While some of these features, such as the mobile phone of the 1966

1   Batmobile Vehicles are never referred to simply as "cars" but rather always by

2   name – BATMOBILE. They interact with the BATMAN and ROBIN characters and

3   serve as integral parts of the stories being told by the respective comic books,

4   television programs and motion pictures in which they appear.  Thus, the Batmobile

5   Vehicles are entitled to copyright protection.

6       Moreover, in addition to protection as distinctive characters, the overall "look

7   and feel" of the Batmobile Vehicles is also protected under copyright. See Atari, Inc.

8   v. North Am. Philips Consumer Elecs. Corp., 652 F.2d 607, 619-20 (7th Cir. 1982);

9   Sturdza v. Gov't of the United Arab Emirates, 281 F.3d 1287, 1296 (D.D.C. 2002)

10   citing Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001); Identity Arts v.

11   Best Buy Enter. Serv., Inc., Case No. C 05-4656 PJH, 2007 U.S. Dist. LEXIS 32060,

12   at *72 (N.D. Cal. Apr. 18, 2007).  Even the "look and feel" of functional articles can

13   be afforded copyright protection as "protectable expression may arise through the

14   ways in which artists combine even unprotectible elements."  Sturdza, 281 F.3d at

15   1296 citing Boisson, 273 F.3d at 272.

16       In the instant case, various elements have been combined in manners that

17   make the Batmobile Vehicles inherently distinctive and pieces of original artistic

18   expression.  The Batmobile Vehicles appeared in comic books, films and television

19   programs as elements of pieces of art. Their functionality is simply a by-product of

20   Defendant's creation of three-dimensional versions of DC Comics' two-dimensional

21   copyrighted works, and accordingly, the overall look and feel of the Batmobile

22   Vehicles should be protected.

23       **2.      Copyright Protection Extends to the Separable, Copyrighted**

24           **Elements.**

25       Finally, copyright protection also exists for design elements that can be

26   physically or conceptually separated from an underlying useful article.  Leicester v.

27   
28   Batmobile, may be more commonplace now, at the time of their introduction, they
    were regarded as innovative sci-fi elements.

1   Warner Bros., 232 F.3d 1212, 1219, n.3 (9th Cir. 2000); Chosun Int'l, Inc. v. Chrisha

2   Creations, Ltd., 413 F.3d 324, 328 (2d Cir. 2005); Norris Indus. v. Int'l Tel. & Tel.

3   Corp., 696 F.2d 918, 923 (11th Cir. 1983); see also 17 U.S.C. § 101.  Vehicle parts,

4   including those designed to be non-functional on a specific vehicle type, can be

5   afforded copyright protection.  Kikker 5150 v. Kikker 5150 United States, LLC,

6   Case No. C 03-5515 SI, 2004 U.S. Dist. LEXIS 16859, at * 26 (N.D. Cal. Aug. 13,

7   2004).

8         In the instant matter, DC Comics has identified a number of features of the

9   1966 Batmobile, which are separable, non-functional, artistic elements – namely, the

10  unique Batface grill work; double cockpit arch; exaggerated rear-sculpted Bat-fins; a

11  non-functional jet engine exhaust pipe; various switches and hand-throttle knob for a

12  pseudo "turbo-electric drive"; a Bing-Bong Warning Bell and Bat-Light Flasher; a

13  non-working Bat-shaped mobile phone located between the seats with a beeper and

14  flashing light; a Batscope with TV-like viewing screen, radar-like antenna with

15  aimable parabolic reflector outside, and cockpit controls; an anti-theft system,

16  consisting of flashing red lights, piercing whistle, little rockets built into tubes at the

17  back of the cockpit that fire straight up with a fiery whoosh; anti-fire control system,

18  consisting of a flood of foam from a secret nozzle; turn-off switch for protection

19  systems; radar-like screen that picks up Robin's directional signal; emergency bat

20  turn with red lever, reverse thrust rockets beneath headlights, and ejection parachute

21  mechanism at rear; Bat-ray projector with lever on dash, hood hydrolic projector

22  device, and ray coming from Bat-Eyes; portable fire-extinguisher; receiver and

23  sender computer installed in trunk; various Bat logos and symbols; the distinctive

24  black and red color scheme; and the luminescent outline of the Bat symbol.[6]  These

25

26  _____

[6] While of some of these elements (and those appearing on the 1989 Batmobile as well) may be functional when used for their originally intended purpose, their

27  inclusion on or in the Batmobile Vehicles and Defendant's replicas thereof are completely aesthetic, non-functional in nature.  For instance, most of the labeled

28  levers and knobs in Defendant's replicas do not actually produce any corresponding action such as rockets being launched or a periscope being elevated.  The inclusion

items can all be separated from the vehicle as a whole and on their own constitute artistic works of expression.

The 1989 Batmobile features a number of separable, non-functional, artistic elements as well – namely, a jet turbine engine intake grill; mandible-style front fenders; rear sculpted fins; an interior monitor; a self-diagnostics system; spherical bombs; chassis-mounted shinbreakers; side-mounted disc launchers; pair of forward-facing Browning machine guns; central "foot" capable of lifting the car and rotating it 180 degrees; armor-plated body; oil slick dispensers; smoke emitters; "Batmissile" mode that sheds all material outside central fuselage and reconfigures wheels and axles to fit through narrow openings; side-mounted grappling hook launchers; custom all-black color scheme with blue highlights; four sets of wheels; yellow or gold hubcaps on second and fourth set of wheels on Batmissile version; telescopic poles which pop out from sides of vehicle; Batwing-like fan spreads which open from underneath sides of vehicle; and flame-shooting exhaust.  These items too can all be separated from the vehicle as a whole and on their own constitute artistic works of expression.

Thus, DC Comics is entitled to copyright protection in these separable, artistic elements.

**B.    Defendant Violated DC Comics' Exclusive Rights of Reproduction and Distribution.**

There is no disputed material fact that Defendant has violated DC Comics' exclusive rights of reproduction and distribution under copyright.  Defendant admits to manufacturing replicas and car kits of the 1966 Batmobile and the 1989 Batmobile.  Instead, Defendant rests his entire case on his arguments that DC Comics' does not own valid copyrights in the 1966 Batmobile nor the 1989 Batmobile.

---

of a jet engine exhaust pipe is purely stylistic and does not actually work as a jet engine exhaust pipe would when attached to a jet.

Given that DC Comics has irrefutably demonstrated its copyright ownership in the 1966 Batmobile and the 1989 Batmobile, reasonable minds cannot differ as to Defendant's infringement.  Accordingly, summary judgment in favor of DC Comics should be entered.

**IV.  Defendant's Infringing Conduct Is Not Excused by Laches.**

Defendant cannot overcome his burden of proof to establish a laches defense.[7] Laches requires a showing that the delay in filing suit was unreasonable and that Defendant suffered prejudice because of the delay.  Hokto Kinoko Co., 810 F. Supp. 2d at 1036 citing Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).  Further, the doctrine of laches does not apply in cases of willful infringement.  Evergreen Safety Council v. RSA Network Inc., 2012 U.S. App. LEXIS 21593, at *12 (9th Cir. Oct. 17, 2012).

In the instant matter, Defendant has knowingly and deliberately manufactured and sold replicas of DC Comics' Batmobile Vehicles, referring to them as BATMOBILES – the trademarked term by which DC Comics refers to the same products, using other DC Comics Trademarks in connection therewith.  Additionally, Defendant has manufactured and sold various car parts and accessories incorporating the DC Comics Trademarks, using other DC Comics Trademarks in the marketing and promotion of such products. Thus, Defendant's willfulness is clear, and as a matter of law, Defendant cannot be afforded a laches defense.

Moreover, Defendant can point to no knowledge on the part of DC Comics of Defendant's infringement of the Batmobile Vehicles or related car parts and accessories substantially prior to DC Comics' preparation and initiation of this lawsuit.  Defendant has asserted various alleged conversations with employees of Warner Bros., but he points to no notice or knowledge to anyone at DC Comics that he was infringing DC Comics' copyrights and/or trademarks.  Defendant

---

[7] Defendant has indicated that he intends to move for summary judgment on a laches defense.  DC Comics, therefore, anticipatorily addresses the utter failure of Defendant's argument.

acknowledges that in the first alleged conversation with Cindy Nelson in 2003, he assured her that he was not doing anything with his 1989 Batmobile replica.  He also acknowledges that in multiple, alleged conversations with Julian Montoya in the two to three years prior to this litigation, he never discussed his replicas of the Batmobile Vehicles, instead simply stating that he reached out to Mr. Montoya to find out more details about the deal being worked out with a third-party as to licensed replicas of the Batmobile Vehicles.  Accordingly, Defendant has not and cannot meet his burden to establish DC Comics' knowledge of his infringement until immediately prior to the litigation.

Additionally, Defendant can point to no specific facts demonstrating that he has suffered prejudice as a result of the delay in filing suit.  See Evergreen Safety Council, 2012 U.S. App. LEXIS 21593, at **8-9 (9th Cir. Oct. 17, 2012) (prejudice required for laches defense); Hokto Kinoko Co., 810 F. Supp. 2d at 1036 (laches defense requires specific facts showing prejudice).  Defendant cannot suffer prejudice by simply continuing to make unauthorized replicas of products he knew to be owned by a third-party.

Finally, even if Defendant were to succeed on establishing a laches defense, at most this would simply preclude damages for conduct occurring prior to the statute of limitation.  Damages for later infringement as well as permanent injunctive relief would not be barred. See Danjaq LLC v. Sony Corp., 263 F.3d 942, 959-60 (9th Cir. 2001); Hampton v. Paramount Pictures Corp., 279 F.2d 100, 105 (9th Cir. 1960); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.06, at 12-126 (2000).

Accordingly, summary judgment in DC Comics' favor that Defendant's infringing conduct is not excused by laches is appropriate or, in the alternative, a finding that Defendant's conduct may be enjoined and damages received on the basis of infringements occurring within the statute of limitations.

1

## CONCLUSION

2

     For the foregoing reasons, there being no disputed issue of material fact as to

3

any issue required to enter judgment, DC Comics respectfully requests that the Court

4

enter summary judgment on its claims for trademark infringement, unfair

5

competition under the Lanham Act and California common law, and copyright

6

infringement against Defendant.

7

8

DATED: December 26, 2012     J. Andrew Coombs, A Professional Corp.

9

     By:  /s/ J. Andrew Coombs_____

10

        J. Andrew Coombs
        Nicole L. Drey

11

     Attorneys for Plaintiff DC Comics

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28