J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Nicole L. Drey (SBN 250235)
*nicole@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff DC Comics

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC Comics,<br><br>               Plaintiff,<br><br>     v.<br><br>Mark Towle, an individual and d/b/a Gotham Garage, and Does 1-10, inclusive,<br><br>               Defendants. | Case No. CV11-3934 RSWL (OPx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: January 30, 2013<br>TIME: 10:00 am<br>COURTROOM: 21 |

1

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 1

ARGUMENT ........................................................................................................... 4

I.    Summary Judgment Standard ........................................................................ 4

II.   It Is Undisputed that DC Comics Owns Valid Copyright Rights to the
      Batmobile Vehicles ...................................................................................... 5

      A.    DC Comics Owns All Intellectual Property to the Batmobile Vehicles .... 7

      B.    The Batmobile Vehicles, and the Original Expressive Elements
            Contained Therein, Are Copyrightable ....................................................... 8

      C.    Defendant's Attempt to Preclude Evidence Supporting DC Comics'
            Owernship Rights in the Batmobile Vehicles Should Be Rejected ......... 14

III.  Defendant's Admissions Require a Finding for DC Comics on its Trademark
      Claims ............................................................................................................ 17

      A.    Defendant Misstates and Misapplies the Requirement of "Likelihood
            of Confusion" Which Is Presumed by Binding Authority in Cases
            Involving "Replicas" .................................................................................. 17

      B.    Registration in the Same Class of Goods Is Not Required for
            Trademark Infringement ............................................................................. 19

      C.    The Record Fails to Support Defendant's Burden on the Six Factor
            Test Applicable to the Affirmative Defense of Laches ............................ 21

CONCLUSION ....................................................................................................... 25

DC Comics v. Towle: Opp. to Def.'s MSJ

## **TABLE OF AUTHORITIES**

**CASES**

A & M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).......................5

Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,
944 F.2d 1446, 1456 (9th Cir. 1991) ............................................... 18

AMF v. Sleekcraft, 599 F.2d 341, 348-49 (9th Cir. 1979)....................................17, 19

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ..............................5

Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.,
652 F.2d 607, 619-20 (7th Cir. 1982).......................................... 11

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ..................................... 14

Bespaq Corp. v. Haoshen Trading Co.,
2005 WL 14841, 2004 U.S. Dist. LEXIS 21338 (N.D. Cal. 2005)..........................15

Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001) ...................................... 11

Brookfield Communs. v. W. Coast Entm't Corp.,
174 F.3d 1036, 1056 (9th Cir. 1999) .................................................17, 19

Concord Fabrics, Inc. v. Marcus Brothers Textile Corp.,
409 F.2d 1315, 1316 (2d Cir. 1969) ............................................... 10

Conley v. Gibson, 355 U.S. 41, 47 (1957) ............................................... 14

Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001)...........................23, 25

DC Comics v. Kryptonite Corp., 336 F. Supp. 2d 324, 332 (S.D.N.Y. 2004) ..........20

DC Comics v. Reel Fantasy, 696 F.2d 24, 25 (2d Cir. 1982) .................................20

DC Comics, Inc. v. Powers, 465 F. Supp. 843 (S.D.N.Y. 1978) ...........................20

DCD Programs, Ltd. V. Leighton, 833 F.2d 183, 185 (9th Cir. 1987) ......................14

Durham Inds., Inc. v. Tomy Corp., 630 F.2d 905, 913 (2d Cir. 1980) .....................10

E-Systems Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983). .................22, 25

Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East,
542 F.2d 1053, 1061 (9th Cir. 1976) ............................................... 12

Evergreen Safety Council v. RSA Network Inc.,
2012 U.S. App. LEXIS 21593, at *12 (9th Cir. Oct. 17, 2012). ..........................22, 24

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968) ...............5

Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,
613 F.3d 1025, 1032 (9th Cir. 2010) .........................................................18

Four Navy Seals & Jane Doe v. Associated Press,
413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) .........................................15

Gee v. CBS, Inc., 471 F. Supp. 600, 643 (E.D. Pa. 1979)............................15

Grupo Gigante S.A. de C.V. v. Dallo & Co., 391 F.3d 1088, 1102 (9th Cir. 2004)…22

Halicki Films LLC v. Sanderson Sales & Mktg.,
547 F.3d 1213, 1220 (9th Cir. 2008) ..............................................7, 11, 20

Halicki v. Caroll Shelby International,
Case No. 04-8813 SJO (PJWx), Order Regarding Issues Remanded from the Ninth
Circuit, Docket No. 330, filed August 12, 2009 ("Halicki Remand") at p. 15 .... 11-12

Hampton v. Paramount Pictures Corp., 279 F.2d 100, 105 (9th Cir. 1960)...............25

Hart v. Dan Chase Taxidermy Supply Co., 86 F.3d 320, 323 (2d Cir. 1996)...........12

Hokto Kinoko Co. v. Concord Farms, Inc.,
810 F. Supp. 2d 1013, 1036 (C.D. Cal. 2011) .........................................24

Hunt v. Cromartie, 526 U.S. 541, 553 (1999) .............................................5

Identity Arts v. Best Buy Enter. Serv., Inc.,
Case No. C 05-4656 PJH, 2007 U.S. Dist. LEXIS 32060, at *72 (N.D. Cal. Apr. 18,
2007) ........................................................................................................11

Imax Corporation, et al v. In-Three, Inc.,
2005 U.S. Dist. Court 24198, at *3-4 (C.D. Cal. July 8, 2005)................................14

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
304 F.3d 829, 837 (9th Cir. 2002) .......................................... 21-22, 25

Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir. 1997)..................................1

Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.,
285 F.3d 848, 854 (9th Cir. 2002) ......................................................... 18-19

Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir. 1980) ...12

Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir. 1980)................18

Lahoti v. VeriCheck, Inc., 586 F. 3d 1190, 1196-97 (9th Cir. 2009)........................20

Leicester v. Warner Bros., 232 F.3d 1212 (9th Cir. 2000)................................8

Lindy Pen Co. v. Bic Pen Corp., 796 F.2d 254, 256-57 (9th Cir. 1986)............. 17-18

Lotus Dev. Corp. v. Borland Int'l. Inc.,
831 F. Supp. 202, 219 (D. Mass. 1993) rev'd on other grounds, 49 F.3d 807 (1st Cir.
1995), aff'd, 516 U.S. 233 (1996). .......................................................23

Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997)........................14

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ..5

Mazer v. Stein, 347 U.S. 201, 217 (1954) ...............................................................8

Meyers v. Pennypack Woods Home Ownership Ass'n,
559 F.2d 894, 905 (3d Cir. 1977) ...........................................................................17

Micro Star v. Formgen Inc., 154 F.3d 1107, 1112 (9th Cir. 1998) ...........................10

New West Corp. v. NYM Co. of California, Inc.,
595 F.2d 1194, 1200-01 (9th Cir. 1979) ..................................................................20

Payless Shoesource, Inc. v. Reebok Int'l Ltd.,
998 F.2d 985, 989-90 (Fed. Cir. 1993) .............................................................. 18-19

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2006) ...............5

Phillip Morris USA Inc. v. Felizardo,
2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ..............................18

Phillip Morris USA Inc. v. Shalabi,
352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) .........................................................18

Playboy Enters. v. Netscape Communs. Corp.,
354 F.3d 1020, 1025 (9th Cir. 2004) .......................................................................19

Plunket v. Estate of Dame Jean Conan Doyle,
2011 WL 175252, 2001 U.S. Dist. LEXIS 2001, *5 (S.D.N.Y. Feb. 22, 2001) ........15

Processed Plastic Co. v. Warner Comms., Inc., 675 F.2d 852, 856 (7th Cir. 1982)...21

Segal v. American Tel. & Tel. Co., 606 F.2d 842, 845 (9th Cir. 1979) .......................1

Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008) .................................................5

Shouse v. Pierce County, 559 F.2d 1142, 1147 (9th Cir. 1977)................................21

Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,
562 F.2d 1157, 1169 (9th Cir. 1977)........................................................................10

Stewart v. Abend, 495 U.S. 207, 220 (1990)..............................................................7

Sturdza v. Gov't of the United Arab Emirates,
281 F.3d 1287, 1296 (D.D.C. 2002) ........................................................................11

Sunset House Dist. Corp. v. Doran, 304 F.2d 251, 252 (9th Cir. 1962) ....................12

Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir 2000)................10, 12

Warner Bros., Inc. v. Gay Toys, Inc., 724 F.2d 327, 333 (2d Cir. 1983)...................21

White v. Samsung Elec. Am., Inc., 989 F.2d 1512, 1518 (9th Cir. 1993) ............... 7-8

-iv-

<u>Wilkerson v. McCarthy</u>, 336 U.S. 53, 62 (1949)..........................................................5

**STATUTES**

17 U.S.C. § 101 ......................................................................................................10

17 U.S.C. § 120........................................................................................................8

17 U.S.C. § 501(a). ..................................................................................................5

**RULES**

California Code of Civil Procedure § 338 ..............................................................22

Fed. R. Civ. P. 8......................................................................................... 14-15

Fed. R. Civ. P. 12.....................................................................................................15

Fed. R. Civ. P. 15........................................................................................ 14-15

Fed. R. Civ. P. 26.....................................................................................................14

Fed. R. Civ. P. 56.......................................................................................................4

**OTHER**

Carlos V. Lozano, *West Loses Lawsuit over Batman TV Commercial*, <u>L.A. Times</u>,
    Jan. 18, 1990, at B3 ..................................................................................... 7-8

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31.33
    (4th ed. 2001). ...................................................................................................21

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.06, at 12-126
    (2000). ................................................................................................................25

## INTRODUCTION

This case is not about the car industry: it is about Defendant Mark Towle's ("Defendant") unlawful and slavish copying of Plaintiff DC Comics' ("DC Comics") **Batmobile.**  There is no dispute that Defendant's lucrative and illegitimate business is built almost entirely on the goodwill and artistry owned exclusively by DC Comics. In an attempt to distract the Court from his obvious wrongs, Defendant moves for summary judgment based upon faulty legal arguments and overheated rhetoric.

It is undisputed that DC Comics (through its predecessor) introduced Batman and the Batmobile to the world.  Through DC Comics' careful shepherding of the Batman characters and stories and its significant investment of talent and resources over many decades, the Batman universe, including the Batmobile, has reached iconic status in popular culture. Defendant's erroneous motion cannot hide this simple fact: Defendant's business is intended to copy and profit from DC Comics' extensive goodwill in the Batman franchise and its world famous Batmobile.  Defendant's Motion for Partial Summary Judgment ("Motion") and should be denied.

Recognizing the lack of merit in his defenses, Defendant is left to resort to baseless procedural arguments.  But these arguments not only fail on their merits, they fail to establish any possible prejudice to Defendant.  Finally, and notably, Defendant's Motion does not dispute the facts in support of DC Comics' cross-motion for summary adjudication and ignores issues of law already decided by this Court.[1]

## STATEMENT OF FACTS

Defendant does not dispute DC Comics' standing, its longstanding ownership of the underlying rights, or the copyright and/or trademark protections which have been extended to those intellectual properties as outlined in support of DC Comics' own cross-motion for summary judgment.  <u>Passim</u> DC Comics' Separate Statement of

---

[1] To the extent that the Defendant attempts to re-litigate the applicable legal standards in his Motion which have already been decided by the Court's Order Denying Defendant's Motion to Dismiss, Dkt. No. 22, these matters are law of the case and further litigation of these issues is precluded. <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1489 (9th Cir. 1997); <u>Segal v. American Tel. & Tel. Co.</u>, 606 F.2d 842, 845 (9th Cir. 1979).

Uncontroverted Facts and Conclusions of Law on DC Comics' Motion for Summary Judgment ("SS"), Dkt. No. 43, ¶¶ 1-8.[2]

Defendant concedes that the BATMOBILE is famous. DC Comics' Statement of Genuine Disputes at Supplemental Uncontroverted Facts ("SUF") at ¶ 1. The BATMOBILE was originally introduced in the 1940s and has undergone many transformations over the years, including various versions in design and style ("Batmobile Vehicles"). Id. at ¶ 2. DC Comics, in its own right or as successor-in-interest, has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights and trademarks of the various BATMAN characters and associated elements, Batmobile Vehicles, and all comic books in which any of the foregoing have appeared. SS at ¶¶ 11-12.

In 1965, DC Comics contracted with American Broadcasting Company ("ABC") to license its BATMAN character and associated elements for use in a television series. SS at ¶ 13. DC Comics reserved all rights in and to the characters and elements depicted in the television series to be produced. Id. at ¶ 14; SUF at ¶ 4. ABC then contracted with Greenway Productions, Inc. ("Greenway") and Twentieth Century-Fox Television, Inc. ("Fox") to produce the television series. SS at ¶ 15. Greenway and Fox have duly registered all episodes of the *Batman* television series with the U.S. Copyright Office. Id. at ¶ 16. The Court, at Defendant's insistence, took judicial notice of the various copyright registrations, including the registration for the premiere episode of the *Batman* television series entitled "Hi, Diddle Riddle," SUF at ¶ 13, which Defendant now seeks to exclude.

One of the BATMAN-associated elements licensed to Greenway and Fox was a depiction of the Batmobile Vehicles to be featured in the 1966 television program

---

[2] For ease of reference, DC Comics respectfully requests that the court take judicial notice of the Separate Statement of Uncontroverted Facts and Conclusions of Law on Plaintiff's Motion For Summary Judgment and the underlying evidence already part of the record and filed on December 26, 2012, as Dkt. Nos. 42-56, as well as the documents filed under seal including Exhibits A, B, and G to the Declarations in Support of Plaintiff's Motion for Summary Judgment, and Exhibits 8-13 and 15-22 to the Joint Stipulation re Motion for Summary Judgment.

("the 1966 Batmobile"). SS at ¶ 17. The 1966 Batmobile is a derivative work of the Batmobiles depicted in the comics. Id. at ¶ 18; SUF at ¶ 5. Barris Kustom City ("Barris") manufactured the 1966 Batmobile and retained title to the original vehicle. SS at ¶ 19; DC Comics' Statement of Genuine Disputes at Genuine Disputes ("GD") at ¶¶ 11, 14-15. All copyright and trademark rights to the 1966 Batmobile, however, were retained by DC Comics. SS at ¶ 20; SUF at ¶ 4; GD at ¶ 15. This fact (omitted by Defendant) was reaffirmed in a 1966 agreement between DC Comics, Fox, Greenway, and Barris. Id. at ¶ 20; SUF at ¶ 9; GD at ¶ 16. In addition, as expressly outlined in its agreement with ABC, DC Comics was granted the *exclusive* merchandising rights to the BATMAN-related elements featured in the 1966 television program, including the 1966 Batmobile. SS at ¶ 24.

In 1989, pursuant to license from DC Comics, Warner Bros. Inc. ("Warner Bros.") produced the first of several BATMAN films entitled *Batman*. SS at ¶¶ 25-27. Warner Bros. has duly registered the film with the U.S. Copyright Office. Id. at ¶ 28; GD at ¶ 38. The Court, at Defendant's insistence, took judicial notice of various copyright registrations, including the registration for the 1989 *Batman* motion picture, SUF at ¶ 13, which Defendant now seeks to exclude. This registration states explicitly that it is a derivative work of the "BATMAN comic book series" among other things. SS at ¶ 30; Joint Stipulation re Motion for Summary Judgment ("Joint Stip.") at Ex. 4.

DC Comics' license included a depiction of the Batmobile Vehicles to be featured in the 1989 motion picture ("the 1989 Batmobile"). SS at ¶ 29; GD at ¶ 37. Like the 1966 Batmobile, the 1989 Batmobile was a derivative work of the Batmobile Vehicles that appeared in the comics. SS at ¶ 30. All copyright and trademark rights to the 1989 Batmobile were retained by DC Comics. Id. at ¶ 32; SUF at ¶¶ 4, 8-9; GD at ¶¶ 37, 39. Exclusive merchandising rights for all elements contained in the 1989 *Batman* film, including any new characters or elements, specifically including the 1989 Batmobile, were retained by DC Comics. SS at ¶ 34.

Defendant operates Gotham Garage, which specializes in the manufacture of replicas of automobiles featured in various motion pictures or television programs.  SS at ¶ 44.  Among the vehicles Defendant has reproduced and distributed are replicas of the 1966 Batmobile and the 1989 Batmobile.  Id. at ¶¶ 45, 47-48, 50; SUF at ¶ 10.  Defendant has also manufactured and distributed car kits that allow others to customize their vehicles into the 1966 Batmobile and the 1989 Batmobile.  SS at ¶¶ 46-47, 49-50.  In addition, Defendant has manufactured and distributed various automobile parts and accessories featuring the DC Comics Trademarks.[3]  Id. at ¶ 51.  Defendant's advertisements and offers for sale prominently use DC Comics' copyrights and trademarks to promote Defendant's business.  Id. at ¶ 52-53; SUF at ¶ 10.  Defendant admits his knowledge of the BATMAN property, including the 1966 television series Batman, the 1989 film Batman, the 1966 Batmobile, the 1989 Batmobile, and the various BAT emblems and symbols used in connection therewith.  SS at ¶ 54; SUF at ¶¶ 11-12; see also Declaration of Mark Towle in Support of MSJ ("Towle Decl.") at ¶ 8 (public identifies Batmobiles and his replicas as the one "used on the TV show" and "the one that appeared on screen in the movie.").

Defendant is not authorized by DC Comics to manufacture, sell, offer for sale, distribute or otherwise reproduce any products bearing DC Comics' copyrights or trademarks.  SS at ¶ 55; GD at ¶ 86.  All of the products manufactured or sold by Defendant are unauthorized.  SS at ¶ 56; GD at ¶ 86.

## ARGUMENT

### I.    Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Summary judgment in favor of

---

[3] See Towle Depo. at pp. 25:22-26:21 (sticker/decal); 109: 5-11 (bat phone for hands free cellular usage); compare Reg. No. 2,199,266 (decals); Reg. No. 3,299,017 (cellular telephone accessories); Reg. No. 3,110,604 (decals), to name a few.

the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).  If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, summary judgment is not proper. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968).  If reasonable minds could differ as to the import of the evidence, summary judgment is not proper.  Wilkerson v. McCarthy, 336 U.S. 53, 62 (1949).  The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008).  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Based on the applicable standards, Defendant's Motion should be denied.

## II.    It Is Undisputed that DC Comics Owns Valid Copyright Rights to the Batmobile Vehicles.

Copyright infringement is established by showing (1) ownership of a valid copyright interest, and (2) violation of that copyright interest by the defendant.  17 U.S.C. § 501(a); Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2006); A & M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). While Defendant concedes that second element – that he manufactures and distributes "replicas" of two versions of the Batmobile Vehicles – he contests the first element, asserting that DC Comics owns no copyright interest in the Batmobile Vehicles.

As demonstrated herein, DC Comics owns valid and enforceable copyright interests in the 1966 and 1989 Batmobiles that appeared in the television series and

feature film.  DC Comics expressly reserved all copyright interests in its agreements with the producers of the 1966 *Batman* television series and the 1989 *Batman* film. Moreover, the Batmobiles depicted in these works were derivatives of Batmobiles that had been depicted in DC Comics' copyrighted comic books.  In addition, DC Comics was also granted exclusive merchandising rights to all Batman-related elements appearing in the 1966 television series and 1989 motions picture, specifically including the Batmobile Vehicles.  Accordingly, DC Comics is vested with the right to enforce the copyrightable elements of the Batmobile Vehicles, including the overall "look and feel" as well as any separable, artistic features of what Defendant purports to be "useful articles."

In view of this overwhelming showing, it is no surprise that Defendant now resorts to technical procedural arguments to avoid the consequences of his infringement.  Specifically, Defendant argues that the Court should not consider certain copyright registrations not specifically listed in Exhibit A to the First Amended Complaint.  Defendant makes this argument even though it is conceded that he has been aware that DC Comics has asserted copyright interests in these registrations since the beginning of the case.  Indeed, Defendant himself requested that the Court grant judicial notice of the copyright registrations of the premiere episode from the 1966 television series ("Hey Diddle Riddle") and the 1989 motion picture in moving to dismiss DC Comics' complaint at the beginning of the case.  SUF at ¶ 13. The fact that Defendant has been on notice of these registrations, which were timely disclosed and at all times equally available to Defendant as matters of public record, cannot be denied.[4]

---

[4]  Even were the Court to consider only the works identified in the registrations in the name of DC Comics, there are sufficient original and protected elements in the underlying comics and publications, including both specific separate, expressive and non-functional elements and overall look and appearance, to deny Defendant's Motion.  But there is no reason whatsoever to exclude the 1966 television series registrations, particularly where the court has already taken judicial notice of the registration of the key premiere episode that prominently features the Batmobile.

1

### A.    DC Comics Owns all Intellectual Property to the Batmobile Vehicles.

2

3   Defendant does not dispute DC Comics' ownership of the underlying

4   BATMAN property and the comic books in which the Batmobile Vehicles have

5   appeared.  Further, Defendant ignores the fact that the relevant agreements concerning

6   the 1966 Batmobile and the 1989 Batmobile all set forth unequivocally that DC

7   Comics owns all copyrightable elements to the Batmobile Vehicles, whether pre-

8   existing or added to the derivative works.  In fact, even the evidence on which

9   Defendant attempts to rely only further proves DC Comics' rights in the Batmobile

10  Vehicles.  Barris, in his 1966 agreement (SUF at ¶ 9) and through his payment of

11  licensing royalties to DC Comics (SUF at ¶ 7), and Furst, through his work-for-hire

12  agreement (GD at ¶ 37) and assignment of a design patent (GD at ¶ 8) to DC Comics,

13  both acknowledge and confirm that DC Comics is the owner of all copyright interest

14  to the Batmobile Vehicles.  Defendant has no explanation for Barris' and Furst'

15  express recognition of DC Comics' Batmobile rights.

16      The fact that parties other than DC Comics own copyright interests in works

17  depicting the Batmobile, such as the 1966 *Batman* television series, is plainly

18  irrelevant.  Copyright rights are a "bundle of exclusive rights" each of which can be

19  licensed, assigned, reserved, or otherwise transferred.  Stewart v. Abend, 495 U.S.

20  207, 220 (1990); see also Halicki Films LLC v. Sanderson Sales & Mktg., 547 F.3d

21  1213, 1220 (9th Cir. 2008) ("owners and exclusive licensees of copyright may enforce

22  a copyright or license").  Thus, the fact that Fox is the registered owner of the 1966

23  *Batman* television series episodes is meaningless, particularly where, as here, DC

24  Comics expressly reserved all rights in the *Batman* elements in that series.

25      The fact that a party can own a copyright interest in a work registered by

26  another is not, as Defendant would have the Court believe, controversial.  Indeed, a

27  court has already found that DC Comics is the owner of the copyrights in and to the

28  characters and elements represented in the 1966 *Batman* television series, despite not

being copyright registrant.  See White v. Samsung Elec. Am., Inc., 989 F.2d 1512,

1518 (9th Cir. 1993) <u>citing</u> Carlos V. Lozano, *West Loses Lawsuit over Batman TV Commercial*, <u>L.A. Times,</u> Jan. 18, 1990, at B3 (describing Adam West's right of publicity lawsuit over a commercial produced under license from DC Comics, owner of the Batman copyright).[5]  Based on such rights, DC Comics has licensed third-parties to make Batmobile replicas in both toy and full-size form since 1966.  SS at ¶ 39; SUF at ¶ 20.  In sum, there is no dispute that DC Comics is the exclusive owner of all rights related to the Batmobile, SS at ¶¶ 24, 29, 32, 34; SUF at ¶ 4, and that Defendant has infringed on such rights.

> **B.    The Batmobile Vehicles, and the Original Expressive Elements Contained Therein, Are Copyrightable.**

This Court has already ruled that there is an exception to the "useful article" rule, "which grants copyright protection to non-functional, artistic elements of an automobile design that can be physically or conceptually separated from the automobile."  Dkt. No. 22 at 4:27-5:4.  As a matter of law, the "Batmobile and all of its relevant embodiments are not...excluded from copyright protection."  <u>Id.</u> at 5:12-14.  Defendant's protests otherwise are contrary to law and properly rejected.[6]

Defendant's remaining argument is that the copyrightable elements identified by DC Comics were not infringed because they either a) do not appear in any comic books, b) are "not separable," c) are "functional," d) are not "artistic," e) were not found on Defendant's "replicas," or f) are parts normally found on a car.  Motion, p. 16, Exs. 33 & 34.  Once again, Defendant misses the point.[7]  The fanciful elements identified by DC Comics were designed and intended to aid just one crime-fighting

---

[5]  Full text available at: http://articles.latimes.com/1990-01-18/local/me-291_1_adam-west (last visited January 3, 2012).  For the Court's convenience, a copy of the judicially-referenced article is attached hereto as Exhibit A.

[6]  <u>See</u> footnote 1 re law of the case authority.  Moreover, Defendant's reliance on <u>Leicester v. Warner Bros.</u>, is misplaced as that case not only does not concern the Batmobile Vehicles, it does not even concern cars, instead dealing with architectural details that are the subject of specific legislative language not at issue here, specifically 17 USC § 120.  232 F.3d 1212 (9th Cir. 2000).

[7]  Defendant also misses the point in his continued touting of preclusion of copyright protection for the 1966 Batmobile and the 1989 Batmobile based on the existence of design patents.  The Supreme Court has specifically noted that "[n]either the Copyright Statute nor any other says that because a thing is patentable it may not be copyrighted."  <u>Mazer v. Stein</u>, 347 U.S. 201, 217 (1954).

DC Comics v. Towle: Opp. to Def.'s MSJ

1    vigilante, with specific "Bat" characteristics, and are what make the "Batmobile"

2    distinguishable from just a car, or any car for that matter.[8]

3         Defendant's assertion that certain copyrightable elements did not initially

4    appear in comic books is irrelevant.  The rights to the copyrighted Bat Emblem are

5    uncontradicted.  The rights to the Batmobile Vehicles, aside from being derivative

6    works based on the original series created by DC Comics, also flow from rights

7    reserved exclusively by DC Comics to the *Batman* television series and *Batman*

8    movie, among others.  SS at ¶¶ 20-24, 29-30, 32, 34; GD at ¶¶ 2, 4.  Mr. Barris, who

9    built the original 1966 Batmobile for the television show testified that he created a

10   "Batmobile that was reflected to the script...to be Batman and Robin, and a car that

11   they could use."  SUF at ¶ 5.  These characters clearly predated the television show as

12   their personas originated with DC Comics in the late 1930s.  SUF at ¶ 2.  The 1966

13   Batmobile was specifically tailored for the characters and the fictional BATMAN

14   world created by DC Comics.

15        Defendant's statements that the original elements identified by DC Comics are

16   "not separable," are "functional," are not "artistic," or are parts normally found on a

17   car, are supported largely only by conclusory statements from Defendant's self-

18   serving declaration which contradicts his deposition testimony in certain respects.  See

19   GD at ¶¶ 62-71, 76-79.  For example, Defendant misleads in his declaration in

20   claiming there is no Bat-Ray on his car, when there is clearly a "Bat-Ray" label on the

21   dashboard of his replica.  See GD at ¶ 61.  Defendant's attempt to rely on the

22   deposition of Mr. Barris similarly fails in light of his limited role in building a prop

23   according to specifications of the producers and to which DC Comics retained all

24   applicable copyrights.  See SUF at ¶¶ 4-5; GD at ¶¶ 11-16, 20-35.  Indeed, Mr. Barris

25   conceded that he retained no rights in the Batmobile as evidenced by his entering into

26   _____

[8] As set forth in the Statement of Genuine Disputes, Defendant admits that numerous fanciful

27   elements identified by Plaintiff were included in his replicas, contrary to his declaration otherwise,
     including the labeled and completely non-functional and ornamental "Bat-Ray," and other "faux" or

28   "decorative" elements.  See, e.g., Towle Depo. at 101:8-21, 102:2-104:3, 107:8-108:16, 109:5-11.
     These admissions separately preclude summary judgment in Defendant's favor.

a royalty-bearing license with DC Comics in order to exhibit the Batmobile from the series.  SUF at ¶ 7.

Moreover, Defendant also misapplies the "useful article" test, confusing separability with literal physical detachment.  The accurate test is whether the "pictorial, graphic, or sculptural features" can be "identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U.S.C. § 101.  Defendant's numerous "Bat" gadgetry, most of which are non-functional and some of which are in the shape of the Bat Emblem trademark (which appeared as early as 1944 in DC Comics' copyrighted comics), have no function relating to the operation of a car and are artistic elements stolen from DC Comics' Batmobile Vehicles in order to trade upon the popularity of the BATMAN franchise.  It is this distinction that makes the elements copyrightable and Defendant's use infringing.

As a fallback, Defendant argues that some original elements were not found on his replicas.  Even if true, it is irrelevant where the test of infringement is substantial, as opposed to identical, copying.  Declining to engage in the same invitation to dissect the works, the Ninth Circuit stated "it is the *combination* of many different elements which may command copyright protection because of its particular subjective quality."  Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1169 (9th Cir. 1977).  The Ninth Circuit also "require[s] a lower standard of proof of substantial similarity when a high degree of access is shown."  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir 2000).  "Similarity of expression focuses on the response of the ordinary reasonable person, and considers the total concept and feel of the works."  Micro Star v. Formgen Inc., 154 F.3d 1107, 1112 (9th Cir. 1998).  "[S]light differences between a protected work and an accused work will not preclude a finding of infringement."  Durham Inds., Inc. v. Tomy Corp., 630 F.2d 905, 913 (2d Cir. 1980) citing Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969) (minor differences emphasize extent of deliberate copying).  Defendant has unquestionably copied the overall look and feel of the

-10-

Batmobile Vehicles, deliberately intending his replicas to appear as close to identical as possible to DC Comics' Batmobile Vehicles.

The overall "look and feel" of the Batmobile Vehicles is protected under copyright and the copying of which, infringement.  See Atari, Inc. v. North Am. Philips Consumer Elecs. Corp., 652 F.2d 607, 619-20 (7th Cir. 1982); Sturdza v. Gov't of the United Arab Emirates, 281 F.3d 1287, 1296 (D.D.C. 2002) citing Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001); Identity Arts v. Best Buy Enter. Serv., Inc., Case No. C 05-4656 PJH, 2007 U.S. Dist. LEXIS 32060, at *72 (N.D. Cal. Apr. 18, 2007).  Even the "look and feel" of functional articles can be afforded copyright protection as "protectable expression may arise through the ways in which artists combine even unprotectible elements."  Sturdza, 281 F.3d at 1296 citing Boisson, 273 F.3d at 272.  Thus, Defendant's attempt to isolate and focus on a few specific elements that do not appear in his replicas does nothing to detract from the fact those "replicas" by their very nature copied the "look and feel" of the real thing.[9]

Additionally, the Ninth Circuit has already ruled that cars depicted in movies can be copyrightable.  Halicki Films, 547 F.3d at 1224-25.  In Halicki Films, the defendants built full-size working replicas of the Eleanor automobile, a vehicle modified to resemble a 1967 Shelby GT-500, featured in the 2000 film Gone In 60 Seconds.  Id. at 1218.  The Ninth Circuit remanded the case to determine whether Eleanor was entitled to copyright protection as a character.  Id. at 1225.  The Ninth Circuit noted that Eleanor, referred to by name, "display[s] consistent, widely identifiable traits" and is "especially distinctive."  Id.  Upon remand, the district court ruled a "reasonable jury could find that 'Eleanor' is an 'especially distinct' character … such that copyright protection is merited" (internal citation omitted).  Halicki v. Caroll Shelby International, Case No. 04-8813 SJO (PJWx), Order Regarding Issues

---

[9] The ornamental Bat-features on the 1966 Batmobile replicas which are heavily emblazoned with the Bat Emblem associated trademarks and the exaggerated "bat" characteristics in the fins as well as the faux jet engine of the 1989 Batmobile replicas were made with the express purpose to "mimic" the television and movie, authentic counterparts, as admitted by Defendant and consistent with the definition of a "replica."  SUF at ¶¶ 10-12 14; GD at ¶¶ 61-72, 76-79; SS at ¶¶ 45-50.

Remanded from the Ninth Circuit, Docket No. 330, filed August 12, 2009 ("Halicki Remand") at p. 15.[10]

The Batmobile Vehicles are even more distinctive and widely identifiable than Eleanor.  These are not merely vehicles with customized paint and trimmings; they are interactive, highly advanced automobiles equipped with futuristic gadgetry and aesthetics uncommon to vehicles of their time.[11]  The Batmobile Vehicles are not referred to simply as "cars" but rather by name – BATMOBILE.  They interact with the BATMAN and ROBIN characters and serve as integral parts of the stories being told by the respective comic books, television programs and motion pictures in which they appear.  Thus, the Batmobile Vehicles are entitled to copyright protection.

The Batmobile Vehicles at issue herein demonstrate far more original, expressive and copyrightable content than is true in other cases where copyright protection has attached.  See, e.g., Sunset House Dist. Corp. v. Doran, 304 F.2d 251, 252 (9th Cir. 1962) (plastic Santas); Hart v. Dan Chase Taxidermy Supply Co., 86 F.3d 320, 323 (2d Cir. 1996) (fish mannequins which were "designed to be looked at"); Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East, 542 F.2d 1053, 1061 (9th Cir. 1976) (blank forms with instructions); Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir. 1980) (belt buckle).  There is no doubt that the Batmobile Vehicles are sufficiently original to be protected by copyright.

As the Batmobile Vehicles and their original elements are copyrightable, Defendant's admission of the origin of his replicas of the Batmobile Vehicles through DC Comics' television and motion picture works creates a presumption of copying shifting the burden to Defendant rebut or to show that the alleged infringing work was independently created.  SUF at ¶¶ 10-12 14; GD at ¶¶ 61-72, 76-79; SS at ¶¶ 45-50; Three Boys Music Corp., 212 F.3d at 485.  Defendant is unable to meet his burden as

---

[10] For the Court's convenience, a copy is attached hereto as Exhibit B and for which DC Comics requests judicial notice.
[11] A number of these features are listed in the section re the separable, copyrightable element, *infra*. While some of these features, such as the mobile phone of the 1966 Batmobile, may be more commonplace now, at the time, they were regarded as innovative sci-fi elements.

DC Comics v. Towle: Opp. to Def.'s MSJ

1    he admits making "replicas" of the protected Batmobile Vehicles, satisfying this

2    element of DC Comics' claim for copyright infringement.  Judgment for DC Comics

3    is appropriate on its claim for copyright infringement.

4    **C.    Defendant's Attempt to Preclude Evidence Supporting DC Comics'**

5    **Ownership Rights in the Batmobile Vehicles Should Be Rejected.**

6    From the beginning of this case, DC Comics has put Defendant on notice that

7    he has infringed DC Comics' copyright rights in the Batmobile Vehicles as they have

8    appeared in various comic books, publications, television series and motion pictures,

9    including the 1966 television series *Batman* and the 1989 motion picture *Batman*.

10    SUF at ¶ 15; GD at ¶ 1.  Defendant was clearly aware of this, seeking and being

11    granted judicial notice approximately one year ago on these very registrations.  SUF at

12    ¶¶ 13, 16.  Nonetheless, Defendant argues that the Court should not consider these

13    registrations, feigning ignorance of DC Comics' reliance on them and complaining

14    that certain of the physical certificates were not produced until the end of discovery.[12]

15    Defendants' arguments fail for multiple reasons.

16    <u>First</u>, Defendant was clearly on notice and aware of the copyrights *from the*

17    *outset*.  As detailed above, at the beginning of this case Defendant requested judicial

18    notice of the copyright registrations of the premiere episode of the 1966 series and the

19    1989 motion picture, and attached printouts of the registration information from the

20    U.S. Copyright Office website.  SUF at ¶ 13.

21

22    _____

      [12] On April 12, 2012, DC Comics identified in its initial disclosures "copies of trademark and

23    copyright registration certificates," the specificity of which was never challenged by Defendant.  GD
      at ¶ 45.  On October 23, 2012, DC Comics supplemented its disclosures to specify the third-party

24    registrations on which it would be relying.  <u>Id.</u>  During the course of discovery, DC Comics
      produced more than 3,500 pages of documents within its possession, custody and control, including

25    numerous agreements relating to the 1966 television series and 1989 motion picture, in response to
      Defendant's discovery requests.  <u>Id.</u> at ¶¶ 45, 47.  DC Comics' witness also testified, on September

26    27, 2012, as to DC Comics' ownership of rights to the Batmobile Vehicles via these third-party
      registrations.  SUF at ¶ 17.  However, at no time did Defendant ever propound a document request

27    for copyright registration certificates beyond those items identified in Exhibit A to the First
      Amended Complaint.  GD at ¶¶ 45, 47.  Once these archived, third-party registrations were received

28    from the U.S. Copyright Office, DC Comics promptly forwarded them to Defendant in anticipation
      of the motions for summary judgment.  <u>Id.</u>; SUF at ¶ 18.

-13-

<u>Second</u>, DC Comics fully complied with the disclosure requirements of Fed. R. Civ. P. 26.  It timely identified all registrations and produced all relevant registration certificates within its possession, custody or control during discovery, including the contracts upon which it claims copyright interests in the Batmobile Vehicles (including agreements with third-parties relating to the 1966 *Batman* television series and 1989 *Batman* motion picture) well in advance of deadlines contemplated by the Federal Rules.  SUF at ¶¶ 15, 18; <u>see also</u> Fed. R. Civ. P. 26(a)(3)(B) ("disclosures must be made at least 30 days before trial"). Rule 26 requires disclosure, not production, and disclosure of the copyright registrations of the 1960s television series and motion picture registrations – public documents *equally* available to Defendant – was indisputably made here.

Defendant, however, argues that Rule 26 disclosure is not enough, asserting that all copyrights on which DC Comics relies had to be listed in the Complaint. Defendant ignores the fact that the 1966 series and the 1989 movie were specifically addressed in the **body** of the Complaint, GD at ¶¶ 1 & 3, improperly focusing his argument entirely on one exhibit.  Further, there is no requirement for the particularity Defendant seeks.[13]  Rule 8(a)(2) sets a liberal pleading standard based on notice of the claims.  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  The rule requires only a "'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the … claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), <u>quoting</u> <u>Conley</u>, 355 U.S. at 47.  Moreover, Defendant did not pursue and thus waived any

---

[13]Even were an amendment required, Fed. R. Civ. P. 15(a) provides that "leave [to amend the pleadings] shall be freely given when justice so requires" and lies "within the sound discretion of the trial court." <u>DCD Programs, Ltd. V. Leighton</u>, 833 F.2d 183, 185 (9th Cir. 1987) (citation omitted); <u>Martinez v. Newport Beach City</u>, 125 F.3d 777, 785 (9th Cir. 1997) ("leave to amend should be granted unless amendment would cause undue prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.").  In making this determination, "a court must be guided by the underlying purpose of Rule 15, -- to facilitate decision on the merits rather than on the pleadings or technicalities." <u>DCD Programs</u>, 833 F.2d at 186.  "In adhering to Rule 15's policy favoring amendment, the court should apply that policy with 'extreme liberality.'" <u>Id.</u>; <u>Imax Corporation, et al v. In-Three, Inc.</u>, 2005 U.S. Dist. Court 24198, at *3-4 (C.D. Cal. July 8, 2005).

argument for a more definite statement.  Fed. R. Civ. P. 12(e).  The alleged pleading defects have never prevented Defendant from understanding what the case is about or what discovery was required.  To bring these alleged issues before the Court now on summary judgment, after discovery has closed, is procedurally incorrect and contrary to the relevant case law.[14]

Third, DC Comics was not in possession of the physical certificates until the end of discovery.  As noted above, although DC Comics owns copyright interests in the works covered by those registrations, it was not the copyright registrant and therefore did not have copies of the actual registrations until they were retrieved from the U.S. Copyright Office archive.  As soon as DC Comics received the certificates, it produced them to Defendant.  SUF at ¶ 18; GD at ¶¶ 45, 47.

Fourth, Defendant can point to no prejudice whatsoever, precisely because there is none.  Defendant has been on notice from the beginning of this lawsuit that DC Comics claimed rights in the depiction of the Batmobile Vehicles from the 1960s *Batman* television series and motion picture.  SUF at ¶ 15.  The fact that he was well aware of these registrations is not in dispute, as Defendant himself produced and requested (in December 2011) judicial notice of some of the same registrations he now seeks to exclude.  SUF at ¶¶ 13, 16.  Moreover, early in discovery, DC Comics produced all of the underlying agreements within its possession, custody or control concerning the 1960s *Batman* series and motion picture, through which DC Comics reserved its copyright interests.  See SUF at ¶¶ 15, 18.  Although it did not possess copies of certain copyright registrations, DC Comics timely identified the copyright

---

[14] Defendant's non-binding, and in some cases inappropriate for citation, authority has no bearing on the case at hand. Gee v. CBS, Inc., 471 F. Supp. 600, 643 (E.D. Pa. 1979) did not refer to any specific copyrights and failed to mention any specific act of infringement at all.  Plunket v. Estate of Dame Jean Conan Doyle, 2011 WL 175252, 2001 U.S. Dist LEXIS 2001, at *5 (S.D.N.Y. Feb. 22, 2001) concerned a motion to dismiss where the plaintiff made no allegation of **any** copyright ownership interest. Bespaq Corp. v. Haoshen Trading Co., 2005 WL 14841, 2004 U.S. Dist. LEXIS 21338 (N.D. Cal. 2005) is an unreported decision having nothing to do with Fed. R. Civ. P. 8. Four Navy Seals & Jane Doe v. Assoc. Press, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) advises Defendant that he should have moved for a more definite statement if he could not adequately determine the copyrights at issue in DC Comics' First Amended Complaint.

-15-

registration numbers for these works, based on information on the U.S. Copyright Office's website, a website equally available to Defendant. Id. at ¶ 18. Finally, in anticipation of the motions for summary judgment, DC Comics ordered the 1966 television series certificates from the U.S. Copyright Office on an expedited basis and produced them as soon as they were received. Id. at ¶¶ 15, 18; GD at ¶ 10.

Defendants attempt to claim he was misled as to the copyright interests being asserted by the testimony of DC Comics' witness and statements of DC Comics' counsel similarly fails. As to DC Comics' witness, he clearly testified at deposition that DC Comics' claims were as "set forth in the pleadings." GD at ¶ 7. The First Amended Complaint (as well as the original Complaint) identified the 1966 television series and the 1989 motion picture, among others, as works in which the Batmobile Vehicles has appeared. GD at ¶¶ 1, 3. It then identified the "DC Comics Copyrighted Designs" as "the Batman literary works, TV series, and motion pictures, including the Batman Characters, the Batmobile Vehicles, and the 1966 Batmobile, and other DC Comics' copyrighted works, and of works related thereto." Id. A "representative," not exhaustive, list of copyright registrations was attached. Id. Thus, the pleadings adequately address the copyright registrations with which Defendant now takes issue.

As to DC Comics' counsel, he made clear that the list of copyrights attached to the pleading was merely "illustrative of numerous Batman registrations." When defense counsel proceeded down a path that appeared to be inconsistent with the discussion concerning Exhibit A to the First Amended Complaint, DC Comics' counsel clarified that the witness could only testify as to facts as to what was produced from that list, which were the registrations in which DC Comics is the registered copyright claimant (excluding registrations of licensors, affiliated companies, etc.). GD at ¶¶ 8-9. Moreover, DC Comics made clear that there were registrations at issue outside of the complaint as set forth in discovery responses. GD at ¶¶ 7-9. At no time was Defendant's counsel misled as to the copyright interests being relied upon.

DC Comics v. Towle: Opp. to Def.'s MSJ

In sum, Defendant has been on notice from the start of (and repeatedly throughout) litigation as to DC Comics' rights in the Batmobile Vehicles as they appeared in the 1966 television series and the 1989 motion picture.  Defendant has in no way been prejudiced in the production of public record documents at all times equally available to Defendant.  "[E]xclusion of critical evidence is an extreme sanction."  Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977).  Thus, the facts of this case do not remotely support the exclusion of the copyright registrations.

## IV.   Defendant's Admissions Require a Finding for DC Comics on its Trademark Claims.

DC Comics has established infringement of both its registered trademarks, pursuant to 15 U.S.C. § 32, and its unregistered trademarks, pursuant to 15 U.S.C. § 43(a).  Defendant does not dispute DC Comics' ownership of the trademarks, focusing exclusively and erroneously on a purported lack of *actual* confusion.  However, this is but one factor in determining whether there is a likelihood of confusion, the applicable standard for trademark infringement, AMF v. Sleekcraft, 599 F.2d 341, 348-49 (9th Cir. 1979), and in fact, Defendant advances no evidentiary support for this improperly narrow view nor his affirmative defense of laches.  Thus, there is no controverted fact that judgment must be entered against Defendant as to DC Comics' trademark claims.

### A. Defendant Misstates and Misapplies the Requirement of "Likelihood of Confusion" Which Is Presumed by Binding Authority in Cases Involving "Replicas."

In the Ninth Circuit, a presumption of confusion exists when dealing with counterfeit or "replicas."  Brookfield Communs. v. W. Coast Entm't Corp., 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); see Lindy Pen Co. v. Bic Pen Corp., 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing a district court's finding of no likelihood of confusion even though the six

other likelihood of confusion factors all weighed against a finding of likelihood of confusion); Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) citing Phillip Morris USA Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("in cases involving  counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing.").  Defendant admits to producing replicas of the Batmobile Vehicles which bear counterfeit copies of DC Comics' trademarks in numerous places.  Thus, likelihood of confusion is presumed.

Moreover, Defendant's evidence that some individual purchasers (and not all) now state that they were not confused concerning Defendant's relationship with DC Comics is inaccurate and insufficient to demonstrate that there is no likelihood of confusion arising from Defendant's admitted use of DC Comics' trademarks.[15]  As a matter of law, the courts do not limit "likelihood of confusion" evidence to direct purchasers: "The law in the Ninth Circuit is clear that "post-purchase confusion," *i.e.*, confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act." Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 854 (9th Cir. 2002) citing Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991); Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir. 1980); see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., 613 F.3d 1025, 1032 (9th Cir. 2010).  Endorsing the rationale that the confusion of non-purchasers observing the infringing item is "no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale." Karl Storz Endoscopy-Am., 285 F.3d at 854 citing Payless Shoesource, Inc. v. Reebok Int'l Ltd.,

---

[15] Defendant Towle testified as to more sales than the five customers who supplied declarations in support of his Motion.  Towle Depo. at pp. 30:7-31:2 (1989 Batmobile replica: 4 functioning, 2 non-functioning, 4 kits),  13:12-16, 25:4-6 (1966 Batmobile replica: "more than 15, less than 25" replicas, two, maybe three kits).

998 F.2d 985, 989-90 (Fed. Cir. 1993).  This confusion is exacerbated where, as here, Defendant exhibited and showcased the infringing replicas thus assuring a wider audience for post-purchase confusion.  Towle Depo. at 29:2-7 (1989 Batmobile replica displayed at auction), 56:8-16 (1966 Batmobile replica displayed at auction). Defendant's submission of declarations from a few past purchasers is, thus, irrelevant.

What is more, Defendant startlingly admits that most of his customers asked if he was licensed (albeit by DC Comics' affiliated company Warner Bros).  SUF at ¶ 23.  This admission *establishes as a matter of law* **actual confusion**.  Likelihood of confusion is not limited to "when consumers are confused as to the source of a product they actually purchase."  <u>Brookfield</u>, 174 F.3d at 1057.  "Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement." <u>Playboy Enters. v. Netscape Communs. Corp.</u>, 354 F.3d 1020, 1025 (9th Cir. 2004). The undisputed record thus requires a finding of infringement.

Moreover, even were Towle to submit evidence from each and every one of his purchasers, the evidence would be at best probative of one factor in determining likelihood of confusion.  As set forth in <u>Sleekcraft</u>, evidence of actual confusion (and not evidence of lack of confusion by individual consumers) is weighed – along with six other factors – in determining whether a likelihood of confusion exists.  As set forth by DC Comics in support of its motion for summary judgment, all of these other factors weigh in favor of a finding of likelihood of confusion, and Defendant has adduced absolutely no evidence to contradict that showing.  Motion, pp. 23-25.

Defendant's motion for summary judgment as to DC Comics' trademark claim should be summarily denied.

**B.  Registration in the Same Class of Goods Is Not Required for**
**Trademark Infringement.**

Defendant does not dispute his unauthorized use of DC Comics' many trademarks.  Defendant instead attempts to argue that DC Comics is barred from

recovery because the BATMOBILE® trademark for "Automobiles" or for "Custom Manufacturing in the Field of Automobiles" was not filed until approximately 8 months before the lawsuit. Motion, p. 24. However, as Defendant notes, DC Comics has owned trademarks for BATMOBILE® for "toys" and "toy vehicles" since 1979 and 1981, respectively, which covers the infringing products and use at issue.[16]

"A valid ownership interest in a mark (for any product class) is sufficient, although not necessary, to provide standing for infringement of that mark." Halicki Films, 547 F.3d at 1225 (9th Cir. 2008) citing 15 U.S.C. §§ 1114(1), 1125 (a); see also Lahoti v. VeriCheck, Inc., 586 F. 3d 1190, 1196-97 (9th Cir. 2009) (citations omitted) (trademark registration not a prerequisite to a claim of trademark infringement). A senior user of a trademark can enforce its rights against any junior users using confusingly similar marks in a similar industry or within the senior user's natural zone of expansion. See New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1200-01 (9th Cir. 1979). In fact, courts have extended trademark protection to even less-famous (in some cases, completely unregistered) comic book "ingredients." DC Comics v. Kryptonite Corp., 336 F. Supp. 2d 324, 332 (S.D.N.Y. 2004) ("KRYPTONITE" protectable under the Lanham Act "as an ingredient of an entertainment property"); DC Comics v. Reel Fantasy, 696 F.2d 24, 25 (2d Cir. 1982) ("BATCAVE" protectable); DC Comics, Inc. v. Powers, 465 F. Supp. 843 (S.D.N.Y. 1978) ("DAILY PLANET" protectable). Defendant also admits his replicas are based on DC Comics' works. SUF at ¶¶ 10-12 14; GD at ¶¶ 61-72, 76-79; SS at ¶¶ 45-50. There is no doubt that Defendant intended to pass off his goods as those of DC Comics. Additionally, BATMOBILE® for "Custom manufacturing in the field of automobiles" is now a registered mark as of November 20, 2012, with registration number 4,246,497, such that Defendant's argument is also moot.

---

[16] Defendant offered on eBay, "build[s]" of a 1966 replica Batmobile with the purchase of a toy. Towle Depo. at pp. 59:20-60:5.

-20-

In a very similar case, Warner Bros. secured a judgment of trademark infringement against a manufacturer of replica toys of the "General Lee" automobile, which appeared in the "Dukes of Hazzard" television series, even though Warner Bros. was not a manufacturer of toy cars. Warner Bros., Inc. v. Gay Toys, Inc., 724 F.2d 327, 333 (2d Cir. 1983); see also Processed Plastic Co. v. Warner Comms., Inc., 675 F.2d 852, 856 (7th Cir. 1982) (same). The crux of the analysis, consistent with one of the fundamentals of trademark law, was consumer association and in Gay Toys, while there was some proof of association of the "General Lee" with the television series, here, Defendant's customers and even Defendant himself admits the association between his replicas (and all replicas) with the television series and motion pictures using DC Comics' original BATMAN elements. 724 F.2d at 333; SUF at ¶¶ 10-12 14; GD at ¶¶ 61-72, 76-79; SS at ¶¶ 45-50. Thus, Defendant should be found liable for trademark infringement.

## C. The Record Fails to Support Defendant's Burden on the Six Factor Test Applicable to the Affirmative Defense of Laches.

Defendant cannot meet his burden to establish a defense of laches as a matter of law. Laches normally do not apply when an action is filed within the applicable statute of limitations, and Defendant's defense also fails because he does not apply the correct test or adduce evidence supporting even any one of the required elements.

First, trademark "'infringement is a continuing wrong.'" Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002) quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31.33 (4th ed. 2001). A "strong presumption" that laches is inapplicable applies when a plaintiff files suit within the analogous statute of limitations period. Jarrow Formulas, 304 F.3d at 835-836 citing Shouse v. Pierce County, 559 F.2d 1142, 1147 (9th Cir. 1977) ("It is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run."). Further, "[t]he Lanham

DC Comics v. Towle: Opp. to Def.'s MSJ

Act contains no explicit statute of limitations." <u>Jarrow Formulas</u>, 304 F.3d at 836.[17]

DC Comics filed its Complaint on May 6, 2011.  Defendant admits to selling his kits and replicas as late as 2010, just months prior to DC Comics' filing.  SUF at ¶ 24.

Defendant also continued marketing his goods up to 2011 on various message boards.

SUF at ¶ 19.  Moreover, the doctrine of laches does not apply in cases of willful infringement.  <u>Evergreen Safety Council v. RSA Network Inc.</u>, 2012 U.S. App.

LEXIS 21593, at *12 (9th Cir. Oct. 17, 2012).  Here, there is no question that Defendant is intentionally seeking to trade off of the goodwill associated with DC Comics' famous Batman-related trademarks.  Therefore, a strong presumption against laches applies, even if available, that Defendant is unable to overcome.

Additionally, the Ninth Circuit has set forth six factors "for determining whether laches bars a claim for either damages or injunctive relief in an action for trademark infringement."  <u>Grupo Gigante S.A. de C.V. v. Dallo & Co.</u>, 391 F.3d 1088, 1102 (9th Cir. 2004).  They are "(1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm sufffered by junior user because of senior user's delay."  <u>Id.</u>, <u>citing</u> <u>E-Systems Inc. v. Monitek, Inc.</u>, 720 F.2d 604, 607 (9th Cir. 1983).

All factors support a rejection of the defense.

The first, third, fourth and fifth factors, strongly support DC Comics.

Defendant agrees that  the Batmobiles are famous.  SUF at ¶ 1.  DC Comics' trademarks, including, but not limited to, BATMOBILE®, the BAT Emblem, the BAT REP II, BATMAN®, and various stylized variations of the BAT symbol, specifically including and are exceptionally strong.  SS at ¶¶ 35-38.  Defendant admits his products are replicas of creations depicted in television

---

[17] Defendant declares that the statute of limitations for trademark infringement actions is three years based upon § 338 of the California Code of Civil Procedure.  However, the referenced section does not reference trademark infringement (let alone the federal cause of action asserted by DC Comics).  However, even were he correct, the Complaint was filed within three years of a number of his admitted sales and activities.  Motion, p. 22:11-13 <u>citing</u> California Code of Civil Procedure § 338.

series and motion pictures based on DC Comics' original characters and story.  SUF at ¶¶ 10-12 14; GD at ¶¶ 61-72, 76-79; SS at ¶¶ 45-50.  The strength and enormous value of the Batman franchise and associated trademarks, including those at issue here, can not be disputed as reflected by significant box office successes, and extensive licensing and merchandising by DC Comics.  SS at ¶¶ 3-4, 13, 24-27, 34-42; SUF at ¶¶ 2, 6, 20.  DC Comics has also licensed other individuals, not limited to Fiberglass Freaks, the right to manufacture and customize full-size automobiles into the Batmobile Vehicles, featuring the DC Comics Trademarks, which directly compete with Defendant's unauthorized replicas.   SS at ¶¶ 35-39; SUF at ¶¶ 6, 20.

The second factor also favors DC Comics as it has diligently enforced its marks in the Batman series and regarding unauthorized Batmobiles specifically.  DC Comics has obtained trademark registrations and has engaged in ongoing efforts to enforce its rights against other manufacturers of infringing Batmobiles on a worldwide basis.  SUF at ¶ 21; GD at ¶ 89.  Prior to the Complaint being filed, Defendant's eBay listings were also the subject of take down requests.  GD at ¶ 83.  DC Comics was in no way sitting on its rights and any delay in filing suit was reasonable.

While any rights owner would choose to pursue every infringer at once, that is not realistic.  In the Ninth Circuit, "delay has been held permissible, among other reasons, when it is . . . used to evaluate and prepare a complicated claim,' and when its purpose is to determine whether the scope of proposed infringement will justify the cost of litigation[.]'"  See Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. (2001) quoting Lotus Dev. Corp. v. Borland Int'l. Inc., 831 F. Supp. 202, 219 (D. Mass. 1993), rev'd on other grounds, 49 F.3d 807 (1st Cir. 1995), aff'd, 516 U.S. 233 (1996).  DC Comics engaged in reasonable, time consuming steps to curb the infringement of its rights, including the infringement by Defendant.

As to the sixth factor, Defendant is selling replicas of DC Comics' intellectual property.  While Defendant claims he has turned down a number of offers from potential buyers, GD at ¶ 85, that is inadmissible hearsay and unsupported by any

other evidence.  Defendant has not pointed to any admissible evidence demonstrating that he has suffered prejudice as a result of the delay in filing suit.  See Evergreen Safety Council, 2012 U.S. App. LEXIS 21593, at **8-9 (prejudice required for laches defense); Hokto Kinoko Co. v. Concord Farms, Inc., 810 F. Supp. 2d 1013, 1036 (C.D. Cal. 2011) (laches defense requires specific facts showing prejudice).  Defendant cannot suffer prejudice by simply continuing to make unauthorized replicas of products he knew to be owned by a third-party.

Defendant's assertions that DC Comics had actual knowledge of Defendant's activities as early as 2005 and possibly 2003 have no evidentiary support.  Motion, at p. 22:14-17; GD at ¶¶ 82, 88.  None of the alleged communications demonstrate knowledge by DC Comics of Defendant's building and selling replica Batmobiles, the gravamen of this action. GD at ¶¶ 82, 88.

The 2003 claim is without merit as Defendant made misleading statements about his activities when he said that he was not going to do "anything" with the Batmobile shell in light of a design patent.  GD at ¶ 82.  The alleged incident was a "very short call" not lasting more than "three minutes."  Id.  Defendant also testified that in a handful of alleged conversations with a "Julian Montoya," he never discussed his replicas of the Batmobile Vehicles instead seeking details about the deal being worked out with a third-party as to licensed replicas of the Batmobile Vehicles.  GD at ¶ 88. Accordingly, Defendant has not and cannot meet his burden to establish DC Comics' knowledge of his infringement until immediately prior to the litigation.

The 2005 claim is similarly misplaced.  DC Comics' witness did not testify that no acts were taken against Defendant prior to 2006, he testified that he did not recall.  GD at ¶ 83.  Significantly, Defendant has introduced no such correspondence.  Moreover, Mr. Kogan did not identify what alleged "activity" was known and, specifically, whether it included the construction, sale or marketing of replicas or kits of the Batmobile Vehicles.  GD at ¶¶ 83, 88.  In fact, upon further internal review, it was determined that Defendant was brought to DC Comics' attention in 2006 due to

-24-

Defendant's manufacture of a Batboat, **not** the Batmobile Vehicles at issue here.  GD at ¶ 88.  Additionally, Defendant admits that several of his eBay auctions for replicas of the Batmobile Vehicles were taken down as infringing by DC Comics over the years, evidencing the fact that DC Comics did not sit on its rights.  Id. at ¶ 83.

An adjudication barring Defendant's laches defense is in line with existing controlling authority finding laches where the delay was "lengthy" on the order of numerous years.  Danjaq, 263 F.3d at 953 (finding delay of 19-36 years as sufficient for laches); Jarrow Formulas, 304 F.3d at 839 (seven year delay); E-Systems, 720 F.2d at 607 (allegedly infringing mark had been used for eight years where the claimant had known of the infringing use for at least six years).  DC Comics did not delay as it was engaged in the enforcement of its rights, including investigating and preparing this case, which can not be considered unreasonable.

Finally, even if Defendant were to succeed on establishing a laches defense, at most this would simply preclude damages for conduct occurring prior to the statute of limitation.  Damages for later infringement as well as permanent injunctive relief would not be barred.  See Danjaq, 263 F.3d at 959-60; Hampton v. Paramount Pictures Corp., 279 F.2d 100, 105 (9th Cir. 1960); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.06, at 12-126 (2000).

## CONCLUSION

For all of the foregoing reasons, DC Comics respectfully requests Defendant's Motion be denied in its entirety.


DATED: January 9, 2013                    J. Andrew Coombs, A Professional Corp.


By:   /s/ J. Andrew Coombs
      J. Andrew Coombs
      Nicole L. Drey
      Attorneys for Plaintiff DC Comics