Larry Zerner (SBN 155473)
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
Email: Larry@ZernerLaw.com

Attorneys for Plaintiff Mark Towle,
An individual and d/b/a Gotham Garage

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| DC Comics, | ) | Case No.: CV11-3934 RSWL (OPx) |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; |
| Mark Towle, an individual and d/b/a Gotham Garage, and Does 1 – 10, inclusive, | ) | Date: January 30, 2013 Time: 10:00 a.m. Courtroom: 21 |
| Defendants. | ) | Trial Date: March 26, 2013 Pre-Trial Conference: March 12, 2013 Discovery Cut-Off: November 27, 2012 |

# Table of Contents

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A. CREATION OF THE 1966 BATMOBILE . . . . . . . . . . . . . . . . . . . . . . 4

   B.  CREATION OF THE 1989 BATMOBILE . . . . . . . . . . . . . . . . . . . . . . 5

   C. THE FIRST AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . 6

   D. THE MOTION TO DISMISS THE COMPLAINT . . . . . . . . . . . . . . . . . 7

   E. DC'S DISCOVERY RESPONSES . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   F. ADMISSIONS IN DEPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   G.  RESPONSES TO INTERROGATORIES . . . . . . . . . . . . . . . . . . . . . . 10

III. PLAINTIFF CANNOT CLAIM COPYRIGHT PROTECTION FOR WORKS THAT ALREADY EXISTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV. DEFENDANT DID NOT INFRINGE ANY OF THE COPYRIGHTS SET FORTH IN THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V. THE BATMOBILE IS NOT A "CHARACTER" . . . . . . . . . . . . . . . . . . 19

VI. THERE IS NO EVIDENCE THAT THE COPYRIGHT TO THE 1966 BATMAN TV SHOW IS VALID . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR DAMAGES FOR TRADEMARK INFRINGEMENT BECAUSE PLAINTIFF IS GUILTY OF LACHES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**Cases**

*Bespaq Corp. v. Haoshen Trading Co.,* 2005 WL 14841 (N.D.Cal.2005).    17

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113
   L.Ed.2d 358 (1991)    16

*Four Navy Seals v. Associated Press* 413 F.Supp.2d 1136, 1148 (S.D. Cal 2005)    16, 17

*Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D.Pa.1979);    17

Halicki Films, LLC v. Sanderson Sales & Mktg, 547 F.3d 1213 (9th Cir. 2008).    19

*Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916);    23

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir.2002).    21, 22

*Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992) aff'd sub nom. *Kelly v. L.L. Cool J,* 23
   F.3d 398 (2d Cir. 1994)    17

*Leicester v. Warner Brothers*. 232 F.3d 1212 (1216-17) (9th Cir 2000).    3

*Plunket v. Estate of Dame Jean Conan Doyle*, 2001 WL 175252 (S.D. N.Y. 2001),    17

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172
(9th Cir. 1977)    15

*Skippy, Inc. v. CPC Int'l, Inc.,* 674 F.2d 209, 212 (4th Cir. 1982).    23

**Statutes**

17 U.S.C. §101    1, 13

17 U.S.C. §103    14

17 U.S.C. **§**410(c)    20

Code of Civil Procedure §338    22

**Rules**

FRCP 8(a) (2)    16

FRCP 12(b)(6)    7

FRCP 8.    4

FRCP 26(f)    8

**Treatises**

Moore's Federal Practice P 8.17(7) at 1767 (2d ed. 1978).                                    17

# I.  INTRODUCTION

This is a very important case that has far-reaching implications.  While it is true that this case is ostensibly about the Batmobile, which some may find to be trivial, the fact is that the issues that will be decided will have a significant impact on automobile makers and manufacturers.

It is black letter law that useful articles, such as automobiles, do not qualify as "sculptural works" and are thus not eligible for copyright protection.  17 U.S.C. §101. However, despite this clear, bright line standard, DC believes that there is an exception to this rule.  The exception being that if a different version of the vehicle (not even the same version that Defendant sells) once appeared in a comic book, then the rule does not apply.  The implications of a ruling upholding this standard are easy to imagine.  Ford, Toyota, Ferrari and Honda would start publishing comic books, so that they could protect what, up until now, was unprotectable.

DC may argue that they are not seeking protection for the entire design of the vehicle, only the separable, non-functional, artistic elements.  This is a lie. Because when asked which parts of the car it considered to be separable, non-functional and artistic, it did not limit its' answer to one or two design features. Instead, DC listed every visible part of the car.  DC claims ownership of every part of the Batmobile from the design of the front grill, to the fenders, to the wheels, to

the fins, the cockpit, and the exhaust pipe.   DC even claims that the color of the Batmobile is copyrightable.

If DC were to prevail under these standards it would mean an end to the rule that useful articles are not copyrightable and would completely upend existing copyright law.  For this reason, among many others listed below, DC's claim of copyright infringement of the Batmobiles should be denied.

Additionally, although DC has presented their motion as involving claims of both trademark and copyright infringement, in reality this entire case is about the copyright claim.  That is because Defendant agreed from the beginning of this lawsuit to stop using the DC Trademarks in a way that would be seen as confusingly similar to consumers.  Furthermore, as discussed, infra, DC's 10 year delay in bringing suit against Towle prevents DC from obtaining damages for trademark infringement.  Accordingly, the only remaining issue for the court to decide is the issue of copyright infringement.

## II. STATEMENT OF FACTS

It is true, as plaintiff alleges, that the Batmobile are some of the most well-known automobiles in the world.  Defendant is accused of manufacturing and selling two different styles of Batmobiles.  One, the Batmobile that was used in the 1966 Batman television series (the "1966 Batmobile"). The other, the Batmobile used in the 1989 *Batman* motion picture (the "1989 Batmobile").

The main problems with DC's copyright claim are thus.  First, automobiles are not protectable by copyright and therefore Defendant cannot be sued for copying an automobile design.  *Leicester v. Warner Brothers*. 232 F.3d 1212 (1216-17) (9th Cir 2000).

Second, the evidence is conclusive that Defendant did not infringe any of the copyrights identified and put at issue in the First Amended Complaint ("the FAC"). DC admitted in its answers to special interrogatories (Ex. 35 to Zerner Decl.[1]) that there were only nine comic books that contained the separable, non-functional, artistic elements that DC alleges found their way into the Batmobiles and with the exception of Batman #170 (which was not infringed) none of the remaining eight comic books is identified in the FAC.  But if that is the case, why is this lawsuit continuing?  Because DC's position is that it was not required to identify the actual copyrights at issue when it filed the FAC.

Instead, DC contends that because the FAC contained the vague statement that Defendant infringed the "DC Comics Copyrighted Designs" it can ignore the rules of pleading.  DC contends that it may present evidence of infringement of not just the 35 copyrights identified in the FAC, but also any of the thousands of copyrights owned by DC and also copyrights belonging to 3rd parties, such as Twentieth Century Fox and Warner Brothers, without first amending the complaint.  This

---

[1] On 12/26/12, Towle filed his own motion for partial summary judgment.  Unless otherwise stated, references to Exhibits shall mean those Exhibits filed with Towle's Motion.

3   Towle Opposition to Motion for Summary Judgment

position is without legal merit and a clear violation of the pleading requirements set forth in FRCP 8.

Third, even if cars were copyrightable and DC could allege infringement of any of their copyrights, both the 1966 Batmobile and the 1989 Batmobile were created *sui generis* for their respective projects and were not based on previous designs shown in the allegedly infringed comic books. Neither Mr. Barris nor Mr. Furst was ever under contract with DC, nor is there evidence that they assigned their rights to DC. The copyright registrations to the 1966 *Batman* television program are in the name of Greenway Productions, Inc., and Twentieth Century Fox Television, Inc. (Ex. 3 to Joint Stip.). The copyright to the 1989 *Batman* motion picture is held by Warner Brothers, Inc. (Ex. 4 to Joint Stip.)

### A. CREATION OF THE 1966 BATMOBILE

The 1966 Batmobile was designed by George Barris (Barris Dep. 10:11-12) and built by him in 15 days using a 1955 Lincoln Futura as the base (Barris Depo 9:5-9 and Ex. 501 thereto). Barris' design was not based on any DC comic books (Barris Depo 10:7-10). Barris built the car pursuant to a September 1, 1965 contract between 20th Century Fox Television Inc. and Greenway Productions Inc., on the one hand, and Barris Kustom City, on the other hand. (Barris Depo 11:4-7, Exhibit 14 to Joint Stipulation). The agreement provided that Barris, Fox and Greenway would jointly own the design to the 1966 Batmobile.

DC then confirmed Barris, Fox and Greenway's ownership of the design of the 1966 Batmobile.  On August 15, 1966, DC's predecessor-in-interest, National Periodical Publications, Inc., entered into an agreement with Fox, Greenway and Barris which stated at Paragraph 15:

> "National Periodical acknowledges . . . that BARRIS, FOX and GREENWAY are the joint owners of the design of said Batmobile I . . . ."

(Barris Depo 23:9-24:10 and Exhibit 15 to Joint Stipulation).

Nowhere in any of these agreements did Barris, Fox or Greenway grant DC the design rights in the 1966 Batmobile design, other than the limited rights set forth in Paragraph 7 of the September 1, 1965 Agreement.

George Barris then obtained a design patent on the 1966 Batmobile (Barris Depo 15:4-6 and  Design Patent, Exhibit 6 to Joint Stipulation).   No one from DC ever told Barris that they should be a joint owner of the design patent (Barris Depo 32:6-10).  Barris testified that he owns the design of the 1966 Batmobile because he designed it and built it based on his own creation, not from somebody else's drawings (Barris Depo 29:1-8).  George Barris testified that he or someone on his staff designed all the parts of the Batmobile.

### B.  CREATION OF THE 1989 BATMOBILE

The 1989 Batmobile was designed and built by Anton Furst, under a contract with Warner Brothers Productions, Ltd. (Ex. 20 to Joint Stip).  Furst obtained a

design patent on the 1989 Batmobile (Design No. 311,882, November 6, 1990) (Ex. 7 to Joint Stipulation).   Furst is the only person listed on the design patent as the inventor of the 1989 Batmobile. There is no evidence that Warner Brothers Productions, Ltd. ever assigned the Furst Rights to Warner Brothers, Inc., the copyright holder of the Film.

### C. THE FIRST AMENDED COMPLAINT

The operative pleading in this case is the First Amended Complaint, filed November 22, 2011 (the "FAC"). The FAC alleges that, by selling Batmobile replicas, Defendant infringed what Plaintiff referred to as the "DC Comics Copyrighted Designs."   The "DC Comics Copyrighted Designs" are described in the FAC as being "wholly original with DC Comics" (FAC, ¶11), and owned by DC Comics (FAC ¶11). The Complaint also alleges that DC Comics owns the certificates of registrations in which each of the DC Comics Copyrighted Designs appear. (FAC, ¶12).

To state it in the alternative, according to the FAC, if a work is not "wholly original with DC Comics" or is not "owned" by DC Comics or is not on a copyright registration certificate owned by DC Comics, then it is not a DC Comics Copyrighted Design.

Also attached to the FAC as Exhibit "A" as a "list of relevant copyright registrations for the DC Comics Copyrighted Designs" (FAC, ¶12) was a

document titled "DC Comics' Copyrighted Designs" which consisted of a list of 35 various DC publications. (See, Zerner Decl. Ex. 28). What's important to note is that nowhere in the FAC or on Ex. A, did DC allege infringement of the copyright to the 1966 *Batman* TV show or 1989 *Batman* movie.

### *D. THE MOTION TO DISMISS THE COMPLAINT*

In December 2011, Towle filed a motion to dismiss the copyright infringement claim pursuant to FRCP 12(b)(6) on the grounds that a) automobile designs were not copyrightable, and b) that DC is not the copyright claimant to the TV show or movie in which the Batmobiles first appeared. (Zerner Decl. Ex. 29).  In its' opposition papers, DC did not argue that it was suing on the TV show or motion picture copyright.  Plaintiff stated that DC (not Barris or Furst) was the creator of the Batmobile and had licensed its' use to 3rd parties in connection with TV shows and motion pictures (Ex. 30, Opposition at 4:26-28). DC further alleged that it owned the copyrights to the various Batmobile versions (Ex. 30 Opposition at 5:1-4), and that DC's creation of the Batmobile pre-dated the registration for the 1966 TV show and 1989 motion picture (Ex. 30 Opposition at 5:9-10).  Remarkably, the evidence DC cited in the Opposition to prove this fact was Exhibit A to the FAC. So, to avoid losing the Motion to Dismiss, DC did not argue that the copyrights to the 1966 TV show and 1989 movie were at issue.  DC contention was that the copyright registrations listed on Exhibit A to the FAC established a pre-existing

copyright to the design of the Batmobiles and that those copyrights listed on Ex. A were the registrations at issue in the case.

On January 26, 2012, the court denied Towle's motion to dismiss the claim of copyright infringement.  The court agreed with Defendant's contention that, in general, the Copyright Act affords no protection to "useful articles" or items with an intrinsic utilitarian function such as automobiles (Court's Order at 4:23-26, Exhibit 31 to Zerner Decl).  But the Court ruled that because there is an exception to the "useful article" rule, which grants copyright protection to separable, non-functional, artistic elements of an automobile design and because there may be such separable, non-functional, artistic elements of the Batmobiles, the Court could not rule that the FAC did not state a cause of action for copyright infringement.

### E. DC'S DISCOVERY RESPONSES

1. Rule 26(f) Disclosures

DC's position vis-à-vis the copyrights at issue was reinforced by its' discovery responses.  First, in DC's Voluntary Disclosures pursuant to Rule 26(f), DC only listed the following documents that it knew to be relevant:

"1. Copies of trademark and copyright registration certificates.

2. Defendant's business records and advertising materials.

3. Prior notices of infringing activity.

4. Products sold by Defendant (or photographs thereof).

5. Licensing agreements or contracts regarding rights in and to the Batmobile." See Exhibit 32 to Zerner Decl.

DC did not provide Towle with any documents concurrently with the disclosure, but there is nothing in the Disclosure that would give Defendant any indication that DC was claiming infringement of anything other than those copyrights listed on Exhibit A to the FAC.  Notably, DC does not list the television show or the motion picture (or photos taken from those items) as being relevant documents, nor did DC produce the television program or motion picture or copyright registrations for the television program despite being asked for all of the Rule 26 documents in Discovery.

### F. ADMISSIONS IN DEPOSITION

Finally, when taken the deposition of DC employee Jay Kogan, Vice-President and deputy general counsel for Intellectual Property and Publishing, who was designated by DC as the person most knowledgeable of facts supporting the copyright infringement claim, Mr. Kogan was asked which copyrights DC was making a claim on and Mr. Kogan stated: "I believe whatever we are making a claim of is set forth in the pleadings."  (Kogan Depo 16:23-24). (Zerner Decl. Ex. 37).  DC's attorney, Mr. Coombs, then stated the "[Copyright registrations] we're relying on for purposes of trial have been produced" and agreed that those

registrations not already produced would not be part of the case. (Kogan Depo. 17:3-9). (Zerner Decl. Ex. 37).

### G. *RESPONSES TO INTERROGATORIES*

As DC's copyright infringement claim hinged on whether there were separable, non-functional, artistic elements of the Batmobile that it owned, Towle sent out interrogatories to DC seeking to determine what these elements were.

In response to interrogatories about which parts of the Batmobile it considered to be separable, non-functional, artistic elements, DC identified a number of items, which are set forth in DC's motion.

DC was then asked, "If YOU contend that there are separable, nonfunctional, artistic elements of the 1966 BATMOBILE, identify the first comic book in which each part appeared."  DC responded as follows:

"Plaintiff identifies the following comic books in which separable, nonfunctional, artistic elements of the **1966 BATMOBILE** appeared:

*Detective Comics* #156 (Feb. 1950); Batman #164 (June 1964);

*Detective Comics* #341 (July 1965); World's *Finest Comics* #154 (Dec. 1965); and Batman #20 (Dec. 1943-Jan. 1944)."

(DC Response to Interrogatory NO. 8, Exhibit 35 to Zerner Decl.).[2]

---

[2] Two months after sending this response under penalty of perjury, DC sent a 2nd Amended Response which added Batman #170 to this list (Ex. 36 to Zerner Decl).

DC was then asked, "If YOU contend that there are separable, nonfunctional, artistic elements of the **1989 BATMOBILE**, identify the first comic book in which each part appeared." DC responded as follows:

"Plaintiff identifies the following comic books in which separable, nonfunctional, artistic elements of the 1989 BATMOBILE appeared: *Batman* #5 (Spring 1941); Detective *Comics* #156 (Feb. 1950); *Batman: The Cult* (1988); and *Batman* #408 (June 1987)."

(DC Response to Interrogatory No. 12, Exhibit 35 to Zerner Decl.).

A review of the nine[3] comic books listed above and the 35 items identified on Exhibit A to the FAC as the DC Comics' Copyrighted Designs shows that there is <u>zero</u> overlap between the two lists. Except for Batman #170, none of the comic books which DC asserts contain the first use of the separable, non-functional, artistic elements of the Batmobile were identified in the First Amended Complaint. As discussed *infra,* this admission is completely fatal to DC's claim of copyright infringement.

However, even if DC had amended the complaint to include these additional eight comic books, they still could not prevail. During Kogan's deposition, he was for the most part completely unable to point out where the separable, non-functional, artistic elements identified in the interrogatory responses were visible in

---

[3] *Detective Comics #156* is on both lists.

the comic books.  And for those parts that he did try to identify it is clear that the part a) did not meet the criteria of being a separable, nonfunctional artistic elements, or b) did not look like the part on the Batmobile, or c) was based on something other than the comic book or d) is not found on the replica automobiles manufactured by Defendant.

The court should also note that nowhere in DC's motion do they ever make these connections.  DC claims ownership of a myriad of elements but do not explain where these parts show up in the Batmobiles and where they show up in the original comic books.  Nor does DC make the attempt to explain how these elements, such as wheels, fins, and fenders, qualify as separable, non-functional, artistic elements.  Nor does DC show where these parts are copied on Defendant's cars. It is as if DC believes that the simply claiming a part of the car is protectable, it becomes so, even without any supporting evidence.

Attached to the declaration of Larry Zerner  as Exhibits 33 and 34 are two chart that lists each part of the 1966 Batmobile and 1989 Batmobile that DC claims is separable, non-functional and artistic and explains why DC is incorrect in claiming copyright infringement of that part.  Either because the part a) does not appear in any of the identified comic books,  b) is not separable, c) is functional, d) is not artistic, e) is not found on the replica's made by Defendant or f) is a part normally found on a car.

But at the outset, it is instructive to note just how ridiculous on its face DC's claim is.  DC apparently cannot accept the fact that automobiles are not protectable by copyright and so claims ownership of virtually every part of the automobile, including such normal parts of the cars as "wheels," "fins," and "fenders."   DC seems to not be familiar with the definition of a "useful article" in the Copyright Act which states: "An article that is normally a part of a useful article is considered a 'useful article'.  17 U.S.C. §101.  So any part of the Batmobile identified by Plaintiff that is normally found on a car such as wheels, fins and fenders is, by definition, a "useful article" and not protectable by copyright.

A note about the "Bat Emblem."  While it is clear that DC has contended that Towle's use of the Bat Emblem constitutes trademark infringement, it is not clear whether it also contends that the Bat Emblem is a copyrightable element and that Towle infringed DC's copyright by using the Bat Emblem.  In the event that DC is making such a claim, the court should note that the Bat Emblem first appeared in Batman #167, not #164 or #170 (See, Zerner Decl. Ex. 39, at ¶12(b)).  Accordingly, even if the Bat Emblem is considered to be a separable, non-functional, artistic element, DC has not sued Towle for infringement of Batman #167.

**III**. PLAINTIFF CANNOT CLAIM COPYRIGHT PROTECTION FOR WORKS THAT ALREADY EXISTED.

Plaintiff also seems to not understand the effect of Section 103 of the Copyright Act which states:

"The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."

§103 makes it clear that DC's copyright to the comic books does not grant them rights in the underlying automobiles, but only to those new features which exist in the new work.  DC claims that Defendant infringed Batman #170.  But a review of the Batmobile in Batman #170 shows that it is identical in design to the Batmobile in Batman #164. (Both are Ex. 2 to Joint Stip).

 

**Batman #164**                    **Batman #170**

Towle Opposition to Motion for Summary Judgment

Furthermore, even if the court were to allow DC to allege infringement of Batman #164 (despite its omission from Ex. A), a review of the comic shows that there is nothing in the design that a) would qualify as a separable, non-functional, artistic element and b) is copied by either the 1966 Batmobile or the 1989 Batmobile.

DC also alleged infringement of the Batman Returns Style Guide I and II which are 1991 publications that were released in conjunction with the Batman sequel, *Batman Returns.*  Although these style guides do contain some photographs and drawings of the 1989 Batmobile, these were made two years after the release of the 1989 *Batman* movie and a year after Anton Furst obtained his design patent. DC has been unable to explain how these publications could be infringed by Defendant's activities when the 1989 Batmobile was a pre-existing vehicle. Further, Mr. Kogan testified that the Style Guides were not sold to the general public and he was unaware of any evidence that Defendant had ever received the Style Guide (Kogan Depo 21:12-21).  For DC to prove infringement of the Style Guides, it must prove access to such guides. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977). Here, of course, Defendant did not need access to the Style Guides because Defendant did not copy the 1989 Batmobile from the 1991 Style Guides, he copied it from the 1989 movie.

**IV.** DEFENDANT DID NOT INFRINGE ANY OF THE COPYRIGHTS SET FORTH IN THE COMPLAINT

As discussed, *supra*, Plaintiff admitted that Defendant did not infringe any of the copyrights listed in the FAC.  For that reason alone, summary judgment must be denied.  DC is a company that owns "thousands" of copyrights (Ex. 37 Kogan Depo at 12:19-13:2).  Just the Batman related copyrights alone would number in the "hundreds" (Ex. 37 Kogan Depo at 13:3-5) DC certainly knew at the time it filed the complaint which copyrights Defendant allegedly infringed.  DC first listed 22 copyrights on Exhibit "A" to the Complaint and then, after discussion with Defendant's attorney, amended the complaint to add an additional 13 copyrights to Exhibit "A."

Any attempt by DC to allege the infringements of copyrights not specifically identified in the complaint should be disallowed.  To establish infringement of a copyright, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).  Federal Rule of Civil Procedure 8(a) (2) provides that a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Courts have interpreted Rule 8(a) (2) as requiring that the complaint state which particular work is the subject of a copyright claim. *Four Navy Seals v. Associated Press* 413 F.Supp.2d 1136, 1148 (S.D. Cal 2005) *citing*

*Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D.Pa.1979); *Bespaq Corp. v. Haoshen Trading Co.,* 2005 WL 14841 (N.D.Cal.2005).

In the *Gee* case, *supra,* the court stated,

"To be sufficient under Rule 8 a claim of infringement must state, *inter alia*, which specific original work is the subject of the copyright claim, that plaintiff owns the copyright, that the work in question has been registered in compliance with the statute and by what acts and during what time defendant has infringed the copyright." *Gee* at 644 (emphasis added), citing 2a Moore's Federal Practice P 8.17(7) at 1767 (2d ed. 1978), (See also *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992) aff'd sub nom. *Kelly v. L.L. Cool J,* 23 F.3d 398 (2d Cir. 1994)).

In *Plunket v. Estate of Dame Jean Conan Doyle*, 2001 WL 175252 (S.D.N.Y. 2001), the court found lack of compliance with Rule 8 where plaintiff provided a multipage schedule of works she purportedly owned along with registration numbers, but contended that "her copyright claims are not limited to these works." *Id.* at 175254.

DC's position is that the vague allegation in the complaint that Defendant infringed the DC Comics Copyrighted Designs allows it to assert infringement of any of the thousands of copyrights it owns, without ever amending the complaint. DC is also contending that despite the fact that the Complaint alleged that the DC

17    Towle Opposition to Motion for Summary Judgment

Comics Copyrighted Designs were works that were entirely original with DC and that DC owned the certificate of registrations to each of these works, that this allegation somehow also covered the Batman TV show and 1989 movie, which are not original with DC and for which DC does not own the copyright certificate.

A copyright complaint cannot be treated as a moving target. If Plaintiff wanted to put Defendant on notice that it was claiming infringement of copyrights other than the 35 listed on Exhibit A, the proper method was to file a motion to amend the complaint and explain why these copyrights were not included at the onset of the case. Plaintiff did not do so and for that reason alone summary adjudication of the copyright infringement issue should be granted.

Furthermore, even if DC was permitted to allege infringement of the TV show and the 1989 movie, there is no evidence that they obtained these copyrights. With regard to the 1966 TV show, the contract between DC, Fox, Greenway and Barris states that Fox, Greenway and Barris, not DC, own the design rights to the Batmobile (Ex. 15 at ¶15 "BARRIS,FOX and GREENWAY are the joint owners of the design of said Batmobile I"). So even if the design of the Batmobile was copyrightable, that design does not belong to DC.

With regard to the 1989 Batmobile, the evidence shows that Anton Furst built the car under a work-for-hire agreement with Warner Brothers Productions, Ltd. (Ex. 20). But there is no evidence that Warner Brothers Productions Ltd

assigned its rights to Warner Brothers, Inc., the copyright holder to the movie. Accordingly, even if Warner Brothers, Inc. assigned merchandising rights to DC, those rights did not include the rights to the Batmobile because there is no evidence that it obtained those rights.

### V. THE BATMOBILE IS NOT A "CHARACTER"

DC also argues that the Batmobile should be entitled to copyright protection as a character, citing Halicki Films, LLC v. Sanderson Sales & Mktg, 547 F.3d 1213 (9th Cir. 2008). But the holding in *Halicki* says that the requirement to be considered a character is the display of "consistent, widely identifiable traits" that are especially distinctive" *Halicki* at 1225. The one thing that is clear from the evidence is that the look of the Batmobile has been anything but consistent. There have been dozens of different models of the Batmobile shown in the comics, movies and TV shows.  The only thing consistent about the Batmobile is how often it changes.  See Ex. A, p.1252 for an example of a dozen different Batmobile designs.  Nor is there any evidence that the Batmobile has widely identifiable traits.  It is a car, and is always treated as a car, not a character as shown here. Whatever car Batman drives is simply referred to as "the Batmobile" no matter



Batman #164

19    Towle Opposition to Motion for Summary Judgment

what it looks like. DC tries to say that the car is given a name (like "Eleanor" in the *Halicki* case), but "Batmobile" is not the name of a character, it is the name of a <u>thing</u>, just like the Bat Cave, the Bat Pole, the Bat Plane and the Bat Boat. These are all names of <u>things</u> that Batman uses, not characters. Under this interpretation of *Halicki*, "phasers" from *Star Trek* and "light sabers" from *Star Wars* would also be considered characters, simply because they are given a colorful moniker. Finally, even assuming, *arguendo,* that the TV show or the 1989 movie had such traits, DC has not introduced the TV show or the 1989 movie into evidence. The only evidence before the court is the various Batmobiles in the comic books, and DC makes no effort in their motion to establish such traits in the pre-existing comic books.

## VI. THERE IS NO EVIDENCE THAT THE COPYRIGHT TO THE 1966 BATMAN TV SHOW IS VALID

Even if the court allows DC to introduce the copyright registrations for the 1966 TV show, there is no evidence that these registrations are valid. 17 U.S.C. §410(c) states that certificates of registrations constitute prima facie evidence of the validity of the copyright and facts stated therein. But only if the registrations were completed within 5 years of first publication of the work. A review of the certificates for the TV show reveals that they all were registered in 1985, but list dates of first publication in 1966 or 1967. In such a case, the evidentiary weight to be accorded the certificates is in the discretion of the court. *Id.*

20    Towle Opposition to Motion for Summary Judgment

Accordingly, where these certificates were neither produced, nor identified to Defendant in accordance with FRCP 26(a)(1)(a)(ii)[4], and were only delivered to Defendant <u>after</u> the discovery cut-off, too late for Defendant to even begin to conduct discovery on these certificates validity, and where there is no evidence to support the facts stated in these certificates, they should be given no evidentiary weight whatsoever.

## VII. PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR DAMAGES FOR TRADEMARK INFRINGEMENT BECAUSE PLAINTIFF IS GUILTY OF LACHES

"Laches is an equitable time limitation on a party's right to bring suit, ... resting on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir.2002).  "It is well established that laches is a valid defense to [federal] Lanham Act claims." *Id.* Laches is also a valid defense to Plaintiff's state law claim for unfair competition.  *Id.* at 342.  A party asserting laches must show that it suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit. *Id.* at 835.

The 9th Circuit holds that if the lawsuit is filed "after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *Id.* at 837.  It does not matter if some of Defendant's allegedly wrongful conduct

---

[4] Additionally, the fact that they were not produced or identified at the outset of this case in accordance with Rule 26 should alone be reason for their exclusion.

occurred during the limitations period, "the presumption of laches is triggered if any part of the wrongful conduct occurred beyond the limitations period." *Id.*

In a case of trademark infringement, the statute of limitations period is three years. Code of Civil Procedure §338.

Here, it is undisputed that DC had *actual knowledge* of Defendant's allegedly infringing activities at least as early as 2005 ( Per Kogan Depo 143:16-25 "Prior to 2006"), and possibly as early as 2003 (Towle Decl. ¶4).  As the Complaint was filed in May 2011, DC knew of Towle's activities at least 5½ and possibly 8 years prior to filing the lawsuit.  And yet in all that time, DC made no effort to stop him or even inform him that DC believed that his actions were infringing, not even sending him a cease and desist letter (Kogan Depo 144:1-19, Towle Decl. ¶5).  In fact, Mr. Kogan testified that between 1995 and 2010, DC filed no lawsuits and only sent out one cease and desist letter, and that letter was to Mark Racop, the person who holds the license from DC to build Batmobile replicas (Kogan Depo 145:23-146:13). Otherwise, for the past 15 years, DC has taken not even the slightest steps to put people on notice that they considered the manufacture and sale of Batmobile replicas as infringement of DC's rights.

DC's unreasonable delay in filing the lawsuit has caused Towle a great deal of damage.  Mr. Towle has spent well over $100,000 building up his business as a custom car manufacturer, including buying expensive equipment used in the

manufacturing of automobile replicas and he is now known as one of the best manufacturers of replica Batmobiles in the United States (Towle Decl. ¶6).  Had DC informed Defendant earlier that they believed his actions were infringing, they could have easily contacted him so that Towle could have decided to take of these issues years ago, before spending the great sums of money on his business. DC cannot wait eight years and then file a lawsuit for trademark infringement.

While the evidence is clear that Defendant always took steps to make it clear to his customers that he was not affiliated with DC, laches will bar a claim for damages even in cases of bad faith infringement. While the availability of laches as a defense to claims for injunctive relief may be limited when the defendant is guilty of bad faith infringement, *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Skippy, Inc. v. CPC Int'l, Inc.,* 674 F.2d 209, 212 (4th Cir. 1982).

As the presumption of laches applies, and as Towle has suffered prejudice as a result of DC's failure to file a lawsuit or even to notify him that they objected to his sale of replica Batmobiles, DC's claim of damages for trademark infringement must fail.

DC does point out that the laches defense only applies to Plaintiff's request for damages and not to the request for injunctive relief.  DC is correct.  That is why from the beginning of this case, Defendant has told DC that now that it was

asserting these rights and obtained a trademark for Batmobile for automobiles, he would stop using DC's marks in a way that might confuse consumers and would always refer to his automobile as the "Gotham Prowler" and not the Batmobile. But if that offer was made, why has this case continued?  Because DC is demanding that Defendant stop selling the non-copyrightable cars themselves, regardless of what he calls them. And it is this overreach by DC of what is protected (and protectable) by copyright that is the crux of this case.

As evidenced above, the 1966 Batmobile is basically a 1955 Lincoln Futura that was painted black and given some nice trim.  Nothing in the design of the car was taken from a DC comic book, and all of the design rights belong to Fox, Greenway and Barris.

With respect to the 1989 Batmobile, this was an original creation that was also not taken from any comic book and which is owned (if it can be owned) by Warner Brothers Production Ltd.  Defendant did not infringe any of the DC Comics Copyrighted Designs as defined in the FAC.

### VIII. <u>CONCLUSION</u>

From the beginning of this case, Towle has told DC that, despite operating without a word of complaint from DC for 10 years, he would agree to stop using the DC trademarks in a way that could possibly cause consumer confusion.  But that was not enough for DC.  DC's position was that they own, not just their

24    Towle Opposition to Motion for Summary Judgment

trademarks, but also the copyright to the Barris modified Lincoln Futura and the Furst designed 1989 Batmobile.  This is despite the fact that these designs are not found in any of the *Batman* comic books and that car designs are not copyrightable.  There is simply no evidence that Towle infringed any of DC's copyrights.  Accordingly, DC's motion for partial summary judgment should be denied.

DATED: January 9, 2013              ZernerLaw


By: _____/S/_____
             Larry Zerner
       Attorney for Defendant Mark Towle, an
       individual and d/b/a Gotham Garage