Larry Zerner (SBN 155473)
Law Office of Larry Zerner
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (310) 773-3623

Attorney for Defendant Mark Towle,
An individual and d/b/a Gotham Garage

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC Comics,<br><br>     Plaintiff,<br><br>  v.<br><br>Mark Towle, an individual and d/b/a Gotham Garage, and Does 1 – 10, inclusive,<br><br>     Defendants. | Case No. CV11-3934 RSWL (OPx)<br><br>DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGEMENT<br><br>Date: January 30, 2013<br>Time: 10:00 a.m.<br>Courtroom: 21<br><br>Trial Date: March 26, 2013<br>Pre-Trial Conference: March 12, 2013<br>Discovery Cut-Off: November 27, 2012 |

TABLE OF CONTENTS

I. **INTRODUCTION** ................................................................. 1

**II. DC DOES NOT OWN THE RIGHTS TO THE LINCOLN FUTURA**2

III. **DC HAS NOT PRESENTED EVIDENCE SHOWING THAT IT OWNS THE DESIGN RIGHTS TO THE 1966 BATMOBILE OR THE 1989 BATMOBILE**................................................................. 3

**IV. DC REPEATEDLY ADMITTED THAT THE 35 COPYRIGHTS LISTED ON EXHIBIT A WERE THE ONLY COPYRIGHTS AT ISSUE** ................................................................................ 6

**V. A "REPRESENTATIVE" LIST OF COPYRIGHTS WOULD BE A VIOLATION OF RULE 11** ...................................... 11

**VI. DC ADMITS THAT THEY KNEW OF DEFENDANT'S ACTIVITIES IN 2003 AND TOOK NO STEPS TO STOP HIM UNTIL 2011**............................................................. 15

**VIII. THERE IS NO ADMISSIBLE EVIDENCE THAT THE PARTS OF THE BATMOBILE ARE SEPARABLE AND/OR NON-FUNCTIONAL** ....................................................... 18

**VIII. THERE IS NO EVIDENCE THAT THE BATMOBILE IS A "CHARACTER" IN THE BATMAN COMICS** ..................... 19

**IX. AUTOMOBILE DESIGNS ARE NOT COPYRIGHTABLE** .......................20

**TABLE OF AUTHORITIES**

## CASES

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). ..................8

*Durham v. Tomy*, 630 F.2d 905, 915 (2nd Cir. 1980) ................................22

*Four Navy Seals v. Associated Press* 413 F.Supp.2d 1136, 1148 (S.D. Cal 2005) ...12

*Gee v. CBS, Inc.,* 471 F. Supp. 600, 643 (E.D.Pa. 1979) ..........................12

*Halicki Films LLC v. Sanderson Sales & Mktg.* 547 F.3d 1213 (9th Cir. 2008) ..19, 20

*Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F2d 604, 609. ...............9

*Miller v. Glenn Miller Productions, Inc.,* 454 F.3d 975, 980 (9th Cir. 2006)...........17

*Motta v. Samuel Weiser, Inc.,* 768 F.2d 481, 484 (1st Cir. 1985). ...........................6

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.,* 923 F. Supp. 1231,
     1241 (N.D. Cal. 1995).......................................................6

## OTHER AUTHORITIES

H.Rep.No. 1476, 94th Cong., 2d Sess. 55 (1976), ....................................22

H.Rep.No. 1476, 94th Cong., 2d Sess. 55 (1976), U.S. Code Cong. & Admin. News
     1976, p. 5668...........................................................22

## RULES

(FRCP 11(b)(1)).......................................................14

(FRCP 11(b)(3)).......................................................15

## STATUTES

17 U.S.C. §101.................................................................................20

17 U.S.C. **§508**..................................................................................8

FRCP 16(b)(4)),................................................................................9

(FRCP 37(c)(1))...............................................................................10

FRCP 26,........................................................................................10

Rule 11 ...........................................................................................14

Rule 11............................................................................................15

## TREATISES

3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* at §12.11[C]. .............6

# I. **INTRODUCTION**

Defendant was sued for infringing 35 of DC's copyrights, referred to as the "DC Comics Copyrighted Designs".  These copyrights are listed on Exhibit A to the First Amended Complaint. These 35 copyrights are the <u>only</u> copyrights that are at issue in this case. DC did not sue defendant for infringing the Warner Brothers Copyrighted Designs or the Twentieth Century Fox Copyrighted Designs.  Nor did the FAC put Defendant on notice that DC was claiming infringement of some "to be identified" list of the 10,000 or so copyrights it owns. From the outset of this lawsuit, DC has taken the position that the copyrights listed on Exhibit A stated a claim of copyright infringement against Defendant. They took this position not only in conversations with defendant's counsel, but in numerous court filings. It was only after the deposition of Jay Kogan in which Mr. Kogan was forced to admit that none of the 35 copyrights on Exhibit A were actually infringed by Defendant, that DC abruptly changed their entire case strategy and asserted that they were always claiming infringement of the TV show and 1989 movie. However, as the facts clearly show that this is not the case, and as the law required DC to identify the copyrights at issue in the FAC, and as Defendant did not infringe any of the 35 copyrights listed on Exhibit A, summary judgment on the issue of copyright infringement should be granted.

With regard to the claim of trademark infringement, it is undisputed that DC not only knew of Defendants activities in 2003 but also actually had a telephone

conversation with him in which no attempt was made to tell him that DC believed that his actions infringed their rights. Furthermore, despite the fact that Defendant has been selling replica Batmobile's for over 10 years, DC has been unable to show any damages incurred as a result of Defendants activities. As these facts plainly show that it would be inequitable to award any damages to DC and as Defendant has agreed from the outset of this case to stop using DC's marks (and has stopped such use) there are no remaining issues to be resolved with regard to the trademark infringement claim.

## II. DC DOES NOT OWN THE RIGHTS TO THE LINCOLN FUTURA

The Batmobile is a famous car.  So is the Aston Martin used by James Bond in *Goldfinger*, Steve McQueen's Mustang from *Bullitt*, and the DeLorean used as a time machine in the *Back To The Future* movies. DC's argument is that because the car is famous, they own the underlying design rights. This argument is not supported by any existing case law. The only right that DC may own is the right to sell the car under the name "Batmobile."  But they do not own the design rights to the car itself because they did not design it.

The 1966 Batmobile is a Lincoln Futura (a one-off concept car created in 1955). DC did not create the Lincoln Futura nor could the design of the Lincoln Futura be copyrighted. The fact that the Lincoln Futura became more famous[1] after appearing

---

[1] The Lincoln Futura was actually famous prior to becoming the Batmobile.  It had appeared in the 1959 Debbie Reynolds-Glenn Ford movie *It Started With A Kiss,* on

in the Batman TV series does not bestow some special rights on DC that would allow it to enjoin defendant from making his own copies of the Lincoln Futura.

Under DC's theory, if in the next Batman movie, Batman drives a Prius but calls it "the Batmobile", then DC would own the copyright to the Prius.  This is obviously not the law.  By calling the Lincoln Futura "the Batmobile" DC did not obtain the copyright to the car itself.

### III. DC HAS NOT PRESENTED EVIDENCE SHOWING THAT IT OWNS THE DESIGN RIGHTS TO THE 1966 BATMOBILE OR THE 1989 BATMOBILE

Even assuming, *arguendo,* the Lincoln Futura or George Barris' modifications to the car were copyrightable, DC has not produced any evidence that proving it owns such rights. DC repeatedly states in their motion papers that that "all copyright and trademark rights to the 1966 Batmobile were retained by DC Comics." However, the evidence unequivocally contradicts this statement.  The exhibits DC uses to support this statement are the 1965 contract between George Barris, 20th Century Fox, and Greenway Productions at paragraph 7 (Ex. 14) and the 1966 contract between National Periodicals, Fox, Greenway and Barris at ¶1 (Ex. 15) (See DC's SS at #20).

Yes, ¶1 of the 1966 contract contains a preamble that states:

"WHEREAS, NATIONAL PERIODICAL PUBLICATIONS, INC. is the owner of all copyrights, trademarks and all other rights including commercial

---

the cover of Life magazine and there were toy model kits of the Futura in the 1950's. Zerner Decl. ¶9-10.

and exploitive rights to the feature, BATMAN, and to all the contents of the said feature, including the Batmobile"

But DC completely ignores paragraph 15 of the 1966 contract which states:

**"Notwithstanding anything to the contrary herein contained**,

NATIONAL PERIODICAL acknowledges that BARRIS is the owner of the vehicle known as Batmobile I as used in the BATMAN television series and feature motion picture and that **BARRIS, FOX and GREENWAY are the joint owners of the design of said Batmobile I** as provided for in Article 7 of that certain agreement between FOX and Greenway, and BARRIS, dated September 1, 1965, as follows:

'7. **Any and all right, title and interest in and to the design of Batmobile I** resulting from the application of the required Batmobile features in and to Owner's prototype Lincoln chassis, save and except the name "Batmobile" and the Batmobile features set forth in Article 10 hereof and in the drawings and exhibits attached hereto, and of the completed Batmobile I provided for in Article 2 hereof, **shall forever be vested in and Owned jointly by Owner and Producer,** subject only to any and all right, title and interest of National Periodical Publications, Inc. . . . in and to said Batmobile features in said design.' " (Emphasis Added)

The 1966 Agreement also states, at ¶9:

"During the term of this Agreement, and thereafter, the parties agree that none of them will attack the rights in or title of NATIONAL PERIODICAL to all BATMAN rights, trademarks and copyrights **with the exception of the design rights in and to the Batmobile and copies thereof as owned by BARRIS, FOX and Greenway** as described in Article 15 hereof." Emphasis Added.

How DC can look at the clear and unambiguous language of paragraphs 9 and 15 and claim that they own the design of the 1966 Batmobile is beyond the power of Defendant to comprehend. The language plainly states that Fox, Greenway and Barris own the design rights to the 1966 Batmobile. As DC neither owns the copyright to the TV show nor the design rights to the 1966 Batmobile itself, it cannot prevail in its claim of copyright infringement as it cannot prove the first element - ownership of a valid copyright.[2]

DC poses the question as to why Barris entered into an agreement with DC to make replica Batmobiles if he owns these rights.  While it is not Defendant's job to answer this question, it is probably due to the fact that the 1965 contract contains a provision in which Barris agreed to obtain permission before constructing any duplicate Batmobiles (Ex. 14, ¶11). Therefore, in a somewhat ironic state of affairs,

---

[2] The language that states that the agreement is subject to any right, title, and interest of [DC] in the Batmobile features does not grant DC any rights in those features. DC must still prove that it owns the underlying rights in the Batmobile features, something it has been unable to do.

Barris became the only person who needed permission to build replica Batmobile's once the design patent expired.

DC has a similar problem regarding the 1989 Batmobile in that Anton Furst signed a contract in which he agreed that his work (to the extent that it was copyrightable) would be owned by Warner Bros. Production Ltd. as a work for hire. However, Warner Brothers, Inc. owns the copyright to the 1989 Batman movie and DC has been unable to produce any evidence that shows that Furst's rights to the 1989 Batmobile were transferred from Warner Brothers Productions Limited to Warner Bros. Inc.  When the plaintiff is not the author of a work, he must provide evidence of a chain of title from the registrant to him. *Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.,* 923 F. Supp. 1231, 1241 (N.D. Cal. 1995).  *Motta v. Samuel Weiser, Inc.,* 768 F.2d 481, 484 (1st Cir. 1985).  See also 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* at §12.11[C].  As DC has been unable to produce the chain of title from Furst to DC, DC lacks standing to claim copyright infringement to the design of the 1989 Batmobile as well.

## IV. DC REPEATEDLY ADMITTED THAT THE 35 COPYRIGHTS LISTED ON EXHIBIT A WERE THE ONLY COPYRIGHTS AT ISSUE

DC's argument that it should be allowed to allege the infringement of the copyrights to the TV show and 1989 movie despite those not being mentioned in the FAC is both troubling and disturbing. DC argues that it should be allowed to add these copyrights to the case (without amending the complaint) because Defendant

asked the court to take judicial notice of the registrations for the TV show and 1989 movie when it filed the motion to dismiss in December 2011. What DC omits is the context for <u>why</u> Defendant requested the court to take judicial notice of those registrations. Defendants moved to dismiss the FAC precisely on the grounds that the registrations that would cover the 1966 Batmobile and the 1989 Batmobile were the registrations for the movie and TV show and DC was not claiming infringement of those works in the FAC. See. Ex. 29 at p.21-25.

More importantly, in opposing Defendant's motion to dismiss, <u>DC did not argue that it was claiming infringement of the TV show and 1989 movie copyrights</u>. In fact, DC argued that the copyrights for the TV show and 1989 movie were objectionable and irrelevant.  Instead, DC contended that it was the owner of the Batmobile based on pre-existing rights that derived from the comic books, <u>specifically the comic books referenced in Exhibit A to the FAC</u>.  Exhibit 30, p.33:5-10.[3] Had DC actually been asserting infringement of the TV show and 1989 movie copyrights from the outset of this case then, in opposing the motion to dismiss, it simply would have said so.  The fact that they did not make such a statement in opposing the motion to dismiss proves this point more than any other fact.

---

[3] "Defendant improperly attempts to introduce extrinsic evidence not properly considered on a motion to dismiss, alleging that this evidence demonstrates that Plaintiff does not own copyrights to the Batmobile . . . However, none of this evidence consists of registrations specifically for the Batmobile nor do any of the registrations [for the 1966 TV show and 1989 Movie] pre-date Plaintiff's original creation of the Batmobile. See id [FAC at ¶11-13]; see also FAC at ¶7 & Ex. A"

The other reason that we know that DC was only suing for infringement of the 35 registrations referenced on Exhibit A is that when DC filed the complaint and the FAC, it simultaneously filed a "Report on the Filing or Determination of an Action or Appeal Regarding Copyright" as required by 17 U.S.C. **§**508. (Ex. 41 and 42)  As the court is aware, when filing a complaint for copyright infringement, the plaintiff is required to complete this Report, so that the Register of Copyrights is aware of the copyrighted works involved in the lawsuit.

Each Report filed by DC states, "In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):"

In the Report filed with the original complaint, under "Title of Work" it states "See Attached Exhibit A".  DC then attached the same Exhibit A that was attached to the Complaint.  After filing the FAC, DC filed another Report which amended the first Report.  This Report states: "In the above-entitled case, the following copyright(s) have been included."  Again, under "Title of Work" DC states "See Attached Exhibit 'A'" and this time attached the Exhibit A that was attached to the FAC.  DC has not filed any further Reports in this case.

Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  The statement in the Report that the copyrights at issue in the case were the copyrights

listed on Exhibit A is a binding admission on DC's part as to the copyrights that are at issue in this case.

Furthermore, the FAC states that all of the DC Comics Copyrighted Designs are "wholly original with DC Comics" (¶11) and that DC owns all the certificates of registrations for works in which the DC Comics Copyrighted Designs appear (¶12). Under these facts, neither the 1966 TV show nor the 1989 movie qualify as a DC Comics Copyrighted Design. This is a second factual assertion that DC is now trying to take back.

After Jay Kogan's deposition, in which he was forced to admit that none of the car designs and most of the separable, non-functional, artistic elements of the Batmobiles did not derive from the comic books or were not present on Defendant's replica, DC decided to change its' strategy, and, for the first time, claim that the TV show and 1989 movie were also "DC Comics Copyrighted Designs" despite the fact that they did not fit the definition that was laid out in the FAC, and were not mentioned on Exhibit A. This is obviously improper. As DC concedes that none of the 35 copyrights referenced on Exhibit A to the FAC were actually infringed by Defendant, summary judgment is not just proper, it is the only possible result.[4]

---

[4] DC attempts to argue that it should be given leave to amend the complaint. It does take a certain amount of chutzpah to argue for leave to amend the complaint after Defendant has filed a motion for summary judgment, but DC should be aware that the rules of liberal amendments to pleading do not apply once the scheduling order is made. At that point, "good cause" must be shown. FRCP 16(b)(4)), *Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F2d 604, 609. Further, there is no pending motion to amend the complaint despite DC's awareness of this issue for months and the motion cut-off occurring on December 26, 2012.

With regard to the issue of whether or not Defendant was prejudiced by Plaintiff's failure to produce the copyright registrations, it is not defendant's burden to show whether or not plaintiff's actions caused prejudice. If plaintiff does not produce documents in accordance with FRCP 26, then they are automatically excluded. (FRCP 37(c)(1)).  That being said, because DC did not tell the Defendant that it was claiming copyright infringement of the TV show and 1989 movie, Defendant did not conduct any discovery toward 20 Century Fox or Warner Bros. to determine a) their ownership of the underlying copyrights[5], b) whether the designs of the separable elements of the 1989 Batmobile were based on pre-existing elements. For example, in Plaintiff's Exhibit A to their Motion, plaintiff included pages from the book *Batmobile*, released in 2012.  The book states that the interior of the 89 Batmobile is filled with "fighter aircraft components." Exhibit A at 1256. This indicates that the interior of the car is not an original design but merely incorporates elements taken from other objects. The book also states that, "The <u>only</u> nonfunctioning aspect [of the car design] was the armor shielding that could completely encase the car . . ." *Id.* (Emphasis Added.)  Had DC properly put Defendant on notice that it was claiming infringement of the TV show and the 1989 movie and not just the comic books, Defendant would have conducted discovery on these issues. See Zerner Decl ¶4-8. But as DC was only alleging infringement of the

---

[5] The issue of ownership is especially important where, as here, the copyright registrations for the TV show were not made within five years of publication and therefore there is no *prima facie* evidence of copyright ownership.

comic books and as none of these elements appeared in the comic books, this

discovery was unnecessary.

### V. A "REPRESENTATIVE" LIST OF COPYRIGHTS WOULD BE A VIOLATION OF RULE 11

DC argues that the court can ignore the list of copyrights on Exhibit A as it is

merely "representative" or "illustrative."  These are terms that have no meaning

when it comes to a complaint for copyright infringement.  DC admits that of the 35

registrations listed on Exhibit A, defendant did not infringe at least 32 of them.[6] If

that is the case, then what do these registrations "represent."  Why is DC permitted to

simply attach to the complaint a random list of copyrights it owns but which have no

relevance to the case at hand? What purpose does this serve, other than to mislead

the Defendant? Why would DC be permitted to inform the Register of Copyrights

that Exhibit A represents all the copyrights at issue in the case and then take that

statement back the admission becomes inconvenient to them?

The court should keep in mind that DC amended Exhibit A when it filed the

FAC to add an additional 13 comic books.  And that this was after a meet and

confers with Defendant's counsel in which the issue of which copyrights were at

issue in the case was thoroughly discussed.  So DC actually thought about Exhibit A

long enough to amend it when filing the FAC, took the time to add 13 additional

---

[6] It is unclear, but it appears that DC has actually conceded that the other three registrations referenced in Exhibit A - *Batman* #170 and the Batman Returns Style Guides I and II were not infringed either.

works to the list, but now claims that it is an insignificant piece of paper which the court should disregard when ruling on the present motion.

Defendants burden in making this motion for partial summary judgment is not to prove that he did not infringe any of the 10,000 or so copyrights owned by DC (or any of the thousands of copyrights owned by 20th Century Fox and Warner Bros. for that matter), his only burden is to prove that he did not infringe the copyrights referenced in the FAC. Defendant has met this burden.

Plaintiff's burden in filing a complaint for copyright infringement (and a very slight burden at that) is to notify the defendant precisely which copyrights the Plaintiff alleges were infringed. *Four Navy Seals v. Associated Press* 413 F.Supp.2d 1136, 1148 (S.D. Cal 2005) *citing Gee v. CBS, Inc.,* 471 F. Supp. 600, 643 (E.D.Pa. 1979)   There are many reasons for this:

1. So the defendant can immediately compare the infringing work with the original work;

2. So the defendant can determine the owner of the copyright registration;

3. So the defendant can determine if the copyright has expired;

4. So the defendant can determine if the original author has recaptured the copyright to the underlying work;

5. So the defendant can determine if the copyright registration was timely renewed;

6. So the defendant can determine if the original work was published with a proper copyright notice;

7. So the defendant can determine if the copyright registration was made prior to the infringement or within 90 days of publication to determine if statutory damages and attorney's fees are allowed;

8. So the defendant can determine if the copyright was registered within five years of publication to see whether the prima facie evidence of copyright applies;

9. So the defendant can determine if the infringed work is based upon a pre-existing work;

10.     So the Defendant and the court can determine if res judicata or collateral estoppel applies.

11.     So the defendant is not forced to disprove infringement of registrations that were not infringed.

Under DC's theory of pleading, not only it is not required to notify the defendant precisely which copyrights are at issue, it may actively mislead a copyright defendant by claiming infringement of works which it knows were not infringed and omitting the ones it actually wishes to put at issue.  The ramifications of such a holding are frightening.  For example, part of the analysis that a defendant must make in deciding whether to fight or settle a copyright infringement case is the possible damages.  If statutory damages are available to the plaintiff, then the defendant would need to know how many works are at issue to determine the extent

of such damages.  If only one work is at issue, then the defendant would be looking at a maximum of $30,000 in statutory damages (or $150,000 if willful).  But if the Plaintiff may list 35 copyrights in the complaint[7], even though it knows that 34 of them were not infringed, the Defendant is now calculating possible statutory damages of over $1,000,000 and the Plaintiff will use this false allegation as a cudgel to extract a higher settlement.

Or, a plaintiff could list copyrights registrations in the complaint that were timely renewed, when in fact the copyrights that were actually infringed belonged to registrations that were not renewed and fell into the public domain.

In fact, it is clear that in alleging the infringement of copyrights which it now concedes were not infringed, DC has violated Rule 11[8] in that a) by including these non-infringed registrations DC needlessly increased the cost of litigation as Defendant had to expend time proving the non-infringement of these registrations (FRCP 11(b)(1)) and included claims that did not have evidentiary support as it

---

[7] And if DC can list 35 irrelevant copyright registrations, what's to stop it from next time listing 100? Or 500? How many bogus registrations can DC claim?

[8] FRCP 11(b) "Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; . . .
 **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . ."

included at least 32 copyrights that it knew were not infringed (FRCP 11(b)(3))[9].

These are clear violations of Rule 11 for which there is no excuse.  DC apparently

believed, as is sadly true in so many of these case, that because of the disparity in

money and power between DC and Mr. Towle, simply by filing the complaint it

would be able to strong-arm Defendant into a settlement, regardless of the merits of

their claim. DC included all of the non-infringing registrations on Exhibit A in part

to argue to Defendant that it would be entitled to massive statutory damages should

the case go to trial. And indeed, the prayer of the FAC requests damages of up to

$150,000 "for each copyrighted property infringed upon by . . . Defendant." (FAC,

p.15:17-18).

Accordingly, not only is DC bound by the allegation that only the registrations

listed in Exhibit A were infringed, but the court should impose appropriate sanctions

for the clear violation of Rule 11.

## VI. DC ADMITS THAT THEY KNEW OF DEFENDANT'S ACTIVITIES IN 2003 AND TOOK NO STEPS TO STOP HIM UNTIL 2011

Defendant testified that in 2003, he received a phone call from Cindy Nelson, the

Vice-President & Senior Anti-Piracy Counsel for Warner Bros. Entertainment.  Ms.

Nelson had seen a photograph of Mr. Towle's garage that showed five(!) 1966

Batmobile replicas in various stages of creation and a shell for a 1989 Batmobile.

---

[9] DC also included in Exhibit B to the FAC a number of trademarks which it knew were never at issue in this case such as Batman & Robin, Batman Beyond, Gotham City, Gotham Knights and Gotham Central.

Ms. Nelson then asked Defendant what he was going to do with the 1989 Batmobile. Please note that this was not a random call Ms. Nelson made to a person with a 1989 Batmobile shell.  From the photograph, Ms. Nelson could clearly determine that Defendant was in the business of making Batmobile replicas but was only concerned with the 1989 Batmobile shell (which was still protected under the 1990 design patent). Towle Decl. ¶4. Notably, Ms. Nelson did not tell Mr. Towle to stop making Batmobiles, to stop referring to his car as a "Batmobile" or to stop using any of the DC marks in connection with his business activities.

When Mr. Towle told Ms. Nelson that he won't do anything with the 1989 Batmobile shell until the design patent expires, she doesn't respond that the 1989 Batmobile is protected by copyright, the clear inference being that it was DC's position that the design patent was the only protection for the 1989 Batmobile.

According to the New York State Bar website, Ms. Nelson is still employed at Warner Brothers.  Zerner Decl. ¶11. Had any part of Defendant's statement been false, or if Ms. Nelson was unaware that Defendant was making 1966 Batmobile replicas when she made that call, DC certainly would have included a declaration from Ms. Nelson with their opposition.  The fact that they did not include any statement from Ms. Nelson disputing the contents of the phone call is as close as an admission of knowledge as you are going to get from DC.

Further, Mr. Kogan provided a declaration in conjunction with DC's Opposition to this motion, in which he admitted that DC knew of Defendant's activities, but said

that it was only in conjunction with Defendant's manufacture of a "Batboat." Mr.

Kogan claimed that (despite the fact Mr. Towle had a website advertising his

services) DC did not know Defendant was selling Batmobiles until "some time

later.[10]" (Kogan Decl. ¶2).

Certainly, if "some time later" was less than three years prior to the filing of the

complaint, he would have said so.  The fact that Mr. Kogan doesn't give a date again

shows that DC knew about Mr. Towle's activities more than three years prior to

filing.  But even if DC did not have <u>actual</u> knowledge (although clearly they did),

that is not the question.  The test is whether DC "knew or should have known" of

Defendant's activities. *Miller v. Glenn Miller Productions, Inc.,* 454 F.3d 975, 980

(9th Cir. 2006).

Here, the telephone call from Ms. Nelson regarding Towle's manufacturing

activities, as well as Mr. Kogan's admission that they knew Towle was making a

"Batboat" certainly show that they should have known of Defendant's alleged

infringing activities at five years and as much as eight years before filing suit and

thus laches applies.

However, in a case such as this, where the undisputed facts show that the head of

IP enforcement for Warner Brothers called Mr. Towle to speak to him about his

Batmobiles and did not tell him to stop his activities or make any statement that

[10] Although it should be noted that Mr. Kogan does not say that he knows this of his personal knowledge, but only on information and belief.

Plaintiff believed Mr. Towle was acting inappropriately, then we have gone way beyond laches and are verging on something closer to implied consent[11]. As Defendant has agreed to stop using DC marks in connection with his automobiles, the sole question on the trademark issue is whether DC should be entitled to monetary damages as well.  In this case, where DC knew about Defendant's activities for at least eight years before filing suit, and where they spoke to him, but did not tell him to stop, and where they never even sent him a cease and desist letter prior to filing the lawsuit, and where DC has not presented any evidence of damages from Defendant's use of the trademarks, equity clearly favors that there not be any damages awarded to DC on the trademark claim.

## VIII. THERE IS NO ADMISSIBLE EVIDENCE THAT THE PARTS OF THE BATMOBILE ARE SEPARABLE AND/OR NON-FUNCTIONAL

In Defendant's Motion for Partial Summary Judgement, he included a declaration laying out why certain parts of the Batmobiles were non-separable and/or functional.  Defendant, being a car designer and manufacturer with over 30 years experience in the field can easily qualify as an expert on these issues.  Defendant was also designated as an expert on these issues on November 28, 2012 (See Ex. 43).  DC, on the other hand, did not counter-designate an expert to speak about the

---

[11] Defendant is aware that the facts set forth above are insufficient to support a legal defense of implied consent as there was no outright statement from Ms. Nelson agreeing to his activities.  Defendant is arguing that, after receiving a phone call from the head of IP Enforcement at Warner Brothers, and not being told to stop, that something more than laches applies.  Call it "Laches Plus."

separability or functionality of the various parts of the Batmobile.  Therefore, DC

may not include a witness at trial (or in connection with these motions) to testify as

to whether the items such as the fenders, rear-fins, and intake grill are functional or

not.  Accordingly, DC's self-serving statements that these parts of the automobile are

separable or non-functional should be disregarded.

## VIII. THERE IS NO EVIDENCE THAT THE BATMOBILE IS A "CHARACTER" IN THE BATMAN COMICS

DC also attempts to argue that the Batmobile should be considered a character

based on the test set forth in *Halicki Films LLC v. Sanderson Sales & Mktg.* 547 F.3d

1213 (9th Cir. 2008).  DC's reliance on *Halicki* seems to be based solely on the fact

that both this case and *Halicki* involve automobiles, because other than that fact,

there is no similarity. In *Halicki,* the 9th Circuit held that automobile could be entitled

to copyright protection as a character if it displayed "consistent, widely identifiable

traits." *Id* at 1225.  The first thing we know about the Batmobile is that its

appearance has been anything but consistent. DC has introduced documents showing

more than a dozen design variations of the Batmobile and there are probably at least

50 additional incarnations of the Batmobile over the years.

Second, DC has not introduced evidence of any character traits of the

Batmobile. DC tries to argue that the gadgets in the car qualify as a character trait,

but this argument is unavailing. A character trait is a distinguishing quality or

characteristic. Including gadgets in a car is merely an idea that has no copyright

protection. Further, the evidence shows that the gadgets in the Batmobile vary

widely from project to project as the gadgets in the 1966 Batmobile are completely different than those listed for the 1989 Batmobile.

Finally, the Ninth Circuit gave some weight to the fact that the automobile in *Halicki* had a name, "Eleanor" which could be the name of a person. "Batmobile" on the other hand, is not a character name, it is merely the name of the thing that Batman drives, no matter what it looks like. Just like Batplane, Batboat, Bat pole and Bat cave represent the names of other things in the Batman universe. But no one would seriously argue that the Bat Pole is a character just because it is always referred to as "Bat Pole."

## IX. AUTOMOBILE DESIGNS ARE NOT COPYRIGHTABLE

Finally, while it has been stated previously, it must be remembered that automobile designs do not qualify as sculptural works because they are "useful articles" and "useful articles" are not subject to copyright protection. 17 U.S.C. §101.

"The design of a useful article . . . shall be considered a . . . sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.*

"An article that is normally part of a useful article is considered a useful article." *Id.*

Nor does it matter that the Batmobile design may be more aesthetically satisfying or valuable than that of a less exotic looking car.

"The House Report on the 1976 Act emphasizes that the definition of "pictorial, graphic, and sculptural works" was intended "to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design."

'Although the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill.  Unless the shape of an <u>automobile</u>, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill.  The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design, that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable. And, even if the three-dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the overall configuration of the utilitarian article as such."

*Durham v. Tomy*, 630 F.2d 905, 915 (2nd Cir. 1980) *quoting* H.Rep.No. 1476, 94th Cong., 2d Sess. 55 (1976), U.S. Code Cong. & Admin. News 1976, p. 5668 (Emphasis added).

When Congress passed the Copyright Act of 1976, it certainly knew that cars could have very exotic fenders, fins, wheels, grills and other normal parts of the car and if Congress wanted to protect those parts of the automobile, it would have issued a carve-out for them.  DC has been unable to show any case law where a court determined that a normal part of a car, such as the fenders, front grill or fins, qualified for copyright protection.  Therefore, even if the court were to claim infringement of the TV show and movie copyrights, despite the fact that DC has been unable to show any ownership of such rights, the record is clear that Defendant did not infringe any portions of the car that could be considered separable, non-functional elements and therefore DC cannot prevail on a copyright infringement claim.

## X. CONCLUSION

Mr. Towle has not done anything wrong.  For over 10 years, he has been selling replicas, always referring to his car as a "Batmobile Replica" (not as "the Batmobile") and always making sure that his customers knew that he was not licensed or affiliated with DC.  DC knew about his activities and made no attempt to

stop him or even inform him that they felt he was infringing on their rights, even when they had him on the phone.

Mr. Towle took pains to make sure that he did not violate DC's design patent rights by waiting until the design patent expired in 2004 to begin selling 1989 Batmobile replicas.

During this time, DC was not harmed in any way, as DC was not in the automobile manufacturing business and so it was only by going to Mr. Towle, or Mark Racop, or one of the three or four other replicators that a person could obtain a Batmobile replica.

The evidence plainly shows that a) Defendant did not infringe any of the copyrights referenced in the FAC, b) that DC has no evidence that it owns the copyrights (or any portion of such copyrights) in the TV show or 1989 movie and c) that Defendant has not copied any portion of the Batmobiles that would qualify as a separable, non-functional, artistic element owned by DC.

Furthermore, the evidence shows that the delay of at least eight years from the time DC first learned of Mr. Towle's activities, and the lack of any actual damages, precludes any award of damages on DC's trademark claim or claim of unfair competition.

Accordingly, Defendant's motion for partial summary judgment should be granted.

1

2   Date: January 16, 2013                    Law Office of Larry Zerner

3                                             By:

4                                                Larry Zerner

5                                                Attorney for Defendant Mark Towle

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28