**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DC COMICS | ) | CV 11-3934 RSWL (OPx) |
| Plaintiff, | ) ) | **ORDER re: Defendant Mark Towle's Motion for** |
| v. | ) ) | **Partial Summary Judgment [41]; Plaintiff DC** |
| MARK TOWLE, an individual and d/b/a Gotham Garage, and DOES 1-10, inclusive, | ) ) ) | **Comics' Motion for Partial Summary Judgment [42]** |
| Defendants. | ) ) | |

On January 30, 2013, Defendant Mark Towle's Motion for Partial Summary Judgment [41] and Plaintiff DC Comics' Motion for Partial Summary Judgment [42] came on for regular calendar before the Court. The Court having reviewed all papers submitted pertaining to these Motions and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court **GRANTS in Part and DENIES in Part** Plaintiff's Motion. The Court **DENIES** Defendant's Motion.

*///*

1

# I. BACKGROUND

This Action stems from a Complaint filed by Plaintiff DC Comics ("Plaintiff") against Defendant Mark Towle d/b/a Gotham Garage ("Defendant") and Does 1 through 10 for (1) Copyright Infringement, (2) Trademark Infringement, and (3) Unfair Competition [1].

## A. **Undisputed Facts**

Plaintiff is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc.  Pl.'s Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 1 [43]. Plaintiff is the successor-in-interest to Detective Comics, Inc., National Comics Publications, Inc., National Periodical Publications, Inc. ("National Periodical"), and DC Comics Inc.  Id. ¶ 2.  Plaintiff is the publisher of comic books featuring the world-famous Batman and his Batmobile.  Id. ¶¶ 3-4. Originally introduced in 1941, the Batmobile is a fictional high-tech automobile that Batman employs as his primary mode of transportation.  Id.  ¶¶ 9-10. Batman and his Batmobile vehicle have appeared in comic books, television shows, and blockbuster movies, including the television series, *Batman*, that first appeared in 1966 and the 1989 film, *Batman*.  Id. ¶¶ 7, 13, 27.  Plaintiff owns the copyright registrations to the Batman comic books.  Id. ¶ 12.

In 1965, Plaintiff's predecessor, National Periodical, licensed its Batman literary property to

American Broadcasting Company ("ABC") for use in the 1966 *Batman* television series, which starred Adam West as Batman.  Id. ¶ 13.  ABC contracted with Greenway Productions, Inc. ("Greenway") and Twentieth Century-Fox Television, Inc. ("Fox") to produce the television series.  Id. ¶ 15.  Fox and Greenway own the copyright registrations for all of the episodes of the 1960s *Batman* television series.  Id. ¶ 16.  The Batmobile that appeared in the television series (hereinafter, "the 1966 Batmobile") was manufactured by Barris Kustom City and designed by George Barris.  Id. ¶ 19.  Barris Kustom City retained title to the original Batmobile vehicle that was used in the filming of the television show.  Id.

Plaintiff also licensed its Batman literary property to produce motion films.  In 1979, Plaintiff entered into an agreement with Batman Productions, Inc., granting the use of its Batman literary property in feature-length motion pictures.  Id. ¶ 25.  These rights were assigned to Warner Bros. Inc. ("Warner Bros.") and resulted in a series of Batman films, including the 1989 *Batman* film to which Warner Bros. owns the copyright registration. Id. ¶¶ 27-28.  Anton Furst was hired to construct the Batmobile that appeared in the 1989 film (hereinafter, "the 1989 Batmobile").  Id. ¶ 31.

Plaintiff also owns a number of Batman-related trademarks, including, the BATMOBILE wordmark, the BAT

3

1   emblem design mark, the BAT REP II design mark, the
2   BATMAN wordmark, and other variations of the Batman
3   symbol.  Id. ¶ 35; see below.  The trademarks are
4   registered in various classes, and appear on
5   merchandise such as toy figurines and automobiles,
6   apparel, and household goods.  Id. ¶¶ 37, 40.
7   Plaintiff also licenses to Fiberglass Freaks the
8   manufacture and customization of full-size automobiles
9   into the Batmobile vehicles featuring Plaintiff's
10  trademarks.  Id. ¶ 39.  Plaintiff has also contracted
11  with George Barris, the designer of the original 1966
12  Batmobile, to produce replicas of the 1966 Batmobile,
13  featuring Plaintiff's trademarks, and to exhibit them
14  around the world.  Id. ¶ 38.

15      Defendant is the owner, operator, and manager of a
16  business producing custom cars modeled after vehicles
17  found in various television shows and movies.  Id. ¶
18  44.  Defendant has been producing and selling replica
19  vehicles based on the 1966 and 1989 Batmobile vehicles
20  and car kits that allow others to customize their
21  vehicles into the Batmobile.  Id. ¶¶ 45-48, 50.
22  Defendant has also manufactured and distributed various
23  automobile parts and accessories featuring the Batman
24  trademarks.  Id. ¶ 51.  Defendant does business through
25  the websites www.gothamgarage.net,
26  www.gothamgarage.com, www.marktowle.com,, and
27  www.batmobilereplicas.com, which use Plaintiff's
28  trademarks to promote Defendant's business.  Id. ¶¶ 52-

4

53.

| Plaintiff's Trademarks | | |
|---|---|---|
| **Reg. No.** | **Class** | **Mark** |
| 1581725<br>1581593<br>1581659<br>2119266 | 28<br>21<br>25<br>16 | <br>Bat Emblem |
| 3299017<br>3110604<br>3326043<br>3313612 | 9<br>16<br>25<br>28 | <br>Bat Emblem (Batman Begins) |
| 1219120 | 16 | <br>Bat Rep II |
| 856045<br>858860<br>828412<br>2457655<br>1652640<br>839561<br>1221720<br>1587507 | 25<br>28<br>21<br>41<br>41<br>16<br>16<br>9 | BATMAN (Word Mark) |

| 4246497 | 40 | BATMOBILE (Word Mark) |
|---|---|---|
| 1124961 | 28 | |
| 1179342 | 28 | |
| Serial No. | 12 | |
| 85143617 | | |

///

**B.   <u>Procedural History</u>**

On May 6, 2011, Plaintiff filed its Complaint against Defendant [1], and on November 22, 2011, Plaintiff filed a First Amended Complaint [13].  In its First Amended Complaint ("FAC"), Plaintiff asserts that the Defendant has infringed on the copyrighted versions of the 1966 Batmobile and the 1989 Batmobile. Plaintiff also asserts that Defendant has infringed upon its trademarks in marketing and selling these infringing vehicles.

On December 16, 2011, Defendant filed a Motion to Dismiss Claim of Copyright Infringement pursuant to Federal Rule of Civil Procedure 12(b)(6) [15].  The Court denied the motion on January 26, 2012 [21].  On February 14, 2012, Defendant filed an Answer, asserting several affirmative defenses, including laches, unclean hands, and fair use [23].

On December 26, 2012, Defendant filed the present Motion for Partial Summary Judgment [41] and Plaintiff filed the present Motion for Partial Summary Judgment [42].

The Parties' present motions seek summary judgment as to Plaintiff's trademark, copyright, and unfair competition causes of action, and on Defendant's laches defense.

*///*

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (2007).

Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of disputed fact remains.  <u>Celotex</u>, 477 U.S. at 322.  The non-moving party is required by Federal Rule of Civil Procedure Rule 56 to go beyond the pleadings and designate specific facts showing a genuine issue for trial exists.  <u>Id.</u> at 324.

///

1

### III. DISCUSSION

2

**A.   Evidentiary Objections**

3      In ruling on a Motion for Summary Judgment, courts

4 consider only evidence that would be admissible at

5 trial.  Fed. R. Civ. P. 56.  Here, the Parties have

6 filed over forty evidentiary objections.  Given the

7 number of objections made by the Parties, the Court

8 will address the evidentiary objections in two separate

9 orders.  For the purposes of this ruling, the Court has

10 considered only admissible evidence.

11

**B.   Trademark Infringement**

12      To sustain a claim for trademark infringement,

13 Plaintiff must show (1) that it has valid trademark

14 rights; and (2) that Defendant's use of a similar mark

15 is likely to cause confusion.  Applied Info. Sci. Corp.

16 v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007).  "The

17 core element of trademark infringement is the

18 likelihood of confusion, i.e., whether the similarity

19 of the marks is likely to confuse customers about the

20 source of the products."  E. & J. Gallo Winery v. Gallo

21 Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992).

22 Courts look to the following factors, known as the

23 Sleekcraft test, for guidance in determining the

24 likelihood of confusion: (1) strength of Plaintiff's

25 mark; (2) proximity of the goods; (3) similarity of the

26 marks; (4) evidence of actual confusion; (5) marketing

27 channels used; (6) type of goods and the degree of care

28 likely to be exercised by the purchaser; (7)

defendant's intent in selecting the mark; and the (8) likelihood of expansion of the product lines.  Dr. Seuss Enters. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 (9th Cir. 1997) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)).

Although courts should consider these factors to determine the issue of likelihood of confusion, "[n]o mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which likelihood of confusion must be determined."  Id. (citing Restatement (Third) of Unfair Competition § 21, comment a (1995)) (internal quotations omitted).  As such, this "list is not exhaustive" and "[o]ther variables may come into play depending on the particular facts presented."  Id. (citing Sleekcraft, 599 F.2d at 348 n.11).

Furthermore, although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists.  See Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 630 (9th Cir. 2005).  Whether likelihood of confusion is more a question of law or one of fact can depend on the circumstances of each particular case.  Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443 (9th Cir. 1980).  And, a question of fact may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one

conclusion.  See Sanders v. Parker Drilling Co., 911

F.2d 191, 194 (9th Cir. 1990).

The legal conclusion that confusion is likely must

rest on the particular facts of the case, but when all

of the material facts have been determined, the

ultimate determination of likelihood of confusion lies

within the exclusive jurisdiction of the court.  See

Alpha Indus, Inc., 616 F.2d at 443-44; see also

Sleekcraft, 599 F.2d at 348.

First, the Court finds that Plaintiff has valid

trademark rights in the trademarks at issue in this

case.  Under the Lanham Act, registration of a

trademark creates a rebuttable presumption that the

mark is valid, but the presumption evaporates as soon

as evidence of invalidity is presented.  15 U.S.C. §

1051.  Plaintiff owns the Bat Emblem mark, the Bat

Emblem (Batman Begins) mark, Bat Rep II mark, the

BATMAN word mark, and the BATMOBILE word mark in

various classes.  Defendant puts forth no evidence or

argument to demonstrate that these marks are invalid.

Defendant's only argument with respect to

Plaintiff's trademark infringement claim is that

Plaintiff did not own the BATMOBILE mark in Class 12

for "automobiles" at the time Plaintiff filed this

Action and that registration in Class 40 did not occur

until November 20, 2012.  However, under the Lanham

Act, to establish standing to sue for trademark

infringement, a plaintiff must show that he or she is

1    either (1) the owner of a federal mark registration,

2    (2) the owner of an unregistered mark, or (3) a

3    nonowner with a cognizable interest in the allegedly

4    infringed trademark.  <u>Halicki Films, LLC v. Sanderson</u>

5    <u>Sales & Mktg.</u>, 547 F.3d 1213, 1225-26 (9th Cir. 2008).

6    Plaintiff only needs to demonstrate that it is the

7    registered owner of a mark for any class of products,

8    even one that does not compete directly with

9    Defendant's products.  <u>Id.</u> at 1227.  "The question of

10   whether the products on which the allegedly infringing

11   mark appears are sufficiently related to goods sold by

12   the plaintiff such that the defendant's actions qualify

13   as infringement is, by contrast, a merits question."

14   <u>Id.</u>

15        Defendant does not dispute that he has used or uses

16   Plaintiff's trademarks.  In fact, Defendant does really

17   contest Plaintiff's trademark claim.  Defendant does

18   not dispute that he has manufactured and distributed

19   automobile parts and accessories featuring the

20   trademarks at issue.  Def.'s Stmt. of Genuine Issues

21   ("GIF") ¶ 51 [66].  For example, Defendant produced

22   vehicle floor mats with bat symbols on them.  Drey

23   Decl. Ex. H [55].  The vehicle doors of Defendant's

24   1966 Batmobile replicas also have bat symbols on them.

25   Joint Stipulation, Ex. 24 [45].[1]  The fire extinguisher

26

27        [1] The Parties filed a "Joint Stipulation" stating that the
     Parties stipulate to certain facts and evidence, including as to
28   the authenticity of certain exhibits [45].  For the purposes of
     the present motions, the Court grants the stipulation.

1   in the 1966 Batmobile replica also has a bat symbol on

2   it.  Id.  Defendant does not dispute that he does

3   business through a website called

4   batmobilereplicas.com.[2]  GIF ¶ 52.  He also does not

5   dispute that he uses these trademarks to promote his

6   business.  Id. ¶ 53.

7        Next, the Court finds that Defendant's unauthorized

8   use of Plaintiff's trademarks causes a likelihood of

9   confusion–that is, whether the similarity of the marks

10   is likely to confuse customers about the source of the

11   products.  Brookfield Commc'ns, Inc. v. W. Coast Entm't

12   Corp., 174 F.3d 1036, 1053 (9th Cir. 1999).

13        First, with respect to similarity of the marks,

14   "the greater the similarity between the two marks at

15   issue, the greater the likelihood of confusion."  Id.

16   at 1206.  In the similarity analysis: "(1) Marks should

17   be considered in their entirety and as they appear in

18   the marketplace; (2) Similarity is best adjudged by

19   appearance, sound, and meaning; and (3) Similarities

20   weigh more heavily than differences."  Entrepreneur

21   Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir.

22   2002).  "[S]imilarity of design is determined by

23   considering the overall impression created by the mark

24   as a whole rather than simply comparing individual

25   features."  adidas-Am., Inc. v. Payless Shoesource,

26   Inc., 546 F. Supp. 2d 1029, 1052 (D. Or. 2008) (citing

27   _____

28        [2] Use of a trademark in a domain name constitutes "use"
     under the Lanham Act.  Brookfield, 174 F.3d at 1053.

<u>Exxon Corp. v. Texas Motor Exch., Inc.</u>, 628 F.2d 500, 505 (5th Cir. 1980)).  There is no dispute that Defendant has used marks that are identical to Plaintiff's registered marks.  For example, Defendant has used the BATMAN and BATMOBILE word marks on his advertising and promotional materials.  <u>See</u>, <u>e.g.</u>, GIF ¶ 52.  Further, Defendant also has used various bat symbols that are very similar to the BAT Emblem, BAT Emblem (Batman Begins) and BAT REP II marks.  <u>See</u> Joint Stipulation, Ex. 24.  For example, the bat symbol appearing on the vehicle doors for the 1966 Batmobile replicas is a stylized bat.  Defendant's bat symbols are slightly different from Plaintiff's registered trademarks, but Defendant's marks appear substantially the same overall.

///
///

| Defendant's Marks | Plaintiff's Marks |
|---|---|
|  | Bat Emblem  |
|  | Bat Emblem (Batman Begins)  |
| | Bat Rep II  |

Thus, there is no genuine issue of fact regarding the similarity of the marks.

Second, the strength of the trademarks at issue here weigh in favor of finding a likelihood of confusion.  The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled. See Entrepreneur Media, 279 F.3d at 1141.  The more

15

1   unique the mark, the greater the degree of protection.

2   See id.  Trademarks may be sorted into five categories

3   of increased strength and distinctiveness: (1) generic;

4   (2) descriptive; (3) suggestive; (4) arbitrary; or (5)

5   fanciful.  Two Pesos, Inc., v. Taco Cabana, Inc., 505

6   U.S. 763, 768 (1992).  Fanciful marks, the strongest

7   type, are "wholly made-up terms," such as "Clorox"

8   bleach.  Brookfield, 174 F.3d at 1058 n.19.  "Fanciful"

9   marks consist of "coined phrases" that also have no

10  commonly known connection with the product at hand.

11  See Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d

12  1127, 1130 n.7 (9th Cir. 1998) (holding that "Kodak" is

13  a fanciful mark).  A mark is "strong" if it is

14  memorable and if the public would likely associate it

15  with the mark's owner.  Brookfield, 174 F.3d at 1058.

16  As the Ninth Circuit recently explained, "[t]he

17  stronger a mark — meaning the more likely it is to be

18  remembered and associated in the public mind with the

19  mark's owner — the greater the protection it is

20  accorded by the trademark laws."  Id. at 1058.

21      The marks at issue here include a series of design

22  marks featuring a bat as well as the word marks

23  BATMOBILE and BATMAN.  The bat design marks are

24  distinct.  The terms BATMOBILE and BATMAN are fanciful

25  words, as they are coined phrases that evoke the "bat"

26  persona of the Batman comic book character.  The public

27  would likely associate the marks with Plaintiff's

28  Batman comic books, merchandise, motion pictures, and

16

1  television programs.

2      Third, with regard to the issue of actual

3  confusion, the Ninth Circuit has recognized that

4  evidence of actual confusion is not required to

5  establish likelihood of confusion.  <u>See</u> <u>Am. Intern.</u>

6  <u>Grp., Inc. v. Am. Intern. Bank</u>, 926 F.2d 829 (9th Cir.

7  1991).  Nevertheless, Defendant admits here that "most"

8  of his potential customers asked if he had a

9  relationship with Warner Bros. or was licensed by

10 Warner Bros.  Drey Decl. Ex. H, at 94:21-95:14 (Towle

11 Dep.).  As revealed at the hearing on the present

12 motions, Warner Bros. is an affiliated entity.   This

13 evidence strongly suggests that there was actual

14 confusion, as customers wondered whether Defendant was

15 authorized to use Plaintiff's marks.  "Initial interest

16 confusion is customer confusion that creates initial

17 interest in a competitor's product.  Although dispelled

18 before an actual sale occurs, initial interest

19 confusion impermissibly capitalizes on the goodwill

20 associated with a mark and is therefore actionable

21 trademark infringement."  <u>Playboy Enters., Inc. v.</u>

22 <u>Netscape Commc'ns Corp.,</u> 354 F.3d 1020, 1025 (9th Cir.

23 2004).

24     Fourth, the proximity or relatedness of the goods

25 favors a finding of likelihood of confusion.  Goods are

26 proximate if they are "similar in use and function" and

27 "would be reasonably thought by the buying public to

28 come from the same source if sold under the same mark."

Sleekcraft, 599 F.2d at 348, 350.  "Where goods are related or complementary, the danger of consumer confusion is heightened."  E. & J. Gallo Winery, 967 F.2d at 1291.  The goods here are the same.  Defendant manufactures replicas of the 1989 and 1966 Batmobile vehicles, and emblazon car parts and accessories with the bat symbol.  Plaintiff offers full-size and toy versions of the Batmobile, using its registered trademarks.  Plaintiff also offers car accessories featuring their trademarks, including car mats and wheel covers.  Kogan Decl. Ex. A.  This factor weighs in favor of Plaintiff.

Fifth, the Court must next consider "whether the predominant purchasers of the parties' goods are similar or different, and whether the parties' marketing approaches resemble one another."  Aurora World, Inc. v. Ty, Inc., 719 F.Supp. 2d 1115, 1162 (citing Grey v. Meijer, Inc., 295 F.3d 641 (6th Cir. 2002)).  The greater the degree of overlap, the more likely there is to be confusion.  Sleekcraft, 599 F.2d at 353.  Here, Plaintiff and Defendant are in direct competition.  The undisputed facts show that they directly market their products online and at car shows. Kogan Decl., Exs. A, H.  As such, this factor favors a finding of likelihood of confusion.

Sixth, the Court needs to consider the type of goods and the degree of care likely to be exercised by the purchasers.  Likelihood of confusion is determined

on the basis of a "reasonably prudent consumer," so courts have expected consumers "to be more discerning — and less easily confused — when [they are] purchasing expensive items." <u>Brookfield</u>, 174 F.3d at 1060. "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." <u>Id</u>. Defendant's replica vehicles are expensive goods and the reasonably prudent consumer would likely be more discriminating and likely to ask questions regarding his product. Thus, this factor weighs against finding a likelihood of confusion.

Seventh, the defendant's intent in selecting the mark must also be evaluated in determining the likelihood of confusion. Knowing adoption of a mark that is closely similar to one that is used by another is a basis for inferring intent to deceive the public, which is "strong evidence of a likelihood of confusion." <u>See</u> <u>Official Airline Guides, Inc. v. Goss</u>, 6 F.3d 1385, 1394 (9th Cir. 1993). Here, Defendant admits his knowledge of the Batman property including the Batmobile vehicles and the trademarks, and he knowingly copied the marks. SUF ¶ 54. This permits an inference of an intent to deceive the public.

Lastly, the Court can look to the likelihood of expansion of the product lines. A strong possibility that either party will expand its business to compete with the other weighs in favor of finding infringement.

1  <u>Sleekcraft</u>, 599 F.2d at 354.  However, where, as here,
2  the Parties already compete to a significant degree
3  because they sell related products and use similar
4  marketing channels, this factor is relatively
5  unimportant to the likelihood of confusion analysis.
6  <u>See</u> <u>Brookfield</u>, 174 F.3d at 1055.  Neither Party has
7  submitted evidence of planned expansion, and Plaintiff
8  does not allege that Defendant's presence is hindering
9  its expansion plans.

10      Based on the foregoing, no triable issues of fact
11  exist as to whether Defendant's use of Plaintiff's
12  marks is likely to confuse United States consumers.
13  Furthermore, Defendant has not met his burden to set
14  forth facts showing that genuine issues of disputed
15  fact remain with regard to a finding of likelihood of
16  confusion.  <u>See</u> <u>PepsiCo, Inc.</u>, 27 U.S.P.Q. 2d 1948,
17  1950 (C.D. Cal. 1993).  In fact, the relevant
18  <u>Sleekcraft</u> factors support a finding of likelihood of
19  confusion as a matter of law.  In light of this finding
20  and the fact that there are no triable issues of fact
21  with regard to the validity of Plaintiff's marks, the
22  Court **GRANTS** Plaintiff's Motion for Partial Summary
23  Judgment as to Plaintiff's trademark infringement claim
24  and **DENIES** Defendant's Motion as to this claim.

25  **C.**   **<u>Unfair Competition</u>**

26      Whether Defendant's sale of replica Batmobile
27  vehicles is likely to confuse United States consumers
28  is also critical in determining whether the Court

1  should grant summary judgment on Plaintiff's claim for
2  common law unfair competition.  The element of
3  likelihood of confusion also applies to this claim.

4      Moreover, the courts have uniformly held that
5  common law and statutory trademark infringement are
6  merely specific aspects of unfair competition.  New
7  West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194,
8  1201 (9th Cir. 1979).  Under the Lanham Act, the
9  ultimate test is whether the public is likely to be
10 deceived or confused by the similarity of the marks.
11 Smith v. Chanel, Inc., 402 F.2d 562, 563 (9th Cir.
12 1968).  "Whether we call the violation infringement,
13 unfair competition or false designation of origin, the
14 test is identical – is there a 'likelihood of
15 confusion?'"  New West Corp., 595 F.2d at 1201.

16     The decisive test of common law unfair competition
17 is whether the public is likely to be deceived about
18 the source of goods or services by the defendant's
19 conduct.  Academy of Motion Picture Arts and Sci. v.
20 Benson, 15 Cal. 2d 685, 690 (1940); South Bay Chevrolet
21 v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861,
22 865 (1999).  The likelihood of public confusion,
23 although innocently created, will warrant injunctive
24 relief against unfair competition.  Tomlin v. Walt
25 Disney Prods., 18 Cal. App. 3d 226, 231 (1971).

26     Defendant has not demonstrated that there is a
27 triable issue of fact as to whether Defendant's use of
28 bat symbols and Plaintiff's trademarks is likely to

confuse customers.  As courts have uniformly held that
common law and statutory trademark infringement are
merely specific aspects of unfair competition, a
finding of likelihood of confusion under Plaintiff's
trademark infringement claim also supports a finding of
likelihood of confusion under Plaintiff's common law
unfair competition claim.  For the foregoing reasons,
the Court **GRANTS** Plaintiff's Motion for Partial Summary
Judgment as to its unfair competition claim and **DENIES**
Defendant's Motion as to this claim.

**D.   Copyright Infringement**

To establish copyright infringement, two elements
must be proven: 1) ownership of a valid copyright; and
2) copying of protected elements of the plaintiff's
work.  See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
499 U.S. 340, 361 (1991).

Copying may be established by showing that the
works in question are "substantially similar in their
protected elements" and that the infringing party had
access to the copyrighted work.  Metcalf v. Bochco, 294
F.3d 1069, 1072 (9th Cir. 2002).

A plaintiff satisfies the access element by showing
that a defendant had "an opportunity to view or to copy
plaintiff's work."  Three Boys Music Corp. v. Bolton,
212 F.3d 477, 482 (2000) (citing Sid and Marty Krofft
Television Prods., Inc. v. McDonald's Corp., 562 F.2d
1157, 1172 (9th Cir. 1977)).  Where a high degree of
access is shown, a lower standard of proof of

1  substantial similarity is required.  Switsky v. Carey,
2  376 F.3d 841, 844 (9th. Cir. 2004).  This is known as
3  the "inverse ratio rule".  Shaw v. Lindheim, 919 F.2d
4  1353, 1356 (9th Cir. 1990).

5      In analyzing whether the two works are
6  substantially similar, the court must first distinguish
7  between the protectable and unprotectable material
8  because a party claiming infringement may place no
9  reliance upon any similarity in expression resulting
10 from unprotected elements.  Apple v. Microsoft, 35 F.3d
11 1435, 1446 (9th Cir. 1994) (quotation omitted).  Then,
12 a two-part test is used to determine whether the two
13 works are substantially similar: an "intrinsic" and
14 "extrinsic" part.  As it evolved, the test was
15 clarified by the Court in Apple Computer v. Microsoft
16 Corp.:

17     [T]he extrinsic test now objectively considers
18         whether there are substantial similarities in both
19         ideas and expression, whereas the intrinsic test
20         continues to measure expression subjectively.
21 35 F.3d 1435, 1442 (9th Cir. 1994).  "The intrinsic
22 test . . . should measure substantial similarity in
23 expressions . . . depending on the response of the
24 ordinary reasonable person. . . . [I]t does not depend
25 on the type of external criteria and analysis which
26 marks the extrinsic test."  Shaw, 919 F.2d at 1356
27 (internal quotations omitted).  In decisions under the
28 intrinsic test, "analytic dissection and expert

testimony are not appropriate." Id. "Once the extrinsic test is satisfied, the fact finder applies the intrinsic test." Three Boys Music Corp., 212 F.3d at 485.

Defendant disputes that Plaintiff has established that it owns valid copyrights to the 1966 and 1989 Batmobile vehicles and that the Batmobiles are copyrightable under the Copyright Act.  Otherwise, Defendant does not deny that he has produced replicas of the 1966 and 1989 Batmobile.

As a preliminary matter, the Court addresses Defendant's argument that Plaintiff should not be able to allege infringement of the 1966 and 1989 Batmobile vehicles because the copyright registrations for the 1966 *Batman* television show and 1989 *Batman* film were not identified in the First Amended Complaint. Defendant also claims that Plaintiff should be sanctioned under Federal Rule of Civil Procedure 11 for this alleged litigation misconduct.  The Court finds that these arguments wholly lack merit.  The body of the First Amended Complaint identifies the 1966 and 1989 Batmobile vehicles, the television series, and the 1989 movie.  FAC ¶¶ 8, 9, 11.  The FAC states that the Batmobile is copyrightable subject matter.  Moreover, Plaintiff does not claim in the FAC that Plaintiff owns the copyright registration to the 1989 film or the 1966 television series.  Plaintiff does not state that Exhibit A represented the only copyrights in issue in

1  this Action.  Exhibit A is there to show that Plaintiff
2  is the owner of all the Batman literary property
3  because of its ownership of the copyrights listed in
4  Exhibit A.

5      Furthermore, any surprise that Defendant is
6  claiming based on Plaintiff's alleged failure to
7  identify the copyright registrations for the 1989 film
8  and the 1966 television series is disingenuous.  As
9  Plaintiff points out, Defendant himself requested
10 judicial notice of these registrations in his Motion to
11 Dismiss [15], and thus knew that Plaintiff's copyright
12 action involves these registrations.

13     **1.  Plaintiff Reserved Rights to the 1966 and 1989**
14        **Batmobiles**

15     "Under copyright law, only copyright owners and
16 exclusive licensees of copyright may enforce a
17 copyright or a license." Sybersound Records, Inc. v.
18 UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (citing
19 17 U.S.C. § 501(b)) (conferring standing only to the
20 "legal or beneficial owner of an exclusive right who is
21 entitled . . . to institute an action for any
22 infringement . . . while he or she is the owner of
23 it.")(internal quotation marks omitted).

24     Defendant's main argument is that Plaintiff does
25 not own the copyright registrations to the 1966 *Batman*
26 television show and the 1989 *Batman* film.  Therefore,
27 according to Defendant, Plaintiff does own any interest
28 in the 1966 and 1989 Batmobile vehicles.  It is true

1    that Greenway and Fox are the owners of the copyright
2    registrations to the episodes of the 1966 *Batman*
3    television series.  SUF ¶ 16.  Warner Bros. owns the
4    copyright registration to the 1989 film.  Id. ¶ 28.
5    However, the relevant licensing agreements between
6    Plaintiff and its licensees indicate that Plaintiff
7    reserved all rights to the characters and elements
8    depicted in the *Batman* television series and the 1989
9    *Batman* film, and obtained exclusive merchandising
10   rights to the 1966 and 1989 works.[3]  These exclusive
11   rights are sufficient to afford Plaintiff standing.

12       In 1965, Plaintiff's predecessor, National
13   Periodical, entered into a licensing agreement with ABC
14   granting ABC rights to use the Batman literary property
15   to develop the *Batman* television show, including rights
16   to "adapt, arrange, change, transpose, add to and
17   subtract from said property" and "to secure copyright
18   and renewals and extensions of copyright".  Joint
19   Stipulation, Ex. 13, at 2-3.  In the agreement,
20   Plaintiff reserves all "merchandising" rights, defined
21   as the

22       sole and exclusive right to produce and sell,
23       license or grant to others the right to produce and

24   _____

25       [3] Plaintiff failed to provide any substantive briefing on
26   its copyright interest in the Batmobile.  Instead it resorted to
     conclusory assertions that it owns rights to the 1966 and 1988
27   Batmobile vehicles.  Although the relevant agreements make clear
     that Plaintiff retained exclusive rights to the Batmobile
28   literary property, Plaintiff was still required to brief the
     Court on this issue.

sell or license or to enter into agreements with
respect to the production, distribution and
exploitation of endorsements, commercial tie-ups or
manufacturing privileges under which a commodity,
product or service is made, manufactured, or
distributed under the name of "Batman" or any other
character in the comic book series entitled
"Batman", or under a name which incorporates any
phrase, clause or expression used . . . in the
television series. . . .

Id. at 12-13, ¶ 6(A).  Paragraph 6(C) of the licensing
agreement provides that National Periodical would pay
ABC a share of the income derived from the exploitation
of this exclusive merchandising right.  Thus, the
license agreement clearly entitles Plaintiff an
exclusive right to sell, distribute, and manufacture
products derived from the elements that appeared in the
*Batman* television show, including the Batmobile.  The
Court's objective in the construction of the language
used in the contract is to determine and effectuate the
intention of the parties.  Winet v. Price, 4 Cal. App.
4th 1159, 1166 (1992).  If contractual language is
clear and explicit, it governs.  Bank of the West v.
Superior Court, 2 Cal. 4th 1254, 1264 (1992).

This interpretation of the license agreement is
consistent with a 1966 agreement involving National
Periodical, Fox, Greenway, and George Barris, the
designer of the 1966 Batmobile.  In the agreement,

Plaintiff specifically reserved rights in the design of the Batmobile:

WHEREAS, NATIONAL PERIODICAL PUBLICATIONS, INC. is the owner of all copyrights, trademarks and all other rights including commercial and exploitive rights to the feature, BATMAN, and to all the contents of the said feature, including the Batmobile

. . .

Notwithstanding anything to the contrary herein contained, NATIONAL PERIODICAL (Plaintiff's predecessor in interest) acknowledges that BARRIS is the owner of the vehicle known as Batmobile I as used in the BATMAN television series and feature motion picture and that BARRIS, FOX and GREENWAY are the joint owners of the design of said Batmobile I as provided for in Article 7 of that certain agreement between FOX and Greenway, and BARRIS, dated September 1, 1965, as follows: 7. Any and all right, title and interest in and to the design of Batmobile I resulting from the application of the required Batmobile features in and to Owner's prototype Lincoln chassis, save and except the name "Batmobile" and the Batmobile features set forth in Article 10 hereof and in the drawings and exhibits attached hereto, and of the completed Batmobile provided for in Article 2 hereof, shall forever be vested in and Owned

> jointly by Owner and Producer, **subject only to any and all right, title and interest of National Periodical Publications, Inc. . . . in and to said Batmobile features in said design.**

Joint Stipulation, Ex. 15 (emphasis added). The unambiguous terms of the contract indicate that Plaintiff reserved rights to the 1966 Batmobile.

Plaintiff also reserved rights to the Batmobile depicted in the 1989 motion picture. In 1979, Plaintiff entered into a licensing agreement with Batman Productions, Inc., who later transferred its rights to Warner Bros., granting Batman Productions option rights to create a motion picture using the Batman literary property. Joint Stipulation, Ex. 16, Art. I, ¶ 1. The contract states that Plaintiff reserved all "merchandising rights" with respect to the new characters, additional characters, new elements, and additional elements, of any motion picture produced via the agreement. Id. at Article II, ¶ 5(c). Under the agreement "additional characters" is defined as

> any fictional character or characters newly created by [Batman Productions] and which, but for the operation of this agreement, would constitute an infringement of DC's copyright or trademark in or to any of the characters constituting the Property. . . or any characters contained in the Property who are newly costumed or in any way altered by [Batman Productions] for any motion pictures.

Id. at Art. II, ¶ 11.  "Additional elements" is defined as "any device or thing newly created by [Batman Productions] and which, but for the operation of this agreement, would constitute an infringement of DC's copyright or trademark in or to any device or thing contained in the Property."  Id.  The licensing agreement explicitly defined the Batmobile as being part of the "Property" licensed to Batman Productions. Id. at Art. I, ¶ 4(b).  Not only did Plaintiff reserve these exclusive merchandising rights, Plaintiff also reserved rights to copyright and trademark any additional characters or elements featured in future Batman motion pictures.  Id. at Art. II, ¶¶ 5(c), 11.

Based on these agreements reserving exclusive ownership rights to the 1989 and 1966 Batmobiles, Plaintiff has standing to assert this copyright infringement action.  See Halicki Films LLC, v. Sanderson Sales and Mktg. et al., 547 F.3d 1213, 1220 (9th Cir. 2008) (Plaintiff's reservation of merchandising rights provides standing in copyright infringement action).

**2.  Defendant's Replica Batmobiles Are Unauthorized Derivative Works**

Even if Plaintiff did not expressly reserve rights to the Batman and Batmobile elements appearing in the *Batman* movie and television show, Plaintiff is also entitled to sue for infringement because it clearly owns copyrights to the original comic book series in

which the Batmobile originally appeared.  As the copyright holder to the Batman comic books, Plaintiff has the exclusive right to prepare derivative works. 17 U.S.C. § 103(a) ("The subject matter of a copyright . . . includes compilations and derivative works. . . ."). "[T]he protection of derivative rights extends beyond mere protection against unauthorized copying to include the right to 'make other versions of, perform, or exhibit the work.'" Lone Ranger Television v. Program Radio Corp., 740 F.2d 718, 722 (9th Cir. 1984)(quoting Russell v. Price, 612 F.2d 1123, 1128 n.16 (9th Cir. 1979)).  The owner of the underlying work has standing to assert copyright infringement of the derivative work, even when the defendant copies only from the derivative work.  1-3 Nimmer on Copyright § 3.05.

"[A] work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work." Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984).

The Defendant's replica Batmobile vehicles are derivative works of the original Batmobile vehicles. Here, the copyright registration for the 1989 film explicitly states that it is the derivative work of the Batman comic book series and the Batman television series.  Joint Stipulation, Ex. 3.  The Batmobile

31

vehicle in the 1989 film is derivative of the Batmobile
character that appeared in the comic book series, even
though the exact design of the 1989 Batmobile is not
identical to the original Batmobile vehicles.  The 1989
Batmobile is merely an adaptation or a recasting of the
original Batmobile vehicles.  Defendant's copying of
the 1989 Batmobile vehicle thus copies from both the
derivative 1989 *Batman* film and the Batmobile from the
original comic books.

The 1966 television series, which copies many
elements from the original comic books series including
Batman, Robin, and the Batmobile, is a derivative work
of the Batman comic book series.  The agreement between
Plaintiff and ABC requires that ABC give credit to
Plaintiff as the originator of the ideas and
expressions in the TV show.  Joint Stipulation, Ex. 13.
As with the 1989 film, the Batmobile in the 1966
television show incorporates elements from the
Batmobiles in the comic book series and is merely an
adaptation of Batmobile character that appeared in the
comic books.  Defendant's copying of the 1966 Batmobile
vehicle copies from both the derivative *Batman*
television show and the Batmobile from the original
comic books.

Accordingly, Plaintiff has standing to assert
copyright infringement.

///

1    **3.    The Batmobile Is Entitled To Copyright**

2    **Protection as a Character**

3        Defendant's Opposition focuses on denying that the

4    Batmobile is entitled to any copyright protection.  For

5    the reasons discussed below, the Court finds that the

6    Batmobile is entitled to copyright protection as a

7    character.

8        "Whether a particular work is subject to copyright

9    protection is a mixed question of fact and law . . . ."

10   Societe Civile Succession v. Renoir, 549 F.3d 1182,

11   1185 (9th Cir. 2008) (quoting Cavalier v. Random House,

12   Inc., 297 F.3d 815, 822 (9th Cir. 2002)).  The owner of

13   a copyright in various works embodying a character can

14   acquire copyright protection for the character itself.

15   See, e.g., Warner Bros. Inc. v. Am. Broad. Co. Inc.,

16   720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the

17   copyrights in various works embodying the character

18   Superman and have thereby acquired copyright protection

19   for the character itself.") (citation omitted); New

20   Line Cinema Corp. v. Bertlesman Music Group, Inc., 693

21   F.Supp. 1517, 1521 n. 5 (S.D.N.Y. 1988) ("Because New

22   Line has valid copyrights in the Nightmare series, it

23   is clear that it has acquired copyright protection as

24   well for the character of Freddy.") (citing Warner

25   Bros., 720 F.2d at 235).

26       The Ninth Circuit has explained that "copyright

27   protection may be afforded to characters visually

28   depicted in a television series or in a movie."  Olson

33

v. Nat'l Broad. Co., 855 F.2d 1446, 1452 (9th Cir. 1988) (internal citations omitted).  However, it is unclear what legal standard courts should apply in determining whether visually depicted characters are subject to copyright protection.  See Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc., 900 F. Supp. 1287, 1295 (C.D. Cal. 1995); Anderson v. Stallone, No. 87-0592 WDKGx, 1989 WL 206431, at *6 (C.D. Cal. 1989).

The first case to suggest a test for whether or not characters can be copyrighted, Warner Bros. Pictures, Inc. v. Columbia Broadcasting System, Inc., 216 F.2d 945 (9th Cir. 1954), stated that literary characters are entitled to copyright protection if the character constitutes "the story being told"; however, if the character is "only the chessman in the game of telling the story" he is not entitled to copyright protection. Id.

Subsequent cases appeared to cast doubt on this test.  In particular, in Walt Disney Productions. v. Air Pirates, 581 F.2d 751, 755 (9th Cir. 1978), which involved a claim for copyright infringement of Walt Disney's cartoon characters based on the defendant's copying of the characters from Disney's comic books, the Court stated that "while many literary characters may embody little more than an unprotected idea, a comic book character, which has physical as well as conceptual qualities, is more likely to contain some

34

unique elements of expression." Id. (internal
citations omitted).  The court ultimately concluded
that "[b]ecause comic book characters . . . are
distinguishable from literary characters, the Warner
Brothers language does not preclude protection of
Disney's characters." Id.

The next Ninth Circuit case to address the issue,
Rice v. Fox Broadcasting Co., 330 F.3d 1170 (9th Cir.
2003), articulated another standard known as the
character delineation test.  The Ninth Circuit
explained that "characters that are 'especially
distinctive' **or** 'the story being told' receive
protection apart from the copyrighted work." Rice v.
Fox Broad. Co., 330 F.3d 1170, 1175 (9th Cir. 2003)
(citing Olson, 855 F.2d at 1452; Metro-Goldwyn-Mayer,
Inc., 900 F. Supp. at 1295-96))(emphasis added).  As to
the "especially distinctive" standard for
copyrightability, the court noted that "[c]haracters
that have received copyright protection have displayed
consistent, widely identifiable traits." Id. (citing
Toho Co. v. William Morrow & Co., 33 F. Supp. 2d 1206,
1215 (C.D. Cal. 1998) (Godzilla); Metro-Goldwyn-Mayer,
Inc., 900 F. Supp. at 1297 (James Bond); Anderson, 1989
WL 206431, at *7 (Rocky Balboa)).

The character delineation standard was applied in a
recent opinion, where the Ninth Circuit stated that
cartoon characters have "physical as well as conceptual
qualities, [and are] more likely to contain some unique

elements of expression." <u>Halicki</u>, 547 F.3d at 1223 (citing <u>Air Pirates</u>, 581 F.2d at 755.)  <u>Halicki</u> did not clarify whether the "story being told" or the character delineation test as articulated in <u>Air Pirates</u> and <u>Rice</u> is the applicable test.  However, the opinion suggests that a character is subject to copyright protection in the Ninth Circuit if it satisfies **either** of the two recognized standards.

In <u>Halicki</u>, the Ninth Circuit reviewed, but did not resolve, whether or not the character "Eleanor," a car that appeared as a 1971 Fastback Ford Mustang in the 1974 film, *Gone in 60 Seconds*, was entitled to copyright protection.  547 F.3d at 1217-18.  In 2000, Walt Disney Productions released a remake of *Gone in 60 Seconds* that featured the "Eleanor" vehicle, but this time the vehicle was a 1967 Shelby GT-500.  <u>Id.</u>  The Ninth Circuit in <u>Halicki</u> noted that the "Eleanor character can be seen as more akin to a comic book character than a literary character."  <u>Id.</u> at 1225.  Moreover, Eleanor displays "consistent, widely identifiable traits" because in both films, the characters in the movie have difficulty stealing the Eleanor car.  <u>Id.</u> at 1225.  The Ninth Circuit remanded to the district court to determine whether Eleanor's physical and conceptual qualities, and unique elements of expression qualify Eleanor for copyright protection. <u>Id.</u> at 1225.

Here, the Court finds that there is no genuine

36

issue of material fact as to whether the Batmobile is "sufficiently delineated" to constitute a character entitled to copyright protection. Defendant repeatedly argues that the Batmobile is not a character because it is a car. This argument lacks merit as the central question in <u>Halicki</u> is not whether the "character" is an object, but rather whether the character conveys a set of distinct characteristics.[4] Plaintiff's briefing on this issue is conclusory and superficial, but it is clear based on the undisputed facts that the Batmobile is a copyrightable character.

It is undeniable that the Batmobile is a world-famous conveyance in the Batman franchise, exhibiting a series of readily identifiable and distinguishing traits. The Batmobile is known by one consistent name that identifies it as Batman's personal vehicle. It

---

[4] Defendant's focus on whether the Batmobile is an inanimate object is also misplaced in light of the fact that at least one other court has afforded copyright protection to an inanimate object belonging to a specific movie character. In <u>New Line Cinema Corp. v. Russ Berrie & Co.,</u> 161 F.Supp. 2d 293 (S.D.N.Y. 2001), the court found that an inanimate object associated with a fictional character was entitled to copyright protection. In <u>New Line Cinema</u>, a toy distributor sold a toy glove that looked like the glove worn by Freddy Kreuger of the *Nightmare on Elm Street* motion pictures. <u>New Line Cinema Corp.</u>, 161 F. Supp. 2d at 294. The court held that the glove was entitled to copyright protection based on New Line's copyright protection in the Freddy Krueger character because "[c]opyright protection is extended to the component part of the character which significantly aids in identifying the character." <u>Id.</u> at 302 (citing <u>New Line Cinema Corp. v. Easter Unlimited, Inc.,</u> 17 U.S.P.Q.2d 1631, 1633 (E.D.N.Y. 1989); <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,</u> 604 F.2d 200, 204 (2d Cir. 1979)).

also displays consistent physical traits.  The Batmobile, in its various incarnations, is a highly-interactive vehicle, equipped with high-tech gadgets and weaponry used to aid Batman in fighting crime. Even though the Batmobile is not identical in every comic book, film, or television show, it is still widely recognizable because it often contains bat-like motifs, such as a bat-faced grill or bat-shaped tailfins in the rear of the car, and it is almost always jet black.  See, e.g., Joint Stipulation, Ex. 25, at 500.  The 1989 and 1966 Batmobile iterations also display these physical qualities.  In fact, the particular design of the Batmobile often reflects the car models of the time – for example, the Batmobile from the comic book *Batman No. 5*, which was released in 1941, has the shape of a 1940s Ford automobile, but contains a "bat" hood ornament and tailfins resembling a bat's wings.  Regardless of the evolving design of the Batmobile, it retains distinctive characteristics.

Other than its physical features, the Batmobile is depicted as being swift, cunning, strong and elusive. For example, in the comic book *Batman #5*, the Batmobile "leaps away and tears up the street like a cyclone." Joint Stip., Ex. 2, at 75.  In the same comic book, the Batmobile is analogized to an "impatient steed straining at the reigns," shivering "as its super-charged motor throbs with energy . . . and an instant later it tears after the fleeing hoodlums."  Id. at 76.

The Batmobile participates in various chases and is deployed to combat Batman's enemies.  The comic books portray the Batmobile as a superhero.  The Batmobile is central to Batman's ability to fight crime and appears as Batman's sidekick, if not an extension of Batman's own persona.

This case is analogous to Toho Co., Ltd. v. William Morrow and Co., Inc., 33 F.Supp. 2d 1206, 1215 (C.D. Cal. 1998), which involved the "Godzilla" character, a giant lizard featured in action films.  Although Godzilla assumed many shapes and personalities in the various *Godzilla* films, the Court found that "Godzilla has developed a constant set of traits that distinguish him/her/it from other fictional characters," meriting it copyright protection.  Id.

For the foregoing reasons, the Court finds that the Batmobile is a character entitled to copyright protection.

As further discussed below, Defendant does not deny that he has copied the Batmobile vehicles.  Defendant's copying of the two-dimensional Batmobile character, which appeared in the 1989 film, the 1966 television series, and the comic books, into three-dimensional forms is copyright infringement.  "It is, of course, fundamental that copyright in a work protects against unauthorized copying, not only in the original medium in which the work was produced, but also in any other medium as well."  1-2 Nimmer on Copyright § 2.08

1   (2008).  "[M]aking decisions that enable one to
2   reproduce or transform an already existing work into
3   another medium or dimension – though perhaps quite
4   difficult and intricate decisions – is not enough to
5   constitute the contribution of something 'recognizably
6   his own.'"   Entm't Research Grp., Inc. v. Genesis
7   Creative Grp., Inc., 122 F.3d 1211, 1218 (9th Cir.
8   1997) (citing Nimmer § 2.08); see also Twentieth
9   Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327,
10  1329 n.4 (9th Cir. 1983) ("Where defendant's work is
11  adapted for us in a medium different than that of
12  plaintiff's, the test for infringement is the same.");
13  Universal Studios, Inc. v. J.A.R. Sales, Inc., 216
14  U.S.P.Q. 679, 681, 683 (C.D. Cal. 1982) ("Protection
15  extends to expressions of that character [E.T.] not
16  only in motion pictures, but in other media as well,
17  including three-dimensional expressions such as dolls
18  and other forms of sculpture. . . . The defendants'
19  molded plastic doll is substantially similar to the
20  physical expression of the motion picture character
21  'E.T.' in that the defendants' doll replicates [E.T.'s]
22  oddly-shaped head and facial features, squat torso,
23  long thin arms, and hunched-over posture. . . . The
24  defendant's molded-plastic doll and the motion picture
25  character E.T. also portray the same mood of
26  lovableness.").  Therefore, Defendant's manufacturing
27  of an unauthorized three-dimensional copy of a two-
28  dimensional comic book character, the Batmobile, still

constitutes copyright infringement.

**4.   The Batmobile Is A Work of Pictorial, Graphic, and Sculptural Art Entitled to Copyright Protection**

Alternatively, the Court also finds that the Batmobile is a "pictorial, graphic, and sculptural work" entitled to copyright protection under 17 U.S.C. § 102.  Section 101 of the Copyright Act provides that

> Pictorial, graphic, and sculptural works include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans.  Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101.

Courts have traditionally accorded copyright protection to pictorial, graphic, and sculptural works incorporated within a useful article, such as a carving

on the back of a chair or an engraving in a glass vase.
_Leicester v. Warner Bros._, 232 F.3d 1212, 1219 (9th
Cir. 2000) (citing William F. Patry, 1 Copyright Law
and Practice 274-76 (1994)).  Only works that "can be
identified separately from, and are capable of existing
independently of, the utilitarian aspects of the
[useful] article" qualify for copyright protection.
_Id._  This is what is known as "separability."  _Id._

    Courts have recognized two types of separability:
physical separability, and conceptual separability.
_Id._  "Physical separability means that a 'pictorial,
graphic or sculptural feature incorporated into the
design of a useful article . . . can be physically
separated from the article without impairing the
article's utility and if, once separated, it can stand
alone as a work of art traditionally conceived.'" _Id._
On the other hand, conceptual separability means that a
pictorial, graphic or sculptural feature "can stand on
its own as a work of art traditionally conceived, and .
. . the useful article in which it is embodied would be
equally useful without it."  _Id._

    With respect to automobiles, the House Report for
the Copyright Act suggests that the statute was not
meant to protect merely the aesthetically pleasing
features of industrial objects:

        [A]lthough the shape of an industrial product may
        be aesthetically satisfying and valuable, the
        Committee's intention is not to offer it copyright

protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill.  The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design – that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any,  which can be identified separately from the useful article as such are copyrightable.

H.R. No. 1476, 94th Cong., 2d Sess. 55 (1976).

Defendant repeatedly argues that the Batmobile is only a car and that the design of a car is not protectable under copyright law, citing to the House Report.  However, as explained above, the Batmobile is a character and exists in both two- and three-dimensional forms.  Its existence in three-dimensional form is the consequence of the Batmobile's portrayal in the 1989 live-motion film and 1966 television series. Defendant did not copy the design of a mere car; he copied the Batmobile character.  The fact that the unauthorized Batmobile replicas that Defendant manufactured – which are derivative works – may be

"useful articles" is irrelevant.  A derivative work can still infringe the underlying copyrighted work even if the derivative work is not independently entitled to copyright protection.  <u>Lewis v. Gallob Toys, Inc. v. Nintendo of Am., Inc.</u>, 964 F.2d 965, 968 (9th Cir. 1992) ("A derivative work must be fixed to be protected under the Act, but not to infringe.") (citing 17 U.S.C. § 102)); <u>Lone Ranger Television, Inc.</u>, 740 F.2d at 722-23 ("It makes no difference that the derivation may not satisfy certain requirements for statutory copyright registration itself."); <u>Entm't Research Grp., Inc.</u>, 122 F.3d at 1218 (three-dimensional inflatable costumes based on copyrighted cartoon characters were not copyrightable).

Nevertheless, the Batmobile in its three-dimensional form as it appeared in the 1989 and 1966 works is still copyrightable under Section 102.  The difficulty with this case is in determining whether or not the Batmobile is an "automobile" and thus a "useful article" that is not entitled to copyright protection except for the conceptually separable elements, or something else entirely.  In all of the fictional works, the Batmobile is deployed as Batman's mode of transportation.  However, the Batmobile is entirely distinguishable from an ordinary automobile.  The Batmobile is a fictional character tied to the fictional Batman character.  The Batmobile is a crime fighting weapon and used to display the Batman persona.

The Batmobile, and the so-called functional elements associated with it, is not a useful object in the real world, and incorporates fantasy elements that do not appear on real-world vehicles. The "functional elements" – e.g., the fictional torpedo launchers, the Bat-scope, and anti-fire systems – are only "functional" to the extent that they helped Batman fight crime in the fictional Batman television series and movies. Thus, the Batmobile's usefulness is a construct. Additionally, Defendant's argument that Batman is merely a car wholly fails to capture the creativity and fantastical elements that stand apart from the fact that the Batmobile also happens to look like a car.

Nonetheless, the *design elements* of the two Batmobiles at issue here are conceptually separable from their underlying car. In particular, the 1989 Batmobile's entire frame, consisting of the rear exaggerated, sculpted bat-fin and the mandibular front, is an artistic feature that can stand on its own without the underlying vehicle. The underlying vehicle would still be a car without the exaggerated bat features. Further, the Batmobile's wheels each contain a hubcap containing a bat sculpted from metal, which can literally stand on its own without the underlying wheel.

Similarly, the 1966 Batmobile contains features that are conceptually separable from the underlying

45

vehicle.  For example, the doors have imprinted upon them red bat logos.  The car is painted in a distinct black and red color scheme, where the outline of the car is red.  See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) (the color pattern of useful article entitled to copyright protection).  The wheels have hubcaps containing a bat sculpted from metal.  The rear of the vehicle is scalloped and intended to look like bat wings.  These elements are conceptually separable from the car itself.  Further, the interior of the Batmobile contains original features such as the "Bat Scope" and the "Bat Ray" that are subject to copyright protection, as are the names for these features.  See 17 U.S.C. § 102 (literary elements are protected under copyright).  The interior of the car also has bat-shaped phone.  In this instance, while the phone itself is a utilitarian feature, the shape of the phone does not itself have a function and merely displays the figure of a bat.

As such, all of the features that distinguish the Batmobile from any other car – the fantastical elements that feature bat design, such as the bat tailfin and the various gadgetry that identify the vehicle as the Batmobile – are protectable elements.

Defendant's argument that extending copyright protection to the Batmobile will open the door for the copyrighting of other automobiles.  However, the Batmobile is *sui generis*.  The unique elements that

Plaintiff seeks to protect make the Batmobile the famous vehicle that it is.  Thus, the Court finds that the Batmobile is subject to copyright protection.

   **5.   Defendant Has Copied the 1989 and 1966 Batmobiles**

   Defendant does not deny that he has reproduced and distributed replicas of the 1966 and 1989 Batmobiles. The only argument that he makes is that he does not include some features in his replicas that were in the original Batmobiles.  However, when comparing the replica cars with the Batmobile vehicles that appeared in the television film and movie, his 1966 and 1989 Batmobile replicas appear substantially the same as the original Batmobiles.  In particular, his replicas for the 1989 Batmobile contain the same exaggerated bat fin, mandibular front, and hubcaps containing the bat symbol.  Defendant's replicas of the 1966 Batmobile also has the same color scheme, the same bat tail, and the same bat symbol on the doors and wheels.  The interior of the 1966 Batmobile contains labels for many of the features that appeared in the original 1966 Batmobile, including the Bat-Ray and Bat-Scope.

   Further, Defendant does not dispute that he had access to the two 1966 and 1989 Batmobiles.  Thus, there is no genuine dispute of fact as to whether or not Defendant's activities constitute "copying" under the requirements for copyright infringement.

   For the foregoing reasons, the Court **GRANTS**

1  Plaintiff's Motion for Partial Summary Judgment as to

2  copyright infringement and **DENIES** Defendant's Motion.

3  **E. Defendant's Laches Defense**

4       Defendant has asserted laches as a defense to

5  Plaintiff's trademark and copyright claims.  Laches

6  requires a showing that (1) Plaintiff's delay in filing

7  suit was unreasonable, and (2) Defendant would suffer

8  prejudice caused by the delay if the suit were to

9  continue.  Jarrow Formulas, Inc. v. Nutrition Now,

10 Inc., 304 F.3d 829, 838 (9th Cir. 2002).  Defendant

11 bears the burden of demonstrating laches.  Id.  A party

12 asserting laches must show that it suffered prejudice

13 as a result of the plaintiff's unreasonable delay in

14 filing suit.  Id.  However, the defense of laches is

15 barred where defendants purposefully committed the

16 infringing conduct.  Evergreen Safety Council v. RSA

17 Network, Inc., 697 F.3d 1221, 1228 (9th Cir. 2012).

18 This good-faith component of the laches doctrine is

19 part of the fundamental principle that "he who comes

20 into equity must come with clean hands."  Danjaq LLC v.

21 Sony Corp., 263 F.3d 942, 956 (9th Cir. 2001) (citing

22 Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219

23 F.3d 104, 107 (2d Cir. 2000)).

24      The limitations period for laches starts "from the

25 time the plaintiff knew or should have known about its

26 potential cause of action."  Tillamook Cnty. Smoker,

27 Inc. v. Tillamook Cnty. Creamery Assoc., 465 F.3d 1102

28 (9th Cir. 2006).  "While laches and the statute of

1  limitations are distinct defenses, a laches

2  determination is made with reference to the limitations

3  period for the analogous action at law.  If the

4  plaintiff filed suit within the analogous limitations

5  period, the strong presumption is that laches is

6  inapplicable." Jarrow Formulas, Inc., 304 F.3d at

7  835-36.  If suit is filed outside of the analogous

8  limitations period, courts often have presumed that

9  laches is applicable.  Id.

10      As to Plaintiff's trademark infringement claim, the

11  Lanham Act contains no explicit statute of limitations.

12  Id. at 836.  When a federal statute lacks a specific

13  statute of limitations, courts may borrow the

14  limitations period from the most closely analogous

15  action under state law.  Id.  As trademark infringement

16  is a "continuing" wrong, the statute of limitations

17  bars only monetary relief for the period outside the

18  statute of limitations.  Id.  However, Plaintiff is

19  free to pursue monetary and equitable relief for the

20  time within the limitations period.  Id.  The

21  presumption of laches is triggered if any part of the

22  claimed wrongful conduct occurred beyond the

23  limitations period.  Id.

24      The most closely analogous state-law limitations

25  period for Plaintiff's claims under the Lanham Act are

26  the four-year periods for state trademark infringement

27  and unfair competition claims, set forth under Cal.

28  Code Civ. Proc. § 343 and Cal. Bus. & Prof. Code §

1  17208.   Internet Specialties W., Inc. v.

2  Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 999 (9th

3  Cir. 2009).   The statute of limitations for copyright

4  claims in civil cases is three years.   Petrella v.

5  Metro-Goldwyn-Mayer, Inc., 695 F.3d 946, 951 (9th Cir.

6  2012).

7       The Court finds that there is a genuine dispute of

8  fact with respect to when Plaintiff knew or had reason

9  to know about the infringement of their copyrights and

10  trademarks.   Defendant presents evidence showing that

11  an attorney from Warner Bros. called him in 2003,

12  during which the attorney revealed that she saw a

13  photograph of his garage over the Internet.   The garage

14  contained a number of 1966 Batmobile replicas and a

15  shell for a 1989 Batmobile replica.   Although Warner

16  Bros. is not a party in this Action, the Parties stated

17  at the hearing that Warner Bros. is an affiliate of

18  Plaintiff.   The Parties also indicated at the hearing

19  that Warner Bros. enforces Plaintiff's intellectual

20  property.   A reasonable fact finder could find that

21  this shows that Plaintiff could have become aware of

22  Defendant's activities in 2003.   Further, Plaintiff's

23  Vice President and Deputy Counsel for Intellectual

24  Property testified that Plaintiff was aware that

25  Defendant was manufacturing the Batboat sometime before

26  2006.   A reasonable fact-finder could conclude that

27  Plaintiff should have been aware of Defendant's

28  infringing activities as early as 2003.   This Action

1  was filed in 2011.  On summary judgment, the Court

2  construes the evidence in favor of the non-moving

3  party.  As the alleged wrongful acts might have

4  occurred outside the three- and four-year statute of

5  limitations period, laches is presumed.

6      Further, assuming there was delay on the part of

7  Plaintiff, it is unclear whether this delay was

8  reasonable.  Specifically, the Parties presented

9  conflicting evidence as to whether or not Plaintiff was

10 diligent in enforcing its copyrights and trademarks.

11 Defendant admitted that he received a few take-down

12 notices regarding his postings on eBay, where he

13 offered his replica vehicles.  According to Plaintiff,

14 it requested these take-down notices from eBay, but

15 Plaintiff was unclear as to when these takedown notices

16 occurred and how many notices were issued.

17     Nonetheless, the Court finds that Defendant

18 willfully infringed upon Plaintiff's trademarks.

19 Defendant admitted his knowledge of the Batman property

20 and the various Bat emblems and symbols used with them,

21 and does not dispute that he intentionally copied the

22 designs of the 1989 and 1966 Batmobile vehicles, which

23 included Plaintiff's Batman-related trademarks.  He

24 also intentionally referred to his replicas as the

25 Batmobile, a word mark that Plaintiff owns.  Thus,

26 Defendant intentionally copied Plaintiff's trademarks,

27 including the Batmobile and Batman word mark and

28 symbols, so as to associate his products with the

51

*Batman* films and television show.  Defendant's bad faith deprives him from asserting laches as a defense to Plaintiff's trademark claim.  See Bd. of Supervisors of LA State Univ. v. Smack Apparel Co., 438 F. Supp. 2d 653, 663 (E.D. La. 2006), aff'd sub nom., Bd. of Supervisors for LA State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465 (5th Cir. 2008).  For these reasons, the Court **GRANTS** Plaintiff's Motion, and **DENIES** Defendant's Motion as to Defendant's laches defense to Plaintiff's trademark infringement claim.

As to Plaintiff's copyright claim, however, Plaintiff has not demonstrated that Defendant's conduct constitutes willful infringement.  For the willful infringement exception to apply to Defendant's laches defense, Plaintiff has to demonstrate that Defendant's conduct occurred "with knowledge that [his] conduct constitutes copyright infringement."  Danjaq, 263 F.3d at 958.  "Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment."  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 515 (9th Cir. 1985).  Plaintiff has not demonstrated that Defendant was aware that his conduct of copying the Batmobile vehicles constituted copyright infringement.  The record suggests that Defendant believed that only a design patent protected the 1989 Batmobile from infringement.  Defendant testified that he waited until

the design patent expired before selling his replica cars.  Defendant also testified that he was never informed that Plaintiff was asserting copyright ownership to the Batmobile vehicles at issue here. Based on these disputes of fact, the Court cannot determine as a matter of law that Defendant's conduct constituted deliberate infringement.  Because there is also a genuine dispute as to when Plaintiff knew or should have known about Defendant's infringement, the Court **DENIES** both Plaintiff and Defendant's Motions as to Defendant's laches defense on the copyright claim.

///

**IV.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS in Part and DENIES in Part** Plaintiff's Motion for Partial Summary Judgment.  The Court **DENIES** Defendant's Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

DATED: February 7, 2013

RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge